UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-24441-CIV-ALTONAGA/Torres

MARK CASSIDY, on behalf of himself
and others similarly situated,

    Plaintiff,

v.

VOYAGER DIGITAL LTD, and
VOYAGER DIGITAL LLC

    Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
EXPEDITED MOTION TO STAY DISCOVERY**

    Plaintiff's counsel were contacted approximately ten months ago by numerous aggrieved consumers who had serious concerns about the Voyager Defendants' business practices. Essentially, these consumers and experts concluded that Voyager was conducting an inherently rigged game, fueled with specific misrepresentations and lies.

    Counsel spent the following months focusing on two main projects:

1. investigating and researching, along with some of the top cryptocurrency experts in the United States and Europe, to not only prepare allegations regarding Voyager's unlawful actions, but to generate preliminary expert reports with supporting evidence as to these allegations and a set plan for managing discovery of the disputed issues to confirm the allegations, and

2. researching and concluding that there was no enforceable arbitration clause and/or class action waiver executed by Plaintiff Mark Cassidy that precluded him from filing this action before this Court.[1]

    As a result of some initial, nefarious conduct by Voyager, Plaintiff filed a Motion for Order

---

[1] At this early pleading stage of the litigation, the Court initially will only need to find that Plaintiff has standing to assert his claims and is not bound by an arbitration clause, and not whether all, or even any, other class members may be bound by such revised agreements.

to Show Cause and noticed Voyager Digital LLC for deposition on three topics. *See* ECF No. 25. Voyager Digital LLC refused to produce any deponent and instead filed this Motion to Stay along with Defendants' Motion to Compel Arbitration and to Dismiss this case [ECF No. 28]. Defendants include in their Motion to Compel Arbitration, for the first time, arguments that, as a factual matter are beyond the four corners of Plaintiff's complaint, such as that the Court does not have personal jurisdiction over Defendant Voyager Digital LTD.

While Defendants have exclusive access to all materials relevant to the Court's determination of whether Plaintiff and either Defendant entered into an enforceable arbitration agreement, they selectively produce some information in their Motion and ask this Court to refuse to allow Plaintiff to take even limited discovery necessary to uncover all of the relevant facts to test Defendants' assertions. The reason for Defendants' tactic is clear: "a summary judgment-like standard is appropriate and [] a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325 (11th Cir. 2016). Plaintiff respectfully submits that limited discovery on the issues of arbitration and personal jurisdiction over Defendant Voyager Digital LTD is required to level the playing field and so that all of the relevant facts can be admitted and these important issues properly briefed before the Court rules on the motion to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

There are several discrepancies in Defendants' proffer in the Motion to Compel Arbitration regarding the alleged arbitration agreement and Defendant Voyager LTD's personal jurisdiction defense that warrant discovery and denial of the instant Motion to Stay. In fact, Plaintiff's position is that he never agreed to any binding arbitration agreement with Defendant Voyager. Discovery is necessary so that Plaintiff can formulate a meaningful and fulsome response to Defendant's Motion to Compel Arbitration and challenge the allegations therein.

Plaintiff created his Voyager account on March 17, 2021. *See* Declaration of Mark Cassidy dated February 23, 2022, attached as **Exhibit A** ("Decl."), ¶ 3. When he subscribed, he consented to the January 2021 Customer Agreement in effect at that time via a clickwrap agreement.[2]

---

[2] For reasons summarized herein, and which will be fully briefed along with additional arguments in Plaintiff's response in opposition to Defendants' motion to compel arbitration, the act of checking the box in order to complete his registration did not create a binding and enforceable agreement to arbitrate this dispute.

2

Thereafter, Plaintiff placed the trade orders identified in the complaint, *see* Compl. ¶ 58, and an additional purchase of Bitcoin (BTC) on July 31, 2021. Decl. ¶ 4. On August 17, 2021, Plaintiff sold all his holdings in his Voyager account and transferred the funds to a personal bank account. *Id*. ¶ 5.

Since transferring his funds, Plaintiff has not conducted trades on the Voyager platform, but has not canceled his Voyager account. *Id*. ¶ 6. Plaintiff has only one email account associated with his Voyager account. *Id*., ¶ 7. Although he has received numerous emails from the no-reply@investvoyager.com marketing email address referenced in Shannon Casey's declaration submitted by Defendant, he did not receive any email notification retroactively notifying of the April 16, 2021, update to the Customer Agreement. *Id*., ¶¶ 7–8. No such notification was marked as SPAM or delivered to a SPAM folder, nor is one in his trash folder. *Id*., ¶ 8. In fact, Plaintiff has never received any email, notification, or any other form of actual notice of any of the other versions of the Customer Agreement referenced in Shannon Casey's declaration. *Id*., ¶ 9. Further, Plaintiff has never received any form of explanation regarding what revisions were made to the Customer Agreement at any time. *Id*., ¶ 9.

Conversely, when Coinbase, another crypto-trading app, updated its "User Agreement," effective January 31, 2022, the Coinbase app was configured to immediately prompt users upon opening the app to review the new User Agreement, Coinbase provided a summary of changes for its users to review, and asked users to affirmatively accept the new terms before continuing with their use of the app (or discontinue use, thereby declining to accept the new terms.[3] Coinbase also created a dedicated webpage entitled "January 2022 Coinbase User Agreement Update," which provided all of this information to users *in advance* of the January 31, 2022 effective date of the amended User Agreement. [4]

In their Motion to Compel Arbitration, Voyager attempts to sweep under the rug the significant differences between the Customer Agreement that was in effect at the time Plaintiff created his Voyager account and the numerous versions Voyager unilaterally revised, without notice to Plaintiff and without even attempting to obtain his assent to the new terms.

---

[3] *See* https://help.coinbase.com/en/coinbase/other-topics/legal-policies/coinbase-user-agreement-updates (last accessed February 23, 2022).
[4] *Id*.

As just one example, the following provisions in the version of the Customer Agreement in effect at the time Plaintiff created his account, *see* ECF No. 28-1 at 9, 24–25, 30–31, make clear that Voyager purportedly retains the right to unilaterally revise the Customer Agreement (which it refers to as "Account Documents" along with a litany of other types of unrelated documents), at any time, without notice to its users—and unless users can find and object to the revision within 24 hours of "delivery" (which includes quietly posting the revised agreement to the website), Voyager treats the matter as "concluded."

> I understand that Voyager reserves the right to change or modify the terms and conditions of this Agreement, including but not limited to any policy or guideline at any time and at Voyager's sole discretion. I understand that this Agreement will be amended by Voyager, with revised terms posted on Voyager's website at www.investvoyager.com (the "*Website*") emailed to me, or by any other means that Voyager may choose to adopt in the future. The method of notification for any changes to this Agreement shall be at Voyager's sole discretion. All changes and modifications will be effective immediately upon posting or sending such notification to me via electronic means. I understand that my continued use of the Voyager Platform, accessing my Voyager Account, and participating in the Voyager Service constitutes an act of acceptance with respect to any such changes or modifications that Voyager may make. If I do not agree to the terms in effect when I am accessing my Voyager Account, I must stop using the Voyager Platform.

*Id.*, 9

> a)   Consent to Electronic Delivery of Documents. By agreeing to electronic delivery, I am giving my informed consent to electronic delivery of all Account Documents, as defined below, other than those I have specifically requested to be delivered in paper form. "Account Documents" include notices, disclosures, current and future account statements, regulatory communications (such as privacy notices), trade confirmations, and any other information, documents, data, and records regarding my Voyager Account and the services (including amendments to this Agreement)

*Id.*, 24

> b) <u>Electronic Delivery System</u>. I acknowledge that Voyager's only methods of communication with me include (A) posting information on the Website, (B) providing information via the App, (C) sending email(s) to my email address of record, and, to the extent required by law (D) SMS and Push notifications and (E) providing me with notice(s) that will direct me to the App or the Website where I can read and print such information. <mark>Unless otherwise required by law, Voyager reserves the right to post Account Documents on the Website without providing notice to me.</mark> Further, Voyager reserves the right to send Account Documents to my postal or email address of record, or via the App. I agree that all Account Documents provided to me in any of the foregoing manners is considered delivered to me personally when sent or posted by or on behalf of Voyager, whether I receive it or not. All e-mail notifications regarding Account Documents will be sent to my e-mail address of record. I understand that e-mail messages may fail to transmit promptly or properly, including being delivered to SPAM folders. I further understand that it is my sole responsibility to ensure that any emails from Voyager or Voyager's Affiliates are not marked as SPAM. Regardless of whether or not I receive an e-mail notification, I agree to check the Website regularly to avoid missing any information, including time-sensitive or otherwise important communication. Additionally, I acknowledge that the Internet is not a secure network and agree that I will not send any confidential information, including Voyager Account numbers or passwords, in any unencrypted e-mails. I also understand that communications transmitted over the Internet may be accessed by unauthorized or unintended third-parties and I agree to hold Voyager, Voyager's Affiliates, and Voyager's and Voyager's Affiliates' respective officers and employees harmless for any such access regardless of the cause. <mark>I agree to promptly and carefully review all Account Documents when they are delivered and notify Voyager in writing immediately after delivery (but in no event later than 24 hours after delivery) if I object to the information provided. If I fail to object in writing immediately (but in no event later than 24 hours after delivery) after delivery, Voyager is entitled to treat such information as accurate and conclusive.</mark>

*Id.*, 25

> f) <u>Amendment</u>. Voyager may at any time amend this Agreement without prior notice to me. The current version of the Agreement will be posted on the Website and my continued Account activity after such amendment constitutes my agreement to be bound by all then-in-effect amendments to the Agreement, regardless of whether I have actually reviewed them. Continued use of the App, the Website or any other Voyager services after such posting will constitute my acknowledgment and acceptance of such amendment. I agree to regularly consult the Website for up-to-date information about Voyager services and any modifications to this Agreement. Voyager is not bound by any verbal statements that seek to amend the Agreement.

*Id.*, 30

> m) <u>Written Notice</u>. I agree that if Voyager sends an email to the email address on record for my Voyager Account, this constitutes "written notice" from Voyager to Me. <mark>For all notices made by email, the date of receipt is considered to be the date of transmission.</mark>

*Id.*, 31

Aside from a single email that Plaintiff never received, there is no evidence in the record that Voyager ever made any attempt to inform Plaintiff of any changes to the arbitration provision in the Customer Agreement or to obtain his mutual assent to the revised terms. Further, the record is devoid of evidence illustrating how or where exactly the Customer Agreement appeared on the Voyager app and whether there was any indication on the face of the Customer Agreement page that there were revisions and when they were effective.

Plaintiff takes issue with several other facts in Defendants' proffer. While certainly not an exhaustive list, Plaintiff intends to, for example, seek documents and elicit testimony regarding the issues with Defendants' notice of revisions to its Customer Agreement; the methods through which the April 18, 2021 email was purportedly sent; any other methods of notification Defendants utilized for other revisions to the Customer Agreement;[5] the decision not to use other methods of notification or to publish the changes that are made to the Customer Agreement so users like Plaintiff can make informed decisions; issues surrounding the parties' purported entering into the Customer Agreement in the first place; factors pointing toward what law applies; Defendants' obligations (or lack thereof) under the Customer Agreement.

To be sure, the March 10, 2022, hearing before Magistrate Judge Torres will address several issues, not only Defendants' opposition to the corporate representative deposition. Judge Torres will also determine the scope of the issues that Plaintiff should be entitled to explore during that deposition. In fact, Defendants originally indicated that, so long as Plaintiff stipulated that doing so would not result in a waiver of their purported right to compel arbitration, Defendants did not outright oppose Plaintiff's request to seek discovery on arbitration related issues.

Moreover, Defendants raised their arguments as to personal jurisdiction over Defendant Voyager Digital LTD for the first time in their motion to compel arbitration and to dismiss, [ECF No. 28], and therefore Plaintiff has not yet served discovery requests on Defendants regarding those issues. Plaintiff respectfully submits, however, that he can serve brief discovery on these issues on an expedited basis and be prepared to question Defendants' corporate representative(s) about these issues should the Court deny Defendants' motion for a blanket stay of all discovery.

Plaintiff is also mindful of the Court's trial order [ECF No. 20], which sets a deadline for Plaintiff to amend his complaint for March 14, 2022, and a deadline for completing class certification discovery by May 9, 2022. For this reason, too, Plaintiff served discovery requests pertinent to these issues so that he can complete discovery and comply with the Court's ordered deadlines.

---

[5] Defendants, for some unexplained reason, voluntarily limited their explanation of the notice issues to periods where Plaintiff was "trading" on the Voyager App, however, this is not the sole function of the Voyager App and Plaintiff has, to date, not canceled his account.

6

# ARGUMENT

"A district court 'has broad discretion to stay proceedings as an incident to its power to control its own docket.'" *Cuhaci v. Kouri Grp., LP*, No. 20-cv-23950, 2021 WL 1945819, at *2 (S.D. Fla. May 14, 2021) (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). But "[t]his discretion is not unfettered," and "[d]istrict courts must take an active role in managing cases on their docket." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366–67 (11th Cir. 1997) (alterations added; citations omitted). Managing discovery involves balancing important and sometimes dueling goals. On the one hand, "a defendant should not be forced to expend substantial resources answering discovery when the plaintiff's claims clearly lack merit[.]" *Ray v. Spirit Airlines, Inc.*, No. 12-61528-Civ, 2012 WL 5471793, at *1 (S.D. Fla. Nov. 9, 2012) (alteration added; citations omitted). On the other hand, "the delay and prolongation of discovery can also create case management and scheduling problems and unfairly hold up the prosecution of the case." *Id.* (citations omitted).

Defendants seek a stay of discovery on the theory that "'[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on a failure to state a claim for relief, should . . . be resolved before discovery begins." (Mot. at 5) (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367-68 (11th Cir. 1997)). In fact, as this Court is well aware, the opposite is true: "motions to stay discovery pending ruling on a dispositive motion are generally disfavored in this district." *Cuhaci*, 2021 WL 1945819, at *2 (alteration adopted; citations omitted); *see also, e.g.*, *Krukever v. TD Ameritrade, Inc.*, No. 18- Civ-Altonaga, 2018 WL 2382008, at *1 (S.D. Fla. May 23, 2018); *TGE Fam. Holdings, LLC v. Xytel, Inc.*, No. 20-22382-Civ-Altonaga, Order on Motion for Stay of Discovery [ECF No. 43] (S.D. Fla. Sept. 21, 2020) 2 ("Quite simply, the Court is not persuaded this is the type of case in which discovery should be stayed while the parties await the Court's ruling on Defendant's Motion to Dismiss."); *MSP Recovery Claims, Series LLC v. Amerisure Ins. Co.*, No. 17-23961-Civ-Altonaga, Order on Motion to Stay Discovery and Bifurcate Class Action Proceedings [ECF No. 111] (S.D. Fla. March 8, 2021) 2 ("Having reviewed Defendants' Motion and performed a 'preliminary peek' at the arguments raised in Defendants' Motion to Dismiss, the Court cannot say dismissal of the claims against Defendants is a foregone conclusion.").

7

> As this Court has recently explained:
>
> This skepticism of discovery stays is well-founded. Courts must construe the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The rules governing discovery are no exception. "[W]hen discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) (alteration added; citations omitted). These problems include "duplicat[ion] of costs because counsel must reacquaint themselves with the case once the stay is lifted[,]" leaving "[m]atters of importance . . . mislaid or avenues unexplored[,]" and the "management problem[s]" that inevitably arise when the case "leaves the normal trial track." *Kron Med. Corp. v. Groth*, 119 F.R.D. 636, 637 (M.D.N.C. 1988) (alterations added). For these reasons, federal law places a thumb on the scale against discovery stays while also permitting departure from that general rule when the circumstances warrant — and when the proponent of the stay sets forth sufficient justification for delay.

*Lord v. University of Miami*, No. 1:13-cv-22500-CMA, [ECF No. 120] (S.D. Fla. Oct. 27, 2021) 3. Further, this Court explained that Defendants' analysis of *Chudasama*, i.e., that it "supports a broad rule favoring discovery stays pending resolution of motions to dismiss" is an "unpersuasive reading of *Chudasama*" that this Court has "consistently rejected." *Id*., 4 (explaining that "*Chudasama* illustrates the need for departing from the general rule disfavoring discovery stays in 'very specific' circumstances," and "does not counsel an automatic stay of discovery upon the filing of a motion to dismiss").

Moreover, courts in this District have held that it is proper for discovery to proceed when the validity or enforceability of an arbitration provision is in dispute, especially where discovery is necessary to oppose the pending motion. *Flecha v. Neighbors Moving Services, Inc.*, 944 F. Supp. 2d 1201, 1203 (S.D. Fla. 2013) (Snow, M.J.) (denying motion to stay discovery pending resolution of motion to compel arbitration, noting such motions are "generally disfavored in this district") (S.D. Fla. 2013).

The Court should deny the Motion because Plaintiff requires, at the very least, limited discovery on the issues of arbitrability and personal jurisdiction that Defendants raise in their pending motion to compel arbitration and to dismiss [ECF No. 28]. The Court should instead order that Plaintiff is entitled to conduct discovery on these limited issues, and to extend the briefing schedule on Defendants' motion for a brief period pending completion of that discovery.

### I. THE DISCOVERY PLAINTIFF SEEKS IS NECESSARY TO OPPOSE DEFENDANTS' PENDING MOTION TO COMPEL ARBITRATION OR TO DISMISS.

The Court should not stay discovery pending a ruling on a motion to compel arbitration where the discovery "is necessary to defend against the motion." *Flecha v. Neighbors Moving Services, Inc.*, 944 F. Supp. 2d 1201, 1203 (S.D. Fla. 2013) (Snow, M.J.) (denying motion to stay discovery pending resolution of motion to compel arbitration, noting such motions are "generally disfavored in this district," and that it is proper for discovery to proceed when enforceability of arbitration provision is in dispute) (S.D. Fla. 2013); *see also Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) ("the Court ordinarily should not stay discovery which is necessary to gather facts in order to defend against the motion"). Defendants' motion raises a number of factual issues regarding issues of arbitration and personal jurisdiction, which Plaintiff should be entitled to plumb in advance of amending his complaint or responding to the motion.

### a. The Court Should Deny the Request for Stay and Rule Plaintiff May Conduct Arbitrability-Related Discovery.

Defendants argue that because "the information requested has been filed in support of the motion," that Plaintiff should essentially be forced to live with the record Defendants have curated for the Court's consideration. (Mot. at 6). Allowing Plaintiff to engage in limited discovery concerning arbitration issues, however, will provide the Court with a complete evidentiary record upon which it can properly decide the Motion to Compel Arbitration. For example, Plaintiff seeks to obtain information regarding Defendants' procedures for sending notifications to users of modifications to the arbitration provision in the Customer Agreement, such as how it generates a contact list and how it confirms receipt of the notifications. Plaintiff also seeks information from Defendants concerning the notifications allegedly sent to Plaintiff regarding the modifications to the Customer Agreement. Plaintiff has searched through his emails and has not located any notification from Defendant as to the April 16, 2022, modification—or any other modification—of the Customer Agreement. *See, e.g.,* Decl. Discovery into which notifications, if any, Defendants sent to Plaintiff as well as how these notifications were sent (the timing and method of delivery) will be critical in determining whether Plaintiff agreed to be bound by an arbitration provision and, if he did, whether the provision is enforceable under Florida law. *See e.g., Kardonick v. Citigroup, Inc.,* No. 10-23023-CV, 2012 WL 3594359, at *1 (S.D. Fla. Aug. 16, 2012) (allowing limited arbitration-related discovery because it would be "useful in building a complete record essential

9

to determining whether Defendants' arbitration provision is unconscionable under South Dakota law").

### b. The Court Should Deny the Request for Stay and Rule Plaintiff May Conduct Brief Jurisdictional Discovery.

Defendants' Motion to Compel Arbitration contains a factual argument to which Plaintiff cannot respond without conducting limited jurisdictional discovery. Thus, there is a strong reason to conclude that limited jurisdictional discovery will reveal more than sufficient evidence to establish personal jurisdiction over Voyager LTD.

It is well established that the Eleventh Circuit recognizes the right to conduct limited jurisdictional discovery. *See, e.g. Eaton v. Dorchester Develop., Inc.*, 692 F.2d 727 (11th Cir. 1982) (holding that it was premature to dismiss a claim for lack of jurisdiction where plaintiffs were not given an opportunity to elicit material through discovery to support a determination on jurisdiction); *Blanco v. Carigulf Lines*, 632 F.2d 656, 657–58 (5th Cir. 1980) (holding that plaintiff was entitled "to elicit material through discovery before [plaintiff's] claim [could] be dismissed for lack of jurisdiction" where defendant challenged plaintiff's jurisdictional allegations through an affidavit, explaining that "plaintiff was not required to depend exclusively upon defendant's affidavit for answers to that question."). While the right to jurisdictional discovery is "qualified," the only qualification is that the question of the court's jurisdiction is genuinely in dispute. *Eaton*, 692 F.2d at 729, n. 7 (citing The Use of Discovery to Obtain Jurisdictional Facts, 59 Va.L.Rev. 533, 546–47 (1973)). Once the Court is satisfied that jurisdictional facts are in dispute, the Court "does not have discretion to grant or deny" the request, rather "the element of discretion, if any, exists not with respect to whether there will be jurisdictional discovery, but rather only with respect to the form that the discovery will take." *Id*.

Applying this precedent, courts in the Southern District of Florida and other similar courts routinely recognize a plaintiff's right to conduct limited jurisdictional discovery before a ruling on a motion to dismiss for lack of jurisdiction. *See, e.g., Trummel v. Star Clippers, Ltd., et.al.,* No: 15-cv-24447-KMW, ECF No. 50 (S.D. Fla. July 8, 2016) (granting motion to stay case and defer ruling on motion to dismiss pending jurisdictional discovery); *Heller v. Carnival*, No. 15-24464-cv-CMA, ECF No. 29 (S.D. Fla. January 13, 2016) (ordering defendant to inform plaintiff whether it intends to challenge personal jurisdiction, and if so, establishing schedule for jurisdictional discovery); *Ure, et al. v. Oceania Cruises, Inc., at al.*, No. 14-cv-21340-DPG, ECF Nos. 106 at 2–

3, 135 at ¶ 3, 137 (S.D. Fla.) (ruling the Plaintiff would have ninety (90) days to conduct jurisdictional discovery); *Belik v. Carlson Travel Grp., Inc.*, No. 11-21136-civ-Altonaga, ECF No. 108 (S.D. Fla. Nov. 21, 2011) (staying determination of motion to dismiss for lack of personal jurisdiction until the conclusion of jurisdictional discovery and the filing of supplemental briefing by the parties); *Bridgewater v. Carnival Corp., et. al.,* No. 10-22241-civ-King, ECF No. 28 (S.D. Fla. Sept. 23, 2010) (granting plaintiff's motion to stay case for 90 days pending jurisdictional discovery and denying defendant's motion to dismiss without prejudice); *Kilma v. Carnival Corp. et. al.*, No. 08-20335-cv-Moore, ECF No. 55 (S.D. Fla. Oct. 10, 2008) (denying motion to dismiss, staying case, and granting cruise line passenger leave to conduct jurisdictional discovery as to tour operator's contacts with Florida, finding that "[a]lthough it is unlikely that general jurisdiction exists based on the facts pled, the possibility is not so remote so as to justify a finding that jurisdictional discovery is not warranted.").

Courts frequently recognize that a plaintiff would be prejudiced without an opportunity to conduct jurisdictional discovery, and that a plaintiff is not required to rely exclusively upon a defendant's affidavit for resolution of a jurisdictional issue. *Blanco*, 632 F.2d at 658. "A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010); *Bracewell v. Nicholson Air Serv., Inc.*, 748 F.2d 1499 (11th Cir. 1984) (reasoning that dismissal without jurisdictional discovery is improper if the allegations of the complaint literally satisfy the requirements of the Long Arm Statute because "[i]nformation as to defendant's contacts with the State of Georgia or lack of them is necessarily more within the defendant's knowledge than the plaintiff's") (citation omitted).

Allowing Plaintiff to seek limited jurisdictional discovery will also assist the Court in making an informed and reasoned ruling based upon all the evidence. As noted by the Honorable Kenneth Marra in *Sierra Equity Group, Inc., v. White Oak Equity Partners, LLC*., No. 08–80017–CIV, 2008 WL 1771857, *2 (S.D. Fla. April 15, 2008), "jurisdictional discovery will be useful to determine the actual extent of Defendants' contacts with Florida to determine whether this case can be resolved on its merits. Without factual discovery, the Court would be left to conjecture whether it could exercise jurisdiction over Defendants." This is particularly important here, where

some of Defendants' claims, e.g., that Voyager Digital LTD has no employees (*see* Casey Declaration at ¶ 5), contradict its filings with the SEC. *See, e.g.*, Voyager LTD's Interim Financial Report dated March 31, 2021, available at https://sec.report/otc/financial-report/285133.

Plaintiff believes that limited jurisdictional discovery will reveal at a minimum, the extent of Voyager LTD's involvement in the scheme alleged in Plaintiff's Complaint. If given the opportunity, Plaintiff will be able to prove that Voyager LTD has purposefully availed itself to jurisdiction in Florida. There is no legal basis to deny Plaintiff the opportunity to conduct limited discovery to aid in establishing these facts.

### c. Defendants Will Not be Prejudiced by Submitting to this Limited Discovery.

The Motion should also be denied because Defendants have not identified any specific burden they will face absent a stay, particularly if the discovery is limited to issues that concern the arbitration provision and personal jurisdiction over Defendant Voyager LTD. *Ray v. Spirit Airlines, Inc.*, No. 12-61528-CIV, 2012 WL 5471793, at *3 (S.D. Fla. Nov. 9, 2012) (denying motion to stay discovery where the defendant failed to show any specific prejudice or burdensomeness in having to engage in discovery). Defendants state only that engaging in discovery will "increases the cost of the case" (*see* Motion at 6, citing *Chudasama*), but this Court "is, of course, not unsympathetic to the sometimes unfair costs and burdens discovery can impose upon defendants" where a case is ultimately dismissed and has nonetheless found that "a stay of discovery should be a sparingly ordered thing." *Ray v. Spirit Airlines, Inc.*, No. 12-61528-CIV, 2012 WL 5471793, at *3 (S.D. Fla. Nov. 9, 2012). Further, Defendants' reliance on *Chudasama* is misplaced. "Since the Eleventh Circuit handed down *Chudasama,* it has been analyzed on numerous occasions, and courts have consistently rejected any *per se* requirement to stay discovery pending resolution of a dispositive motion." *Bocciolone v. Solowsky*, No. 08-20200-CIV, 2008 WL 2906719, at *1 (S.D. Fla. July 24, 2008). This Court "should only limit discovery 'based on *evidence* of the burden involved, not on a mere recitation that the discovery request is unduly burdensome." *Trinos v. Quality Staffing Servs. Corp.,* 250 F.R.D. 696, 698-99 (S.D. Fla. 2008) (denying motion for protective order for deposition where movant did not provide "any affidavits or evidence to support [] claims that the proposed depositions would constitute an undue burden" such as a "sworn statement[] as to [the party's] financial situations" and "[w]ithout this information and affidavits, the Court cannot properly assess Plaintiffs' burdensomeness arguments").

Moreover, Defendants are not in danger of waiving any rights to arbitration. (Mot. at 2, 4). Courts are hesitant to find that a party has waived this right, as the Eleventh Circuit ruled in the *Citibank* case that Defendants cite. *See Citibank, N.A. v. Stok & Assocs., P.A.*, 387 F. App'x 921, 924 (11th Cir. 2010) (Mot. at 4) (finding against waiver where the defendant-movant had not sought to compel arbitration until one month after serving its answer). Because Defendants have filed the Motion to Compel Arbitration early and **Plaintiff hereby stipulates** "that by participating in discovery now, [] Defendant[s] will not waive [their] right to arbitrate if the Court finds the arbitration agreement enforceable" (*see Flecha v. Neighbors Moving Servs., Inc.,* 944 F. Supp. 2d 1201, 1203 (S.D. Fla. 2013)), the Court should reject any arguments concerning the potential waiver of arbitration.

Finally, although Defendants give short shrift to the "peek at the merits" of their Motion to Compel Arbitration and presume there is a binding arbitration provision with a clear arbitration provision governed by Florida law, this is simply not the case.[6] First, it is not clear that Florida, as opposed to New Jersey, law should apply to govern the Court's analysis. The arbitration provision in the Customer Agreement (as well as restated in an additional provision) provides that New Jersey law applies, without regard to conflict of law principles of the forum in which the action is brought. *Bachewicz v. JetSmarter, Inc.*, 18-CV-62570, 2019 WL 1900332, at *2 (S.D. Fla. Apr. 29, 2019) (Bloom, J.) ("State law governs when determining whether an enforceable agreement to arbitrate exists. Here, the Membership Agreement contains a choice of law provision specifying that Florida law applies.") (citing *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1330 (11th Cir. 2016)); *see also* [ECF No. 28] at 11 (arbitration provision, specifically, providing "[a]ny dispute between the parties will be governed by this Agreement and the laws of the State of New Jersey and applicable United States law, without giving effect to any conflict of laws principle that may provide for the application of the law of another jurisdiction."); [ECF No. 28-1] at 31 (January 2021 Customer Agreement providing "The laws of the State of New Jersey (regardless of the choice of law rules thereof) shall govern this Agreement and all transactions made in My Voyager Account.").

---

[6] Given the expedited briefing schedule for this motion, Plaintiff makes this short, preliminary showing as to his potential arguments in response to Defendants' motion to compel arbitration, without waiver of the opportunity to fully brief the issues after conducting the limited discovery requested in this motion.

Second, the mere incorporation of the AAA rules for consumer arbitration, without more, does not constitute a "clear and unmistakable" intent to delegate arbitrability to the arbitrator. *See Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1181–82 (N.J. 2016) (finding, under New Jersey law, no delegation where referenced paragraph designated AAA or National Arbitration Forum rules); *See also Doe v. Natt*, 299 So.3d 599 (Fla. 2d DCA 2020) (holding that, under Florida law, a mere reference to the AAA Rules in an arbitration provision contained in a clickwrap agreement that "did not quote or specify any particular provision or rule" and that did not attach the rules to the agreement but instead "directed the [plaintiffs] to the AAA website and phone number if they wished to learn more," failed to delegate the issue of arbitrability to the arbitrator and "fell short of the clear and unmistakable evidence of assent that *First Options* requires"). The stark contrast between the January 2021 arbitration provision and the January 2022 arbitration provision shines a light on why there is no clear and unmistakable delegation of arbitrability in the January 2021 arbitration provision. *Compare* ECF No. 28-1 at 24 (". . . any such dispute shall be finally settled in binding arbitration, on an individual basis, in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes . . .") *with id*., at 152 ("THE COMPLAINT SHALL BE FINALLY AND EXCLUSIVELY RESOLVED IN BINDING ARBITRATION, ON AN INDIVIDUAL BASIS, ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") AND IN ACCORDANCE WITH THE AAA'S RULES FOR ARBITRATION OF CONSUMER-RELATED DISPUTES. . . . THE ARBITRATOR SHALL ALSO HAVE EXCLUSIVE AUTHORITY TO DECIDE ANY ISSUES RELATING TO THE MAKING, VALIDITY, ENFORCEMENT, OR SCOPE OF THIS ARBITRATION AGREEMENT, ARBITRABILITY, DEFENSES TO ARBITRATION INCLUDING UNCONSCIONABILITY, OR THE VALIDITY OF THE JURY TRIAL OR CLASS ACTION WAIVERS.").

Third, given that Plaintiff never received any notification of any revisions to the Customer Agreement after creating his account in March 2021, he did not manifest his assent to be bound by any subsequent Customer Agreement. The "updates" to the Customer Agreements were offered to users (like Plaintiff) in the form of a "browsewrap agreement," which is an agreement[] that "does not require the [user] to click an acknowledgement." *Fridman v. 1-800 Contacts, Inc.,* No. 21-CV-21700, 2021 WL 3603348, at *4 (S.D. Fla. Aug. 13, 2021) (citing *Bell v. Royal Seas Cruises, Inc.,* No. 19-CV-60752, 2020 WL 5742189, at *5 (S.D. Fla. May 13, 2020)). These

agreements are enforceable in New Jersey and in Florida only "when the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice." *Id*. (citing *Bell*, 2020 WL 5742189, at *5); *Wollen v. Gulf Stream Restoration and Cleaning, LLC*, 259 A.3d 867 (N.J. Super. Ct. App. Div. 2021) (concluding defendant "failed to establish plaintiff assented to its terms and conditions, including the arbitration provision at issue," even though "the terms of the hyperlink, 'Terms & Conditions' were displayed in 'blue font' against a white background, but were not underlined, bolded or enlarged," where "absent from the hyperlink's wording was any indication that the user was required to read the terms and conditions before submitting her request for service professionals," and "plaintiff was not required to affirmatively assent—or even view—the terms and conditions"); *see also IT Strategies Grp., Inc. v. Allday Consulting Grp., L.L.C.*, 975 F. Supp. 2d 1267, 1283 (S.D. Fla. 2013) (finding no mutual assent to terms in a browsewrap agreement where there was insufficient notice that downloading items from the website would bind users to the agreement); *Herman v. Seaworld Parks & Ent., Inc.,* No. 8:14-CV-3028-T-35JSS, 2016 WL 7447555, at *5 (M.D. Fla. Aug. 26, 2016) (same);. Thus, Plaintiff is not bound by the April 16, 2021 Customer Agreement, nor any subsequent agreements.

Fourth, the January 2021 Customer Agreement—and, specifically, the agreement to arbitrate—was never formed because it is illusory; Defendants retain full and sole discretion to modify the arbitration agreement without notice to Plaintiff, *see supra* at 3–4 (quoting ECF No. 28-1 at 9, 24–25, 30–31. *See, e.g., Todorovich v. Accrediting Bureau of Health Education Schools, Inc.*, No. 17-20744-CIV-ALTONAGA/O'Sullivan, 2017 WL 7726705, at *6–7 (S.D. Fla. July 24, 2017) (Altonaga, J.) (analyzing Florida law and concluding that no contract was formed where one party had illusory obligation due to contractual ability to unilaterally revise agreement while forcing other party to comply, holding that the agreement "does not manifest the mutuality of obligation required to form a contract."). Similarly, under general principles of New Jersey contract law, an agreement, including one to arbitrate disputes, based only upon an illusory promise is unenforceable. *Jaworski v. Ernst & Young U.S. LLP*, 119 A.3d 939, 947 (N.J. Super. Ct. App. Div. 2015) (citing *Del Sontro v. Cendant Corp.*, 223 F.Supp.2d 563, 578 (D.N.J.2002) (citing *Bryant v. City of Atl. City*, 309 N.J.Super. 596, 621, 707 A.2d 1072 (App.Div.1998))). "An illusory promise has been defined as[ ] a 'promise which by [its] terms make[s] performance entirely optional with the promisor whatever may happen, or whatever

15

course of conduct in other respects he may pursue.' " *Id.* (citing *Bryant*, 309 N.J.Super. at 620, 707 A.2d 1072 (quoting Restatement (Second) of Contracts, § 2 cmt. e (1979)) (internal quotations marks omitted); *Customized Distribution Servs. v. Zurich Ins. Co.*, 373 N.J.Super. 480, 493, 862 A.2d 560 (App.Div.2004) ("An illusory promise is defined as one 'in which the promisor does not bind himself.'" (quoting Black's Law Dictionary 1213 (6th ed. 1990))), *certif. denied*, 183 N.J. 214, 871 A.2d 91 (2005)).

## CONCLUSION

Plaintiff respectfully requests that the Court deny Defendants' motion to stay discovery pending a ruling on their motion to compel arbitration, and instead order that (a) Plaintiff is entitled to conduct limited discovery on the issues of arbitrability and whether the Court has personal jurisdiction over Defendant Voyager LTD, and (b) briefing on Defendants' motion to compel arbitration and to dismiss is continued pending completion of that limited discovery, together with such other and further relief as the Court deems just, equitable, and proper.

Dated: February 23, 2022                              Respectfully submitted,

By: /s/ *Adam Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
Barbara C. Lewis
barbara@moskowitz-law.com
Florida Bar No. 118114
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

By: */s/ Stuart Z. Grossman*
Stuart Z. Grossman
Florida Bar No. 156113
szg@grossmanroth.com
Rachel W. Furst
Florida Bar No. 45155
rwf@grossmanroth.com
GROSSMAN ROTH YAFFA COHEN, P.A.
2525 Ponce de Leon Blvd Ste 1150
Coral Gables, FL 33134
Office: 305-442-8666

*Co-Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was filed on February 23, 2022, with the Court via CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam M. Moskowitz*
ADAM M. MOSKOWITZ
Florida Bar No. 984280