# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 21-24441-CIV-ALTONAGA/Torres**

MARK CASSIDY, on behalf of himself
and others similarly situated,

      Plaintiff,

v.

VOYAGER DIGITAL LTD, and VOYAGER
DIGITAL LLC

      Defendants.

_____/

**PLAINTIFF'S REQUESTS FOR PRODUCTION REGARDING PERSONAL**
**JURISDICTION AND ARBITRATION TO DEFENDANT VOYAGER DIGITAL LTD,**
**AS PER COURT ORDER DATED MARCH 3, 2022 [ECF NO. 36]**

      Plaintiff, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and specifically

pursuant to the Court's Order dated March 3, 2022 [ECF No. 36], hereby requests that Defendant,

Voyager Digital LTD produce the following documents.

Dated: March 7, 2022              Respectfully submitted,

                          By:  /s/ *Adam Moskowitz*
                              Adam M. Moskowitz
                              Florida Bar No. 984280
                              adam@moskowitz-law.com
                              Joseph M. Kaye
                              Florida Bar No. 117520
                              joseph@moskowitz-law.com
                              Barbara C. Lewis
                              Florida Bar No. 118114
                              barbara@moskowitz-law.com
                            **THE MOSKOWITZ LAW FIRM, PLLC**
                            2 Alhambra Plaza, Suite 601
                            Coral Gables, FL 33134
                            Telephone: (305) 740-1423

By: */s/  Stuart Z. Grossman*
Stuart Z. Grossman
Florida Bar No. 156113
szg@grossmanroth.com
Rachel W. Furst
Florida Bar No. 45155
rwf@grossmanroth.com
GROSSMAN ROTH YAFFA COHEN, P.A.
2525 Ponce de Leon Blvd Ste 1150
Coral Gables, FL 33134
Office: 305-442-8666
*Co-Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2022, a true and correct copy of the foregoing was sent via electronic mail to counsel for Defendants.

By: */s/ Adam Moskowitz*
Adam M. Moskowitz

**<u>DEFINITIONS</u>**

Unless otherwise specified, the terms set forth below have the following meanings:

1.      "Voyager," "You," or "Your" means Voyager Digital LTD and any of its affiliates, subsidiaries, divisions, segments, predecessors, successors, officers, directors, employees, representatives, or agents.

2.      "Voyager Defendants" means Voyager and Voyager Digital LLC.

3.      "Voyager Platform" refers to the Voyager Defendants' mobile application cryptocurrency investment service that places cryptocurrency trade orders on behalf of users.

4.      "Voyager Algorithms" means Voyager's "Smart Order Routing," the "Voyager Pricing Engine," and the "Proprietary Fills Algorithm."

5.      "Related Entity" means Voyager Digital, LLC and any other entity based or incorporated in the United States, which is a direct or indirect parent or subsidiary of, or otherwise affiliated with or related to You, by common ownership or control, and which promotes, markets, sells, and/or services Voyager's mobile application cryptocurrency trading/investment platform.

6.      "Contracts and Agreements" is intended to and shall embrace and include all documents, forms, deeds, leases, memorandums of understanding, electronic correspondence, emails, letters and text messages that define rights and responsibilities between You and any Related Entity, or You and any other entity affiliated in any way with the promotion, marketing, sale, and servicing of Voyager's mobile application cryptocurrency trading/investment platform.

7.      "Corporate Records" means any Articles of Organization/Incorporation, Operating Agreements, Membership Agreements, and Partnership or Joint Venture Agreements, and listing or evidence of ownership interest and filings of similar-type incorporating documents with governmental agencies.

8.      "Employee" means any current or former officer, director, manager, member, secretary, staff member, agent, person receiving compensation, or other person employed.

9.      "Document(s)" means any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including but not limited to memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, telegrams, messages, manuscripts, studies, analyses, tests, comparisons, books, articles, pamphlets, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, minutes, agreements, contracts, and all other written communications, of any type, including inter and intra-office communications, purchase orders, invoices, bills, receipts, questionnaires, surveys, charts, graphs, videos, photographs, sketches, drawings, house sheets, tapes, voice messages or other recordings, print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof.

10.     "Communication(s)" means any mode or method of contact for the transmission, dissemination, request for, or receipt of information of any kind including thoughts, mental impressions, ideas, suggestions, etc., conveyed in any format, and by any means or medium whatsoever. This shall include, but shall not be limited to, all statements, admissions, denials, inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, telephone conversations, voice messages, letters, correspondence, notes, telegrams, telexes, emails, advertisements, or any other form of written or verbal intercourse. The requests include communication to, from, or within a corporate entity or organization and include any and all communications by, between, and among its representatives, employees, agents, advisors, brokers, or attorneys (except when privileged).

11.     The words "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope hereof any information which might otherwise be construed as to be outside the scope of these discovery requests.

12.     "Relating to," "relate to," "regarding," or "reflecting" means in any way directly or indirectly concerning, referring to, disclosing, describing, confirming, supporting, evidencing, representing, clarifying, evidencing, supporting, or contradicting.

13.     "Support" means referring to, concerning, responding to, reflecting, indicating, commenting on, regarding, discussing, showing, evidencing, describing, implying, analyzing, or consulting.

14.     "Person" or "People" means any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

15.     "Nationwide Class Members" means all individuals residing in the United States who, within the applicable limitations period, used the Voyager Defendants' trading platform to place cryptocurrency investment orders. Excluded from this definition are the Voyager Defendants and their officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

16.     "Florida Class Members" means all individuals residing in the state of Florida who, within the applicable limitations period, used the Voyager Defendants' trading platform to place cryptocurrency investment orders. Excluded from this definition are the Voyager Defendants and their officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

17.     Unless otherwise stated in a request, the time period for which you must respond is beginning in January 1, 2019 and ending at the present time.

## **INSTRUCTIONS**

1.      Production of documents and items requested herein shall be made at the offices of The Moskowitz Law Firm, 2 Alhambra Plaza, Suite 601, Coral Gables, Florida 33134.

2.      These requests shall include all documents that are in the possession, custody or control of Defendant or in the possession, custody or control of the present or former agents, representatives, or attorneys of Defendant, or any and all persons acting on the behalf of Defendant, or its present or former agents, representatives, or attorneys.

3.      For any document covered by a request that is withheld from production, Defendant shall provide the following information in the form of a privilege log:

   a.   the reasons and facts supporting any withholding;
   b.   the date such document was prepared;
   c.   the names, employment positions and addresses of the author or preparers of such document;
   d.   the names, employment positions, and the addresses of each person who received such document;
   e.   the title and a brief description of the document; and
   f.   the number of the request under which such document would be produced but for the objection.

4.      If any document responsive to a request has been destroyed, produce all documents describing or referencing:

   a.   the contents of the lost or destroyed document;
   b.   all locations in which any copy of the lost or destroyed document had been maintained;
   c.   the date of such loss or destruction;
   d.   the name of each person who ordered, authorized, and carried out the destruction of any responsive document;
   e.   all document retention and destruction policies in effect at the time any requested document was destroyed; and
   f.   all efforts made to locate any responsive document alleged to have been lost.

5.      In producing the documents requested, indicate the specific request(s) pursuant to which document or group of documents is being produced.

6.      These requests should be deemed continuing, and supplemental productions should be provided as additional documents become available.

7.      All documents are to be produced in the following method:

a)   Single page .TIFF

b)   Color .jpg (Documents wherein reflection of importance relies on color, shall be produced in .jpg format)

c)   OCR at document level (All documents are to be provided with searchable text files with the exception of the redacted portions of redacted documents)

d)   Electronic documents and Emails are to be processed and converted from the electronic format to single page tiff

e)   Native Files such as Excel files, PowerPoints, audio and video, CSV files, and other similar spreadsheet files shall be produced in native format ("Native Files") instead of in .TIFF, unless redactions are necessary for such files in which case such files may be produced in .TIFF format. Such Native Files (if any) will be provided in a self-identified "Natives" directory. Each Native File will be produced with a corresponding single-page .TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files should be named with the beginning Bates number that is assigned to that specific record in the production. A Native "Link" entry for each spreadsheet will be included in the .DAT load file indicating the relative file path to each native file on the production media. Native Files will be produced with extracted text and applicable metadata fields.

f)   Hard Copy Documents are to be produced in Single page .TIFF with accompanying document-level full text and corresponding load files. Load files shall include custodian and doc source.

   i.   To the extent that the document is or was usually kept or maintained in a file folder or other marked or identifiable location, the production shall include information sufficient to identify such file, folder, or location.

     ii.  For hard copy document that is redacted, the production party shall provide OCR for the produced image as redacted.

     iii.  All hard copy documents should be produced in optical character recognition format, OCR.

g)  All metadata values should be extracted and produced in a text file with Pipe "|" and Caret "^" delimiters. (Metadata fields are described below)

h)  The following metadata fields shall be produced where available:

| Image bates number | Email To | Email From |
|---|---|---|
| Email CC | Email BCC | Email Subject |
| Header | Folder ID | Folder Name |
| Read | Date Created | Date Saved |
| Date Received | Time Received | Date Sent |
| Time Sent | Application | Attachment range |
| Attachment Title | Attachment Count | Custodian of collection |
| Edoc, Email, Attachment | Attachment bates id | Parent bates id |
| Folder path | File Name | File Author |
| File Extension | MD5 Hash | Page count |

i)  To the extent reasonably available, the "Custodian" "Source" or "Original Path" field with respect to ESI gathered from an individual's hard drive will provide metadata sufficient to identify the custodian from whose hard drive such ESI has been gathered.

Delivery Formats:

a)  Data shall be delivered in the following formats: .DII, .OPT (load file) & .DAT (metadata file) including @Fulltext DOC and an @DOCLINK (containing path to native file in deliverable) for any native documents produced.

b)  The .TIFF files and extracted text files (OCR) shall be named as the corresponding DOCID and stored in the same folder named "IMAGES" and loaded using the industry standard files stated above that loads both Image and Text files simultaneously (@Fulltext DOC).

c)   The native files shall be stored in a separate folder named "Native Files" and shall be loaded through the data in the @Doclink token in the dii file.

d)   Method of delivery will be accepted by CD, DVD, External Hard Drive or Secure FTP location.

## REQUESTS FOR PRODUCTION

*Please refer to the Definitions and Instructions when responding to these requests. To the extent that any of these requests seek information considered by Voyager to be confidential, Plaintiff will enter into any reasonable confidentiality agreement with Voyager to protect such confidential information.*

### I.     DOCUMENTS RELATING TO PLAINTIFF IN FLORIDA

1.     All Documents, including internal Communications, regarding Plaintiff or Plaintiff's Voyager account.

2.     All Documents, including internal Communications, regarding Your decision to change, cancel and/or restrict Plaintiff's Voyager account, subsequent to the filing of this proposed class action, including how You investigated his allegations, and how that compared or differed from how you investigated prior complaints made by users of the Voyager Platform to the Better Business Bureau, *see* https://www.bbb.org/us/ny/new-york/profile/cryptocurrency-exchange/voyager-digital-llc-0121-87148788 (last accessed March 7, 2022).

3.     All Documents, including internal Communications, regarding the specific version of the Customer Agreement, which contains any alleged arbitration provision, You contend applies to Plaintiff's claims in this action.

4.     All Documents to explain why You decided to change the arbitration provision in the Voyager Customer Agreement after this Lawsuit was filed.

### DOCUMENTS RELATING SPECIFICALLY TO ARBITRATION

5.     A sample copy of every (different) Customer Agreement between Voyager and users of the Voyager Platform from January 1, 2019 to the present, and, for every (different)

Customer Agreement, produce all Documents, including internal Communications, regarding any notification provided to users of the Voyager Platform of any changes to the Customer Agreement, from January 1, 2019 to the present, including but not limited to, the date and substance of any communications sent to users and any action(s) that Voyager implemented to the platform to inform users of the arbitration provisions.

6.      All internal reports and/or audits and communications regarding the legality and/or enforceability of any and/or all of the arbitration provisions in Voyager's agreements with users, including reports and/or audits conducted by any third-party hired by Voyager.

7.      All documents regarding internal policies and procedures regarding the arbitration provisions found in any of the Customer Agreements (or its accompanying documents), including but not limited to, Voyager's policies and procedures concerning the handling of opt-out requests or requests to arbitrate and the notifications to users regarding the allegedly binding arbitration provision or any revisions or updates to the arbitration provision.

8.      Documents sufficient to identify (by party name, case or matter number, and name of forum) every lawsuit and arbitration demand made by a current or former user against Voyager, in any forum (such as FINRA, AAA, JAMS, etc.).

9.      All Documents regarding any and all federal, state, or local regulatory complaints against Voyager relating specifically to its Arbitration provisions.

## DOCUMENTS RELATING TO VOYAGER LTD. AND PERSONAL JURISDICTION

10.     All Corporate Records for You and any Related Entity.

11.     Documents sufficient to identify the Board of Directors and the organizational structure of You and any Related Entities.

12.     Documents showing Your ownership interest in, common ownership or control, or affiliation with, any Related Entity, and Your control over any Related Entities' business or operations.

13.     Contracts and Agreements between You (or any Related Entity) and Victor Oladipo, Landon Cassill, Coinify, BlockDaemon, or Market Rebellion. *See* https://www.bnnbloomberg.ca/voyager-digital-is-gearing-up-for-rapid-growth-with-new-acquisition-and-all-star-crypto-partnership-1.1639000 (last accessed March 7, 2022).

14.     Documents showing any registrations You or any Related Entities have in the state of Florida and any and all activities You or any Related Entities conduct in the state of Florida, including but not limited to loaning crypto assets, placing crypto asset orders to buy, sell, or convert crypto assets on the platform, merchant services, marketing and sales activities, and staking.

15.     Documents showing any Employee of Yours who, at any time, was also an Employee of any Related Entity to the extent such Employee: (i) was an officer or director of any Related Entity, or (ii) had duties within the course and scope of his/her employment involving the promotion, marketing, sale, or service of the Voyager Platform in Florida.

16.     Documents relating to any overlapping or shared departments or divisions between You and any Related Entities, e.g., human resources, compliance, or legal.

17.     Documents relating to any insurance coverage or policy issued to You or any Related Entity covering any insurable event arising out of the State of Florida relating to the Voyager Platform.

18.     Documents showing the location and duration of all travel to the State of Florida by any officer, director, or employee of Yours, relating in whole or in part, to the promotion, marketing, sale, or service of the Voyager Platform.

19.     Documents evidencing all of the Voyager Platform's registered account holders/customers domiciled in the State of Florida, the volume and quantity of all executed trade orders on the Voyager Platform by Your registered account holders/customers domiciled in the State of Florida, and how revenues and profits derived from the promotion, marketing, sale, or service of the Voyager Platform in Florida or to Florida customers are divided or allocated among You and any Related Entities. Such Documents may be redacted for the purpose of consumer privacy and protection.

20.     All Communication and Correspondence sent by You or any Related Entity to Florida consumers/residents relating to the promotion, marketing, sale, or service of the Voyager Platform. Such Documents may be redacted for the purpose of consumer privacy and protection.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 21-24441-CIV-ALTONAGA/Torres**

MARK CASSIDY, on behalf of himself
and others similarly situated,

      Plaintiff,

v.

VOYAGER DIGITAL LTD, and VOYAGER
DIGITAL LLC

      Defendants.

_____/

**PLAINTIFF'S REQUESTS FOR PRODUCTION REGARDING PERSONAL**
**JURISDICTION AND ARBITRATION TO DEFENDANT VOYAGER DIGITAL LLC,**
**AS PER COURT ORDER DATED MARCH 3, 2022 [ECF NO. 36]**

      Plaintiff, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and specifically

pursuant to the Court's Order dated March 3, 2022 [ECF No. 36], hereby requests that Defendant,

Voyager Digital LLC produce the following documents.

Dated: March 7, 2022           Respectfully submitted,

                        By:  /s/ *Adam Moskowitz*
                        Adam M. Moskowitz
                        Florida Bar No. 984280
                        adam@moskowitz-law.com
                        Joseph M. Kaye
                        Florida Bar No. 117520
                        joseph@moskowitz-law.com
                        Barbara C. Lewis
                        Florida Bar No. 118114
                        barbara@moskowitz-law.com
                        **THE MOSKOWITZ LAW FIRM, PLLC**
                        2 Alhambra Plaza, Suite 601
                        Coral Gables, FL 33134
                        Telephone: (305) 740-1423

By: */s/  Stuart Z. Grossman*
Stuart Z. Grossman
Florida Bar No. 156113
szg@grossmanroth.com
Rachel W. Furst
Florida Bar No. 45155
rwf@grossmanroth.com
GROSSMAN ROTH YAFFA COHEN, P.A.
2525 Ponce de Leon Blvd Ste 1150
Coral Gables, FL 33134
Office: 305-442-8666
*Co-Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2022, a true and correct copy of the foregoing was sent via electronic mail to counsel for Defendants.

By: */s/ Adam Moskowitz*_____
     Adam M. Moskowitz

## **DEFINITIONS**

Unless otherwise specified, the terms set forth below have the following meanings:

1.      "Voyager," "You," or "Your" means Voyager Digital LLC and any of its affiliates, subsidiaries, divisions, segments, predecessors, successors, officers, directors, employees, representatives, or agents.

2.      "Voyager Defendants" means Voyager and Voyager Digital LTD.

3.      "Voyager Platform" refers to the Voyager Defendants' mobile application cryptocurrency investment service that places cryptocurrency trade orders on behalf of users.

4.      "Voyager Algorithms" means Voyager's "Smart Order Routing," the "Voyager Pricing Engine," and the "Proprietary Fills Algorithm."

5.      "Related Entity" means Voyager Digital, LTD and any other entity based or incorporated in the United States, which is a direct or indirect parent or subsidiary of, or otherwise affiliated with or related to You, by common ownership or control, and which promotes, markets, sells, and/or services Voyager's mobile application cryptocurrency trading/investment platform.

6.      "Contracts and Agreements" is intended to and shall embrace and include all documents, forms, deeds, leases, memorandums of understanding, electronic correspondence, emails, letters and text messages that define rights and responsibilities between You and any Related Entity, or You and any other entity affiliated in any way with the promotion, marketing, sale, and servicing of Voyager's mobile application cryptocurrency trading/investment platform.

7.      "Corporate Records" means any Articles of Organization/Incorporation, Operating Agreements, Membership Agreements, and Partnership or Joint Venture Agreements, and listing or evidence of ownership interest and filings of similar-type incorporating documents with governmental agencies.

8.      "Employee" means any current or former officer, director, manager, member, secretary, staff member, agent, person receiving compensation, or other person employed.

9.      "Document(s)" means any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including but not limited to memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, telegrams, messages, manuscripts, studies, analyses, tests, comparisons, books, articles, pamphlets, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, minutes, agreements, contracts, and all other written communications, of any type, including inter and intra-office communications, purchase orders, invoices, bills, receipts, questionnaires, surveys, charts, graphs, videos, photographs, sketches, drawings, house sheets, tapes, voice messages or other recordings, print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof.

10.      "Communication(s)" means any mode or method of contact for the transmission, dissemination, request for, or receipt of information of any kind including thoughts, mental impressions, ideas, suggestions, etc., conveyed in any format, and by any means or medium whatsoever. This shall include, but shall not be limited to, all statements, admissions, denials, inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, telephone conversations, voice messages, letters, correspondence, notes, telegrams, telexes, emails, advertisements, or any other form of written or verbal intercourse. The requests include communication to, from, or within a corporate entity or organization and include any and all communications by, between, and among its representatives, employees, agents, advisors, brokers, or attorneys (except when privileged).

11.     The words "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope hereof any information which might otherwise be construed as to be outside the scope of these discovery requests.

12.     "Relating to," "relate to," "regarding," or "reflecting" means in any way directly or indirectly concerning, referring to, disclosing, describing, confirming, supporting, evidencing, representing, clarifying, evidencing, supporting, or contradicting.

13.     "Support" means referring to, concerning, responding to, reflecting, indicating, commenting on, regarding, discussing, showing, evidencing, describing, implying, analyzing, or consulting.

14.     "Person" or "People" means any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

15.     "Nationwide Class Members" means all individuals residing in the United States who, within the applicable limitations period, used the Voyager Defendants' trading platform to place cryptocurrency investment orders. Excluded from this definition are the Voyager Defendants and their officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

16.     "Florida Class Members" means all individuals residing in the state of Florida who, within the applicable limitations period, used the Voyager Defendants' trading platform to place cryptocurrency investment orders. Excluded from this definition are the Voyager Defendants and their officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

17.     Unless otherwise stated in a request, the time period for which you must respond is beginning in January 1, 2019 and ending at the present time.

## **INSTRUCTIONS**

1.     Production of documents and items requested herein shall be made at the offices of The Moskowitz Law Firm, 2 Alhambra Plaza, Suite 601, Coral Gables, Florida 33134.

2.     These requests shall include all documents that are in the possession, custody or control of Defendant or in the possession, custody or control of the present or former agents, representatives, or attorneys of Defendant, or any and all persons acting on the behalf of Defendant, or its present or former agents, representatives, or attorneys.

3.     For any document covered by a request that is withheld from production, Defendant shall provide the following information in the form of a privilege log:

   a.   the reasons and facts supporting any withholding;
   b.   the date such document was prepared;
   c.   the names, employment positions and addresses of the author or preparers of such document;
   d.   the names, employment positions, and the addresses of each person who received such document;
   e.   the title and a brief description of the document; and
   f.   the number of the request under which such document would be produced but for the objection.

4.     If any document responsive to a request has been destroyed, produce all documents describing or referencing:

   a.   the contents of the lost or destroyed document;
   b.   all locations in which any copy of the lost or destroyed document had been maintained;
   c.   the date of such loss or destruction;
   d.   the name of each person who ordered, authorized, and carried out the destruction of any responsive document;
   e.   all document retention and destruction policies in effect at the time any requested document was destroyed; and
   f.   all efforts made to locate any responsive document alleged to have been lost.

5.    In producing the documents requested, indicate the specific request(s) pursuant to which document or group of documents is being produced.

6.    These requests should be deemed continuing, and supplemental productions should be provided as additional documents become available.

7.    All documents are to be produced in the following method:

a)  Single page .TIFF

b)  Color .jpg (Documents wherein reflection of importance relies on color, shall be produced in .jpg format)

c)  OCR at document level (All documents are to be provided with searchable text files with the exception of the redacted portions of redacted documents)

d)  Electronic documents and Emails are to be processed and converted from the electronic format to single page tiff

e)  Native Files such as Excel files, PowerPoints, audio and video, CSV files, and other similar spreadsheet files shall be produced in native format ("Native Files") instead of in .TIFF, unless redactions are necessary for such files in which case such files may be produced in .TIFF format. Such Native Files (if any) will be provided in a self-identified "Natives" directory. Each Native File will be produced with a corresponding single-page .TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files should be named with the beginning Bates number that is assigned to that specific record in the production. A Native "Link" entry for each spreadsheet will be included in the .DAT load file indicating the relative file path to each native file on the production media. Native Files will be produced with extracted text and applicable metadata fields.

f)  Hard Copy Documents are to be produced in Single page .TIFF with accompanying document-level full text and corresponding load files. Load files shall include custodian and doc source.

i.  To the extent that the document is or was usually kept or maintained in a file folder or other marked or identifiable location, the production shall include information sufficient to identify such file, folder, or location.

  ii. For hard copy document that is redacted, the production party shall provide OCR for the produced image as redacted.

  iii. All hard copy documents should be produced in optical character recognition format, OCR.

 g) All metadata values should be extracted and produced in a text file with Pipe "|" and Caret "^" delimiters. (Metadata fields are described below)

 h) The following metadata fields shall be produced where available:

| | | |
|---|---|---|
| Image bates number | Email To | Email From |
| Email CC | Email BCC | Email Subject |
| Header | Folder ID | Folder Name |
| Read | Date Created | Date Saved |
| Date Received | Time Received | Date Sent |
| Time Sent | Application | Attachment range |
| Attachment Title | Attachment Count | Custodian of collection |
| Edoc, Email, Attachment | Attachment bates id | Parent bates id |
| Folder path | File Name | File Author |
| File Extension | MD5 Hash | Page count |

 i) To the extent reasonably available, the "Custodian" "Source" or "Original Path" field with respect to ESI gathered from an individual's hard drive will provide metadata sufficient to identify the custodian from whose hard drive such ESI has been gathered.

Delivery Formats:

 a) Data shall be delivered in the following formats: .DII, .OPT (load file) & .DAT (metadata file) including @Fulltext DOC and an @DOCLINK (containing path to native file in deliverable) for any native documents produced.

 b) The .TIFF files and extracted text files (OCR) shall be named as the corresponding DOCID and stored in the same folder named "IMAGES" and loaded using the industry standard files stated above that loads both Image and Text files simultaneously (@Fulltext DOC).

c)   The native files shall be stored in a separate folder named "Native Files" and shall be loaded through the data in the @Doclink token in the dii file.

d)   Method of delivery will be accepted by CD, DVD, External Hard Drive or Secure FTP location.

## REQUESTS FOR PRODUCTION

*Please refer to the Definitions and Instructions when responding to these requests. To the extent that any of these requests seek information considered by Voyager to be confidential, Plaintiff will enter into any reasonable confidentiality agreement with Voyager to protect such confidential information.*

### I.    DOCUMENTS RELATING TO PLAINTIFF IN FLORIDA

1.      All Documents, including internal Communications, regarding Plaintiff or Plaintiff's Voyager account.

2.      All Documents, including internal Communications, regarding Your decision to change, cancel and/or restrict Plaintiff's Voyager account, subsequent to the filing of this proposed class action, including how You investigated his allegations, and how that compared or differed from how you investigated prior complaints made by users of the Voyager Platform to the Better Business Bureau, *see* https://www.bbb.org/us/ny/new-york/profile/cryptocurrency-exchange/voyager-digital-llc-0121-87148788 (last accessed March 7, 2022).

3.      All Documents, including internal Communications, regarding the specific version of the Customer Agreement, which contains any alleged arbitration provision, You contend applies to Plaintiff's claims in this action.

4.      All Documents to explain why You decided to change the arbitration provision in the Voyager Customer Agreement after this Lawsuit was filed.

### DOCUMENTS RELATING SPECIFICALLY TO ARBITRATION

5.      A sample copy of every (different) Customer Agreement between Voyager and users of the Voyager Platform from January 1, 2019 to the present, and, for every (different)

Customer Agreement, produce all Documents, including internal Communications, regarding any notification provided to users of the Voyager Platform of any changes to the Customer Agreement, from January 1, 2019 to the present, including but not limited to, the date and substance of any communications sent to users and any action(s) that Voyager implemented to the platform to inform users of the arbitration provisions.

6.      All internal reports and/or audits and communications regarding the legality and/or enforceability of any and/or all of the arbitration provisions in Voyager's agreements with users, including reports and/or audits conducted by any third-party hired by Voyager.

7.      All documents regarding internal policies and procedures regarding the arbitration provisions found in any of the Customer Agreements (or its accompanying documents), including but not limited to, Voyager's policies and procedures concerning the handling of opt-out requests or requests to arbitrate and the notifications to users regarding the allegedly binding arbitration provision or any revisions or updates to the arbitration provision.

8.      Documents sufficient to identify (by party name, case or matter number, and name of forum) every lawsuit and arbitration demand made by a current or former user against Voyager, in any forum (such as FINRA, AAA, JAMS, etc.).

9.      All Documents regarding any and all federal, state, or local regulatory complaints against Voyager relating specifically to its Arbitration provisions.

## DOCUMENTS REGARDING VOYAGER DIGITAL LTD AND PERSONAL JURISDICTION

10.     All Corporate Records for You and any Related Entity.

11.     Documents sufficient to identify the Board of Directors and the organizational structure of You and any Related Entities.

12.     Documents showing Your ownership interest in, common ownership or control, or affiliation with, any Related Entity, and Your control over any Related Entities' business or operations.

13.     Contracts and Agreements between You (or any Related Entity) and Victor Oladipo, Landon Cassill, Coinify, BlockDaemon, or Market Rebellion. *See* https://www.bnnbloomberg.ca/voyager-digital-is-gearing-up-for-rapid-growth-with-new-acquisition-and-all-star-crypto-partnership-1.1639000 (last accessed March 7, 2022).

14.     Documents showing any registrations You or any Related Entities have in the state of Florida and any and all activities You or any Related Entities conduct in the state of Florida, including but not limited to loaning crypto assets, placing crypto asset orders to buy, sell, or convert crypto assets on the platform, merchant services, marketing and sales activities, and staking.

15.     Documents showing any Employee of Yours who, at any time, was also an Employee of any Related Entity to the extent such Employee: (i) was an officer or director of any Related Entity, or (ii) had duties within the course and scope of his/her employment involving the promotion, marketing, sale, or service of the Voyager Platform in Florida.

16.     Documents relating to any overlapping or shared departments or divisions between You and any Related Entities, e.g., human resources, compliance, or legal.

17.     Documents relating to any insurance coverage or policy issued to You or any Related Entity covering any insurable event arising out of the State of Florida relating to the Voyager Platform.

18.     Documents showing the location and duration of all travel to the State of Florida by any officer, director, or employee of Yours, relating in whole or in part, to the promotion, marketing, sale, or service of the Voyager Platform.

19.     Documents evidencing all of the Voyager Platform's registered account holders/customers domiciled in the State of Florida, the volume and quantity of all executed trade orders on the Voyager Platform by Your registered account holders/customers domiciled in the State of Florida, and how revenues and profits derived from the promotion, marketing, sale, or service of the Voyager Platform in Florida or to Florida customers are divided or allocated among You and any Related Entities. Such Documents may be redacted for the purpose of consumer privacy and protection.

20.     All Communication and Correspondence sent by You or any Related Entity to Florida consumers/residents relating to the promotion, marketing, sale, or service of the Voyager Platform. Such Documents may be redacted for the purpose of consumer privacy and protection.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 21-24441-CIV-ALTONAGA/Torres**

MARK CASSIDY, on behalf of himself
and others similarly situated,

      Plaintiff,

v.

VOYAGER DIGITAL LTD, and
VOYAGER DIGITAL LLC

      Defendants.

_____/

**PLAINTIFF'S SET OF TEN INTERROGATORIES REGARDING PERSONAL**
**JURISDICTION AND ARBITRATION TO DEFENDANT VOYAGER DIGITAL LTD,**
**AS PER COURT ORDER DATED MARCH 3, 2022 [ECF NO. 36**

      Plaintiff, pursuant to Fed. R. Civ. P. 33, and pursuant to the Court Order dated March 3,

2022 [ECF No. 36], hereby propounds these interrogatories on Defendant Voyager Digital LTD.

Dated: March 7, 2022           Respectfully submitted,

                      By:  */s/ Adam Moskowitz*
                           Adam M. Moskowitz
                           Florida Bar No. 984280
                           adam@moskowitz-law.com
                           Joseph M. Kaye
                           Florida Bar No. 117520
                           joseph@moskowitz-law.com
                           Barbara C. Lewis
                           Florida Bar No. 118114
                           barbara@moskowitz-law.com
                           **THE MOSKOWITZ LAW FIRM, PLLC**
                           2 Alhambra Plaza, Suite 601
                           Coral Gables, FL 33134
                           Telephone: (305) 740-1423

By: */s/  Stuart Z. Grossman*
Stuart Z. Grossman
Florida Bar No. 156113
szg@grossmanroth.com
Rachel W. Furst
Florida Bar No. 45155
rwf@grossmanroth.com
GROSSMAN ROTH YAFFA COHEN, P.A.
2525 Ponce de Leon Blvd Ste 1150
Coral Gables, FL 33134
Office: 305-442-8666
*Co-Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2022, a true and correct copy of the foregoing

was sent via electronic mail to counsel for Defendants.

By: */s/ Adam Moskowitz*
Adam M. Moskowitz

## DEFINITIONS AND INSTRUCTIONS

Unless otherwise specified, the terms set forth below have the following meanings:

1.      "Voyager," "You," or "Your" means Voyager Digital LTD and any of its affiliates, subsidiaries, divisions, segments, predecessors, successors, officers, directors, employees, representatives, or agents.

2.      "Voyager Defendants" means Voyager and Voyager Digital LLC.

3.      "Voyager Platform" refers to the Voyager Defendants' mobile application cryptocurrency investment service that places cryptocurrency trade orders on behalf of users.

4.      "Voyager Algorithms" means Voyager's "Smart Order Routing," the "Voyager Pricing Engine," and the "Proprietary Fills Algorithm."

5.      "Related Entity" means Voyager Digital, LLC and any other entity based or incorporated in the United States, which is a direct or indirect parent or subsidiary of, or otherwise affiliated with or related to You, by common ownership or control, and which promotes, markets, sells, and/or services Voyager's mobile application cryptocurrency trading/investment platform.

6.      "Contracts and Agreements" is intended to and shall embrace and include all documents, forms, deeds, leases, memorandums of understanding, electronic correspondence, emails, letters and text messages that define rights and responsibilities between You and any Related Entity, or You and any other entity affiliated in any way with the promotion, marketing, sale, and servicing of Voyager's mobile application cryptocurrency trading/investment platform.

7.      "Corporate Records" means any Articles of Organization/Incorporation, Operating Agreements, Membership Agreements, and Partnership or Joint Venture Agreements, and listing or evidence of ownership interest and filings of similar-type incorporating documents with governmental agencies.

8.      "Employee" means any current or former officer, director, manager, member,

secretary, staff member, agent, person receiving compensation, or other person employed.

9.      "Document(s)" means any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including but not limited to memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, telegrams, messages, manuscripts, studies, analyses, tests, comparisons, books, articles, pamphlets, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, minutes, agreements, contracts, and all other written communications, of any type, including inter and intra-office communications, purchase orders, invoices, bills, receipts, questionnaires, surveys, charts, graphs, videos, photographs, sketches, drawings, house sheets, tapes, voice messages or other recordings, print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof.

10.     "Communication(s)" means any mode or method of contact for the transmission, dissemination, request for, or receipt of information of any kind including thoughts, mental impressions, ideas, suggestions, etc., conveyed in any format, and by any means or medium whatsoever. This shall include, but shall not be limited to, all statements, admissions, denials, inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, telephone conversations, voice messages, letters, correspondence, notes, telegrams, telexes, emails, advertisements, or any other form of written or verbal intercourse. The requests include communication to, from, or within a corporate entity or organization and include any and all communications by, between, and among its representatives, employees, agents, advisors, brokers, or attorneys (except when privileged).

11.     The words "and" and "or" shall be construed either disjunctively or conjunctively

as necessary to bring within the scope hereof any information which might otherwise be construed as to be outside the scope of these discovery requests.

12.     "Relating to," "relate to," "regarding," or "reflecting" means in any way directly or indirectly concerning, referring to, disclosing, describing, confirming, supporting, evidencing, representing, clarifying, evidencing, supporting, or contradicting.

13.     "Support" means referring to, concerning, responding to, reflecting, indicating, commenting on, regarding, discussing, showing, evidencing, describing, implying, analyzing or consulting.

14.     "Nationwide Class Members" means all individuals residing in the United States who, within the applicable limitations period, used the Voyager Defendants' trading platform to place cryptocurrency investment orders. Excluded from this definition are the Voyager Defendants and their officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

15.     "Florida Class Members" means all individuals residing in the state of Florida who, within the applicable limitations period, used the Voyager Defendants' trading platform to place cryptocurrency investment orders. Excluded from this definition are the Voyager Defendants and their officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

16.     Unless otherwise stated in a particular subject, the time period for which you must respond is from January 1, 2019 to present time.

17.     "Identify:" When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural

person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person. In all other aspects, "Identify" means to describe, explain, depict, and/or provide details of the information requested.

18.     "Person" or "People" means any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

19.     All/Each – The terms "all" and "each" shall be construed as meaning either all or each as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

20.     Objections: Where an objection is made to any interrogatory, the objection shall state with specificity all grounds. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or by the Court's order, or any extensions thereof, shall be waived.

21.     Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients or other representatives of affiliated third parties.

22.     Pursuant to Federal Rule of Civil Procedure 26(e), these interrogatories are continuing in nature, so that if, after answering, you acquire additional responsive knowledge or information, plaintiffs direct that you serve supplemental answers upon them within seven days after acquiring such additional knowledge or information.

23.     If the person who verifies the answers to the interrogatories does not have personal knowledge of the information contained in the answers, that person shall, for each answer not verified by personal knowledge, identify the person or persons from whom the information was obtained or, if the source of information is documentary, provide a full description including the

location thereof.

24.     Where identification of a document is required, the following shall be separately

stated as to each document:

    a)  its date, its exact title, and the nature and substance of the document with sufficient particularity to enable it to be identified and located within any document production;

    b)  the name of the author, his or her business affiliation (presently and at the time the document was prepared), and his or her last known address;

    c)  the name, business affiliation (both presently and at the time the document was prepared) and the last known address of the addressee;

    d)  the name, business affiliation (both presently and at the time the document was prepared) and the last known address of every person to whom a copy of the document was to be sent, other than the addressee described above;

    e)  the names and addresses of all persons who now possess either the original or any copy thereof; and

    f)  the identification and location of the files where the original and each copy is normally or presently kept.

25.     Whenever identification of a person is required, the following shall be separately

stated as to each person:

    a)  the name and last known business address or location and phone number of each such person; and

    b)  if such person is an individual, additionally state:

    c)  the business position or positions held by that individual at the time or times for which such identification is requested;

    d)  such person's last known residence address and telephone number; and

    e)  if such a person is not an individual, but rather an entity or organization, additionally identify the individual(s) employed by or representing such entity or organization who has knowledge of the matter at issue.

26.     If you refuse to respond to any of these interrogatories based on a claim of privilege

or confidentiality, you must provide a statement of the claim of privilege (including work-product)

and all facts relied upon in support of that claim, including the parties involved, any dates involved,

the relevant subject matter of the privileged material, any documents or oral communications

supporting the privileged information, including the dates, authors, recipients, title and subject

matter, and present location of any documents involved. In the case of attorney work-product

privilege, you must also identify the litigation for which the work-product was prepared.

27.     If you answer any interrogatory by reference to business records pursuant to Federal Rule of Civil Procedure 33(d), identify such records by specific bates number and the name(s) of your employee(s) certifying the documents as business records for purposes of answering the interrogatory.

## PLAINTIFFS TEN (10) INTERROGATORIES

*Please refer to the Definitions and Instructions when responding to these interrogatories. To the extent that any of these requests seek information considered by Voyager to be confidential, Plaintiff will enter into any reasonable confidentiality agreement with Voyager to protect such confidential information.*

### QUESTIONS RELATING TO PLAINTIFF

1.      Identify and explain whether either You took any action towards Plaintiff's Voyager account after this case was filed, that would have any impact to cancel, restrict and/or affect use of his account, including on what date that decision was made, how the action was effectuated, and all reasons why the action was effectuated.

2.      Identify and explain what version of the Customer Agreement You contend applies to Plaintiff's claims in this action, when and how Plaintiff was given notice of that version of the Customer Agreement, and when and how You contend Plaintiff manifested his consent to be bound by that version of the Customer Agreement.

3.      Explain why You believe that Plaintiff's relationship with You is not bound to any FINRA regulations, including, but not limited to, relating to arbitration.

### QUESTIONS RELATING TO ARBITRATION AND PERSONAL JURISDCTION

4.      Identify (i) every (different) Customer Agreement between Voyager and users of the Voyager Platform from January 1, 2019 to the present; (ii) when You contend each version of the Customer Agreement was effective; (iii) whether notification of each revision to the Customer Agreement was given to users of the Voyager Platform; (iv) in what manner such

notification was given to users of the Voyager Platform; (v) when such notification was given to users of the Voyager Platform; and (vi) when and how You contend the users manifested their consent to be bound by each version of the Customer Agreement.

5.      Identify, by name, position, and contact, the individuals at Voyager who are responsible for handling matters relating to arbitration.

6.      Identify all lawsuits and arbitration (in any forum, including but not limited to, FINRA, AAA, JAMMS, etc.) demands made by current or former users against Voyager. For each, state: the caption of the case or matter (the parties, the case number, the court or forum that heard the matter), the date the demand was lodged and/or the case was filed, a brief statement summarizing the allegations and how the matter was resolved.

7.      Identify all lawsuits and arbitration (in any forum, including but not limited to, FINRA, AAA, JAMMS, etc.) demands initiated by Voyager against current or former users. For each, state: the caption of the case or matter (the parties, the case number, the court or forum that heard the matter), the date the demand was lodged and/or the case was filed, a brief statement summarizing the allegations and how the matter was resolved.

8.      Identify "all available markets to which Voyager has access" as stated in https://www.investvoyager.com/blog/passion-for-product-trading/, including but not limited to where those markets are located and where users are located for whom Voyager places trades on those markets.

9.      Identify the total revenue that Voyager has received as a result of the transactions completed using the Voyager Platform, stating the amount per quarter from January 1, 2019 to the present, and explain how much revenue is derived from "spread revenue and interest revenue," as well as how "Voyager executes trades and captures spread revenue in both up and down markets," and Identify and explain how Your "Rewards paid to customers" went from

approximately $1,540,000 in the six month period ending December 31, 2020, to approximately $122,693,000 in the six month period ending December 31, 2021, including the breakdown for such revenues by state, including specifically the state of Florida. *See* Steve Ehrlich's remarks in the Transcript of March 1, 2021 Earnings Call; *see also* Voyager Digital LTD. Management's Discussion and Analysis for the quarter ending December 31, 2021, dated February 14, 2022.

10.    Identify all persons, entities, or Related Entity that has partnered with or entered into any Contracts or Agreements with You in the state of Florida, including a brief description of each entity's role.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 21-24441-CIV-ALTONAGA/Torres**

MARK CASSIDY, on behalf of himself
and others similarly situated,

      Plaintiff,

v.

VOYAGER DIGITAL LTD, and
VOYAGER DIGITAL LLC

      Defendants.

_____/

**PLAINTIFF'S SET OF TEN INTERROGATORIES REGARDING PERSONAL**
**JURISDICTION AND ARBITRATION TO DEFENDANT VOYAGER DIGITAL LLC,**
**AS PER COURT ORDER DATED MARCH 3, 2022 [ECF NO. 36**

      Plaintiff, pursuant to Fed. R. Civ. P. 33, and pursuant to the Court Order dated March 3,

2022 [ECF No. 36], hereby propounds these interrogatories on Defendant Voyager Digital LLC.


Dated: March 7, 2022          Respectfully submitted,

                    By:  /s/ *Adam Moskowitz*_____
                        Adam M. Moskowitz
                        Florida Bar No. 984280
                        adam@moskowitz-law.com
                        Joseph M. Kaye
                        Florida Bar No. 117520
                        joseph@moskowitz-law.com
                        Barbara C. Lewis
                        Florida Bar No. 118114
                        barbara@moskowitz-law.com
                        **THE MOSKOWITZ LAW FIRM, PLLC**
                        2 Alhambra Plaza, Suite 601
                        Coral Gables, FL 33134
                        Telephone: (305) 740-1423

By: */s/   Stuart Z. Grossman*
Stuart Z. Grossman
Florida Bar No. 156113
szg@grossmanroth.com
Rachel W. Furst
Florida Bar No. 45155
rwf@grossmanroth.com
GROSSMAN ROTH YAFFA COHEN, P.A.
2525 Ponce de Leon Blvd Ste 1150
Coral Gables, FL 33134
Office: 305-442-8666
*Co-Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2022, a true and correct copy of the foregoing was sent via electronic mail to counsel for Defendants.

By: */s/ Adam Moskowitz* _____
Adam M. Moskowitz

## DEFINITIONS AND INSTRUCTIONS

Unless otherwise specified, the terms set forth below have the following meanings:

1.      "Voyager," "You," or "Your" means Voyager Digital LLC and any of its affiliates, subsidiaries, divisions, segments, predecessors, successors, officers, directors, employees, representatives, or agents.

2.      "Voyager Defendants" means Voyager and Voyager Digital LTD.

3.      "Voyager Platform" refers to the Voyager Defendants' mobile application cryptocurrency investment service that places cryptocurrency trade orders on behalf of users.

4.      "Voyager Algorithms" means Voyager's "Smart Order Routing," the "Voyager Pricing Engine," and the "Proprietary Fills Algorithm."

5.      "Related Entity" means Voyager Digital, LTD and any other entity based or incorporated in the United States, which is a direct or indirect parent or subsidiary of, or otherwise affiliated with or related to You, by common ownership or control, and which promotes, markets, sells, and/or services Voyager's mobile application cryptocurrency trading/investment platform.

6.      "Contracts and Agreements" is intended to and shall embrace and include all documents, forms, deeds, leases, memorandums of understanding, electronic correspondence, emails, letters and text messages that define rights and responsibilities between You and any Related Entity, or You and any other entity affiliated in any way with the promotion, marketing, sale, and servicing of Voyager's mobile application cryptocurrency trading/investment platform.

7.      "Corporate Records" means any Articles of Organization/Incorporation, Operating Agreements, Membership Agreements, and Partnership or Joint Venture Agreements, and listing or evidence of ownership interest and filings of similar-type incorporating documents with governmental agencies.

8.      "Employee" means any current or former officer, director, manager, member,

secretary, staff member, agent, person receiving compensation, or other person employed.

9.      "Document(s)" means any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including but not limited to memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, telegrams, messages, manuscripts, studies, analyses, tests, comparisons, books, articles, pamphlets, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, minutes, agreements, contracts, and all other written communications, of any type, including inter and intra-office communications, purchase orders, invoices, bills, receipts, questionnaires, surveys, charts, graphs, videos, photographs, sketches, drawings, house sheets, tapes, voice messages or other recordings, print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof.

10.     "Communication(s)" means any mode or method of contact for the transmission, dissemination, request for, or receipt of information of any kind including thoughts, mental impressions, ideas, suggestions, etc., conveyed in any format, and by any means or medium whatsoever. This shall include, but shall not be limited to, all statements, admissions, denials, inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, telephone conversations, voice messages, letters, correspondence, notes, telegrams, telexes, emails, advertisements, or any other form of written or verbal intercourse. The requests include communication to, from, or within a corporate entity or organization and include any and all communications by, between, and among its representatives, employees, agents, advisors, brokers, or attorneys (except when privileged).

11.     The words "and" and "or" shall be construed either disjunctively or conjunctively

as necessary to bring within the scope hereof any information which might otherwise be construed as to be outside the scope of these discovery requests.

12.     "Relating to," "relate to," "regarding," or "reflecting" means in any way directly or indirectly concerning, referring to, disclosing, describing, confirming, supporting, evidencing, representing, clarifying, evidencing, supporting, or contradicting.

13.     "Support" means referring to, concerning, responding to, reflecting, indicating, commenting on, regarding, discussing, showing, evidencing, describing, implying, analyzing or consulting.

14.     "Nationwide Class Members" means all individuals residing in the United States who, within the applicable limitations period, used the Voyager Defendants' trading platform to place cryptocurrency investment orders. Excluded from this definition are the Voyager Defendants and their officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

15.     "Florida Class Members" means all individuals residing in the state of Florida who, within the applicable limitations period, used the Voyager Defendants' trading platform to place cryptocurrency investment orders. Excluded from this definition are the Voyager Defendants and their officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

16.     Unless otherwise stated in a particular subject, the time period for which you must respond is from January 1, 2019 to present time.

17.     "Identify:" When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural

person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person. In all other aspects, "Identify" means to describe, explain, depict, and/or provide details of the information requested.

18.     "Person" or "People" means any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

19.     All/Each – The terms "all" and "each" shall be construed as meaning either all or each as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

20.     Objections: Where an objection is made to any interrogatory, the objection shall state with specificity all grounds. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or by the Court's order, or any extensions thereof, shall be waived.

21.     Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients or other representatives of affiliated third parties.

22.     Pursuant to Federal Rule of Civil Procedure 26(e), these interrogatories are continuing in nature, so that if, after answering, you acquire additional responsive knowledge or information, plaintiffs direct that you serve supplemental answers upon them within seven days after acquiring such additional knowledge or information.

23.     If the person who verifies the answers to the interrogatories does not have personal knowledge of the information contained in the answers, that person shall, for each answer not verified by personal knowledge, identify the person or persons from whom the information was obtained or, if the source of information is documentary, provide a full description including the

location thereof.

24.     Where identification of a document is required, the following shall be separately

stated as to each document:

a)  its date, its exact title, and the nature and substance of the document with sufficient
    particularity to enable it to be identified and located within any document
    production;

b)  the name of the author, his or her business affiliation (presently and at the time the
    document was prepared), and his or her last known address;

c)  the name, business affiliation (both presently and at the time the document was
    prepared) and the last known address of the addressee;

d)  the name, business affiliation (both presently and at the time the document was
    prepared) and the last known address of every person to whom a copy of the
    document was to be sent, other than the addressee described above;

e)  the names and addresses of all persons who now possess either the original or
    any copy thereof; and

f)  the identification and location of the files where the original and each copy is
    normally or presently kept.

25.     Whenever identification of a person is required, the following shall be separately

stated as to each person:

a)  the name and last known business address or location and phone number of each
    such person; and

b)  if such person is an individual, additionally state:

c)  the business position or positions held by that individual at the time or times for
    which such identification is requested;

d)  such person's last known residence address and telephone number; and

e)  if such a person is not an individual, but rather an entity or organization,
    additionally identify the individual(s) employed by or representing such entity or
    organization who has knowledge of the matter at issue.

26.     If you refuse to respond to any of these interrogatories based on a claim of privilege

or confidentiality, you must provide a statement of the claim of privilege (including work-product)

and all facts relied upon in support of that claim, including the parties involved, any dates involved,

the relevant subject matter of the privileged material, any documents or oral communications

supporting the privileged information, including the dates, authors, recipients, title and subject

matter, and present location of any documents involved. In the case of attorney work-product

privilege, you must also identify the litigation for which the work-product was prepared.

27.     If you answer any interrogatory by reference to business records pursuant to Federal Rule of Civil Procedure 33(d), identify such records by specific bates number and the name(s) of your employee(s) certifying the documents as business records for purposes of answering the interrogatory.

## PLAINTIFFS TEN (10) INTERROGATORIES

*Please refer to the Definitions and Instructions when responding to these interrogatories. To the extent that any of these requests seek information considered by Voyager to be confidential, Plaintiff will enter into any reasonable confidentiality agreement with Voyager to protect such confidential information.*

### QUESTIONS RELATING TO PLAINTIFF

1.      Identify and explain whether either You took any action towards Plaintiff's Voyager account after this case was filed, that would have any impact to cancel, restrict and/or affect use of his account, including on what date that decision was made, how the action was effectuated, and all reasons why the action was effectuated.

2.      Identify and explain what version of the Customer Agreement You contend applies to Plaintiff's claims in this action, when and how Plaintiff was given notice of that version of the Customer Agreement, and when and how You contend Plaintiff manifested his consent to be bound by that version of the Customer Agreement.

3.      Explain why You believe that Plaintiff's relationship with You is not bound to any FINRA regulations, including, but not limited to, relating to arbitration.

### QUESTIONS RELATING TO ARBITRATION AND PERSONAL JURISDCTION

4.      Identify (i) every (different) Customer Agreement between Voyager and users of the Voyager Platform from January 1, 2019 to the present; (ii) when You contend each version of the Customer Agreement was effective; (iii) whether notification of each revision to the Customer Agreement was given to users of the Voyager Platform; (iv) in what manner such

notification was given to users of the Voyager Platform; (v) when such notification was given to users of the Voyager Platform; and (vi) when and how You contend the users manifested their consent to be bound by each version of the Customer Agreement.

5.    Identify, by name, position, and contact, the individuals at Voyager who are responsible for handling matters relating to arbitration.

6.    Identify all lawsuits and arbitration (in any forum, including but not limited to, FINRA, AAA, JAMMS, etc.) demands made by current or former users against Voyager. For each, state: the caption of the case or matter (the parties, the case number, the court or forum that heard the matter), the date the demand was lodged and/or the case was filed, a brief statement summarizing the allegations and how the matter was resolved.

7.    Identify all lawsuits and arbitration (in any forum, including but not limited to, FINRA, AAA, JAMMS, etc.) demands initiated by Voyager against current or former users. For each, state: the caption of the case or matter (the parties, the case number, the court or forum that heard the matter), the date the demand was lodged and/or the case was filed, a brief statement summarizing the allegations and how the matter was resolved.

8.    Identify "all available markets to which Voyager has access" as stated in https://www.investvoyager.com/blog/passion-for-product-trading/, including but not limited to where those markets are located and where users are located for whom Voyager places trades on those markets.

9.    Identify the total revenue that Voyager has received as a result of the transactions completed using the Voyager Platform, stating the amount per quarter from January 1, 2019 to the present, and explain how much revenue is derived from "spread revenue and interest revenue," as well as how "Voyager executes trades and captures spread revenue in both up and down markets," and Identify and explain how Your "Rewards paid to customers" went from

approximately $1,540,000 in the six month period ending December 31, 2020, to approximately $122,693,000 in the six month period ending December 31, 2021, including the breakdown for such revenues by state, including specifically the state of Florida. *See* Steve Ehrlich's remarks in the Transcript of March 1, 2021 Earnings Call; *see also* Voyager Digital LTD. Management's Discussion and Analysis for the quarter ending December 31, 2021, dated February 14, 2022.

10. Identify all persons, entities, or Related Entity that has partnered with or entered into any Contracts or Agreements with You in the state of Florida, including a brief description of each entity's role.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 21-24441-CIV-ALTONAGA/Torres**

MARK CASSIDY, on behalf of himself
and others similarly situated,

      Plaintiff,

v.

VOYAGER DIGITAL LTD, and
VOYAGER DIGITAL LLC

      Defendants.

_____/

**NOTICE OF TAKING THE ZOOM DEPOSITION OF**
**VOYAGER DIGITAL LTD. RULE 30(b)(6) REPRESENTATIVE(S) AS PER COURT**
**ORDER DATED MARCH 3, 2022 [ECF NO. 36]**

      Pursuant to Federal Rule of Civil Procedure 30(b)(6) and this Court's Order dated March

3, 2022 [ECF No. 36], Plaintiff's counsel will take the deposition of the below-named person/entity

on the date, time, and at the location indicated.

| | |
|---|---|
| **DEPONENT**: | Voyager Digital LTD ("Voyager"), by and through Voyager's corporate representative(s) with knowledge of the items listed in **Exhibit A,** pursuant to Federal Rule of Civil Procedure 30(b)(6). |
| **DATE**: | Monday, April 4, 2022 |
| **TIME**: | 10:00 AM (EST) |
| **LOCATION**: | Deposition will be taken via Zoom (contact counsel for details) |

      The aforesaid deposition will be before a court reporter, an officer authorized by law to

administer oaths and take depositions in the State of Florida.  The deposition is being taken for the

purpose of discovery, for use at trial, or both, or for such other purposes as are permitted under the

Federal and Local Rules of Civil Procedure.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Voyager LTD shall designate one or more officers, directors, managing agents, or other persons to testify on its behalf on each topic listed on **Exhibit A** attached hereto.

Dated: March 7, 2022                          Respectfully submitted,

By:   /s/ *Adam Moskowitz*                            
          Adam M. Moskowitz
          Florida Bar No. 984280
          adam@moskowitz-law.com
          Joseph M. Kaye
          Florida Bar No. 117520
          joseph@moskowitz-law.com
          Barbara C. Lewis
          Florida Bar No. 118114
          barbara@moskowitz-law.com
          **THE MOSKOWITZ LAW FIRM, PLLC**
          2 Alhambra Plaza, Suite 601
          Coral Gables, FL 33134
          Telephone: (305) 740-1423


By: /s/  *Stuart Z. Grossman*
Stuart Z. Grossman
Florida Bar No. 156113
szg@grossmanroth.com
Rachel W. Furst
Florida Bar No. 45155
rwf@grossmanroth.com
GROSSMAN ROTH YAFFA COHEN, P.A.
2525 Ponce de Leon Blvd Ste 1150
Coral Gables, FL 33134
Office: 305-442-8666
*Co-Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2022, a true and correct copy of the foregoing was sent via electronic mail to counsel for Defendants.

By: /s/ *Adam Moskowitz*                            
          Adam M. Moskowitz

**EXHIBIT A**

**I. DEFINITIONS AND INSTRUCTIONS**

Unless otherwise specified, the terms set forth below have the following meanings:

1.      "Voyager," "You," or "Your" means Voyager Digital LTD and any of its affiliates, subsidiaries, divisions, segments, predecessors, successors, officers, directors, employees, representatives, or agents.

2.      "Voyager Defendants" means Voyager and Voyager Digital LLC.

3.      "Voyager Platform" refers to the Voyager Defendants' mobile application cryptocurrency investment service that places cryptocurrency trade orders on behalf of users.

4.      "Voyager Algorithms" means Voyager's "Smart Order Routing," the "Voyager Pricing Engine," and the "Proprietary Fills Algorithm."

5.      "Related Entity" means Voyager Digital, LLC and any other entity based or incorporated in the United States, which is a direct or indirect parent or subsidiary of, or otherwise affiliated with or related to You, by common ownership or control, and which promotes, markets, sells, and/or services Voyager's mobile application cryptocurrency trading/investment platform.

6.      "Contracts and Agreements" is intended to and shall embrace and include all documents, forms, deeds, leases, memorandums of understanding, electronic correspondence, emails, letters and text messages that define rights and responsibilities between You and any Related Entity, or You and any other entity affiliated in any way with the promotion, marketing, sale, and servicing of Voyager's mobile application cryptocurrency trading/investment platform.

7.      "Corporate Records" means any Articles of Organization/Incorporation, Operating Agreements, Membership Agreements, and Partnership or Joint Venture Agreements, and listing or evidence of ownership interest and filings of similar-type incorporating documents with governmental agencies.

8.     "Employee" means any current or former officer, director, manager, member, secretary, staff member, agent, person receiving compensation, or other person employed.

9.     "Document(s)" means any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including but not limited to memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, telegrams, messages, manuscripts, studies, analyses, tests, comparisons, books, articles, pamphlets, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, minutes, agreements, contracts, and all other written communications, of any type, including inter and intra-office communications, purchase orders, invoices, bills, receipts, questionnaires, surveys, charts, graphs, videos, photographs, sketches, drawings, house sheets, tapes, voice messages or other recordings, print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof.

10.     "Communication(s)" means any mode or method of contact for the transmission, dissemination, request for, or receipt of information of any kind including thoughts, mental impressions, ideas, suggestions, etc., conveyed in any format, and by any means or medium whatsoever. This shall include, but shall not be limited to, all statements, admissions, denials, inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, telephone conversations, voice messages, letters, correspondence, notes, telegrams, telexes, emails, advertisements, or any other form of written or verbal intercourse. The requests include communication to, from, or within a corporate entity or organization and include any and all communications by, between, and among its representatives, employees, agents, advisors, brokers, or attorneys (except when privileged).

11.     The words "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope hereof any information which might otherwise be construed as to be outside the scope of Plaintiff's discovery requests.

12.     "Relating to," "relate to," "regarding," or "reflecting" means in any way directly or indirectly concerning, referring to, disclosing, describing, confirming, supporting, evidencing, representing, clarifying, evidencing, supporting, or contradicting.

13.     "Support" means referring to, concerning, responding to, reflecting, indicating, commenting on, regarding, discussing, showing, evidencing, describing, implying, analyzing or consulting.

14.      "Identify:" When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.  In all other aspects, "Identify" means to describe, explain, depict, and/or provide details of the information requested.

15.      "Person" or "People" means any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

16.     "Nationwide Class Members" means all individuals residing in the United States who, within the applicable limitations period, used the Voyager Defendants' trading platform to place cryptocurrency investment orders. Excluded from this definition are the Voyager Defendants and their officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

17.     "Florida Class Members" means all individuals residing in the state of Florida who, within the applicable limitations period, used the Voyager Defendants' trading platform to place cryptocurrency investment orders. Excluded from this definition are the Voyager Defendants and their officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

18.     Unless otherwise stated in a particular subject, the time period for which you must respond is beginning in January 1, 2019 and ending at the present time.

## II. <u>DEPOSITION SUBJECT MATTER</u>

Pursuant to Rule 30(b)(6), Voyager shall designate and produce for deposition one or more of its officers, directors, managing agents, or other persons who are knowledgeable about and consent to testify on its behalf concerning the following subject matters:

***Please refer to the Definitions and Instructions when construing the following subject matters.***

1.      All of Your responses to Plaintiff's requests for production and interrogatories propounded on You on March 7, 2022.

2.      Any and all actions regarding You and Plaintiff regarding the Voyager account, including, but not limited to, Your decision to change, cancel and/or restrict Plaintiff's Voyager account subsequent to the filing of this Action.

3.      Any and all FINRA rules or regulations that You are required to follow, including but not limited to, any provisions regarding arbitration.

4.      The specific Customer Agreement(s) between Voyager and Plaintiff that relate to arbitration purportedly relating to this matter, including how You informed Plaintiff of the/these provision(s), how You allege Plaintiff accepted any of the provision(s), and any and all support for why You believe any provision(s) should be enforced against Plaintiff in this Action.

5.      Voyager's corporate structure, including any and all Related Entities and any applicable management policies and procedures.

6.      The total revenue that Voyager has received as a result of the transactions completed using the Voyager Platform, stating the amount per quarter from January 1, 2019 to the present, and explain how much revenue is derived from "spread revenue and interest revenue," as well as how "Voyager executes trades and captures spread revenue in both up and down markets," and how Your "Rewards paid to customers" went from approximately $1,540,000 in the six month period ending December 31, 2020, to approximately $122,693,000 in the six month period ending

December 31, 2021, including the breakdown for such revenues by state, including specifically the state of Florida. *See* Steve Ehrlich's remarks in the Transcript of March 1, 2021 Earnings Call; *see also* Voyager Digital LTD. Management's Discussion and Analysis for the quarter ending December 31, 2021, dated February 14, 2022.

7.　　Any and all registrations You or any Related Entities have in the state of Florida and any and all activities You or any Related Entities conduct in the state of Florida, including but not limited to loaning crypto assets, placing crypto asset orders to buy, sell, or convert crypto assets on the platform, merchant services, marketing and sales activities, and staking.

8.　　The total number of users who executed trades on the Voyager Platform, for the State of Florida and nationwide, the total aggregate number of trades, the aggregate amount of trades (reflected in USD), the average number of trades per user, and the average amount of trades per user (reflected in USD).

9.　　The "available markets to which Voyager has access" as stated in https://www.investvoyager.com/blog/passion-for-product-trading/, including but not limited to where those markets are located and where users are located for whom Voyager places trades on those markets.

10.　　The Contracts and Agreements between You (or any Related Entity) and any entity or individual in the state of Florida, that it partners with, including but not limited to subsidiaries, OTCs, and influencers, for example such as Victor Oladipo, Landon Cassill, Coinify, BlockDaemon, or Market Rebellion. *See* https://www.bnnbloomberg.ca/voyager-digital-is-gearing-up-for-rapid-growth-with-new-acquisition-and-all-star-crypto-partnership-1.1639000 (last accessed March 7, 2022).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 21-24441-CIV-ALTONAGA/Torres**

MARK CASSIDY, on behalf of himself
and others similarly situated,

     Plaintiff,

v.

VOYAGER DIGITAL LTD, and
VOYAGER DIGITAL LLC

     Defendants.

_____/

**<u>NOTICE OF TAKING THE ZOOM DEPOSITION OF</u>**
**<u>VOYAGER DIGITAL LLC RULE 30(b)(6) REPRESENTATIVE(S) AS PER COURT</u>**
**<u>ORDER DATED MARCH 3, 2022 [ECF NO. 36]</u>**

     Pursuant to Federal Rule of Civil Procedure 30(b)(6) and this Court's Order dated March 3, 2022 [ECF No. 36], Plaintiff's counsel will take the deposition of the below-named person/entity on the date, time, and at the location indicated.

| | |
|---|---|
| **DEPONENT**: | Voyager Digital LLC ("Voyager"), by and through Voyager's corporate representative(s) with knowledge of the items listed in **Exhibit A,** pursuant to Federal Rule of Civil Procedure 30(b)(6). |
| **DATE**: | Monday, April 4, 2022 |
| **TIME**: | 10:00 AM (EST) |
| **LOCATION**: | Deposition will be taken via Zoom (contact counsel for details) |

     The aforesaid deposition will be before a court reporter, an officer authorized by law to administer oaths and take depositions in the State of Florida.  The deposition is being taken for the purpose of discovery, for use at trial, or both, or for such other purposes as are permitted under the Federal and Local Rules of Civil Procedure.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Voyager LTD shall designate one or more officers, directors, managing agents, or other persons to testify on its behalf on each topic listed on **Exhibit A** attached hereto.

Dated: March 7, 2022                          Respectfully submitted,

By:   /s/ Adam Moskowitz
        Adam M. Moskowitz
        Florida Bar No. 984280
        adam@moskowitz-law.com
        Joseph M. Kaye
        Florida Bar No. 117520
        joseph@moskowitz-law.com
        Barbara C. Lewis
        Florida Bar No. 118114
        barbara@moskowitz-law.com
        **THE MOSKOWITZ LAW FIRM, PLLC**
        2 Alhambra Plaza, Suite 601
        Coral Gables, FL 33134
        Telephone: (305) 740-1423


By: /s/  Stuart Z. Grossman
      Stuart Z. Grossman
      Florida Bar No. 156113
      szg@grossmanroth.com
      Rachel W. Furst
      Florida Bar No. 45155
      rwf@grossmanroth.com
      GROSSMAN ROTH YAFFA COHEN, P.A.
      2525 Ponce de Leon Blvd Ste 1150
      Coral Gables, FL 33134
      Office: 305-442-8666
      *Co-Counsel for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 7, 2022, a true and correct copy of the foregoing was sent via electronic mail to counsel for Defendants.

By: /s/ Adam Moskowitz
      Adam M. Moskowitz

**EXHIBIT A**

**I. DEFINITIONS AND INSTRUCTIONS**

Unless otherwise specified, the terms set forth below have the following meanings:

1.　　"Voyager," "You," or "Your" means Voyager Digital LLCand any of its affiliates, subsidiaries, divisions, segments, predecessors, successors, officers, directors, employees, representatives, or agents.

2.　　"Voyager Defendants" means Voyager and Voyager Digital LTD.

3.　　"Voyager Platform" refers to the Voyager Defendants' mobile application cryptocurrency investment service that places cryptocurrency trade orders on behalf of users.

4.　　"Voyager Algorithms" means Voyager's "Smart Order Routing," the "Voyager Pricing Engine," and the "Proprietary Fills Algorithm."

5.　　"Related Entity" means Voyager Digital, LTD and any other entity based or incorporated in the United States, which is a direct or indirect parent or subsidiary of, or otherwise affiliated with or related to You, by common ownership or control, and which promotes, markets, sells, and/or services Voyager's mobile application cryptocurrency trading/investment platform.

6.　　"Contracts and Agreements" is intended to and shall embrace and include all documents, forms, deeds, leases, memorandums of understanding, electronic correspondence, emails, letters and text messages that define rights and responsibilities between You and any Related Entity, or You and any other entity affiliated in any way with the promotion, marketing, sale, and servicing of Voyager's mobile application cryptocurrency trading/investment platform.

7.　　"Corporate Records" means any Articles of Organization/Incorporation, Operating Agreements, Membership Agreements, and Partnership or Joint Venture Agreements, and listing or evidence of ownership interest and filings of similar-type incorporating documents with governmental agencies.

8.      "Employee" means any current or former officer, director, manager, member, secretary, staff member, agent, person receiving compensation, or other person employed.

9.      "Document(s)" means any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including but not limited to memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, telegrams, messages, manuscripts, studies, analyses, tests, comparisons, books, articles, pamphlets, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, minutes, agreements, contracts, and all other written communications, of any type, including inter and intra-office communications, purchase orders, invoices, bills, receipts, questionnaires, surveys, charts, graphs, videos, photographs, sketches, drawings, house sheets, tapes, voice messages or other recordings, print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof.

10.      "Communication(s)" means any mode or method of contact for the transmission, dissemination, request for, or receipt of information of any kind including thoughts, mental impressions, ideas, suggestions, etc., conveyed in any format, and by any means or medium whatsoever. This shall include, but shall not be limited to, all statements, admissions, denials, inquiries, discussions, conversations, negotiations, agreements, contracts, understandings, meetings, telephone conversations, voice messages, letters, correspondence, notes, telegrams, telexes, emails, advertisements, or any other form of written or verbal intercourse. The requests include communication to, from, or within a corporate entity or organization and include any and all communications by, between, and among its representatives, employees, agents, advisors, brokers, or attorneys (except when privileged).

11.     The words "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope hereof any information which might otherwise be construed as to be outside the scope of Plaintiff's discovery requests.

12.     "Relating to," "relate to," "regarding," or "reflecting" means in any way directly or indirectly concerning, referring to, disclosing, describing, confirming, supporting, evidencing, representing, clarifying, evidencing, supporting, or contradicting.

13.     "Support" means referring to, concerning, responding to, reflecting, indicating, commenting on, regarding, discussing, showing, evidencing, describing, implying, analyzing or consulting.

14.      "Identify:" When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.  In all other aspects, "Identify" means to describe, explain, depict, and/or provide details of the information requested.

15.      "Person" or "People" means any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

16.     "Nationwide Class Members" means all individuals residing in the United States who, within the applicable limitations period, used the Voyager Defendants' trading platform to place cryptocurrency investment orders. Excluded from this definition are the Voyager Defendants and their officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

17.     "Florida Class Members" means all individuals residing in the state of Florida who, within the applicable limitations period, used the Voyager Defendants' trading platform to place cryptocurrency investment orders. Excluded from this definition are the Voyager Defendants and their officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

18.     Unless otherwise stated in a particular subject, the time period for which you must respond is beginning in January 1, 2019 and ending at the present time.

## II. <u>DEPOSITION SUBJECT MATTER</u>

Pursuant to Rule 30(b)(6), Voyager shall designate and produce for deposition one or more of its officers, directors, managing agents, or other persons who are knowledgeable about and consent to testify on its behalf concerning the following subject matters:

***Please refer to the Definitions and Instructions when construing the following subject matters.***

1.      All of Your responses to Plaintiff's requests for production and interrogatories propounded on You on March 7, 2022.

2.      Any and all actions regarding You and Plaintiff regarding the Voyager account, including, but not limited to, Your decision to change, cancel and/or restrict Plaintiff's Voyager account subsequent to the filing of this Action.

3.      Any and all FINRA rules or regulations that You are required to follow, including but not limited to, any provisions regarding arbitration.

4.      The specific Customer Agreement(s) between Voyager and Plaintiff that relate to arbitration purportedly relating to this matter, including how You informed Plaintiff of the/these provision(s), how You allege Plaintiff accepted any of the provision(s), and any and all support for why You believe any provision(s) should be enforced against Plaintiff in this Action.

5.      Voyager's corporate structure, including any and all Related Entities and any applicable management policies and procedures.

6.      The total revenue that Voyager has received as a result of the transactions completed using the Voyager Platform, stating the amount per quarter from January 1, 2019 to the present, and explain how much revenue is derived from "spread revenue and interest revenue," as well as how "Voyager executes trades and captures spread revenue in both up and down markets," and how Your "Rewards paid to customers" went from approximately $1,540,000 in the six month period ending December 31, 2020, to approximately $122,693,000 in the six month period ending

December 31, 2021, including the breakdown for such revenues by state, including specifically the state of Florida. *See* Steve Ehrlich's remarks in the Transcript of March 1, 2021 Earnings Call; *see also* Voyager Digital LTD. Management's Discussion and Analysis for the quarter ending December 31, 2021, dated February 14, 2022.

7.　　Any and all registrations You or any Related Entities have in the state of Florida and any and all activities You or any Related Entities conduct in the state of Florida, including but not limited to loaning crypto assets, placing crypto asset orders to buy, sell, or convert crypto assets on the platform, merchant services, marketing and sales activities, and staking.

8.　　The total number of users who executed trades on the Voyager Platform, for the State of Florida and nationwide, the total aggregate number of trades, the aggregate amount of trades (reflected in USD), the average number of trades per user, and the average amount of trades per user (reflected in USD).

9.　　The "available markets to which Voyager has access" as stated in https://www.investvoyager.com/blog/passion-for-product-trading/, including but not limited to where those markets are located and where users are located for whom Voyager places trades on those markets.

10.　　The Contracts and Agreements between You (or any Related Entity) and any entity or individual in the state of Florida, that it partners with, including but not limited to subsidiaries, OTCs, and influencers, for example such as Victor Oladipo, Landon Cassill, Coinify, BlockDaemon, or Market Rebellion. *See* https://www.bnnbloomberg.ca/voyager-digital-is-gearing-up-for-rapid-growth-with-new-acquisition-and-all-star-crypto-partnership-1.1639000 (last accessed March 7, 2022).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 21-24441-CIV-ALTONAGA/Torres**

MARK CASSIDY, on behalf of himself
and others similarly situated,

     Plaintiff,

v.

VOYAGER DIGITAL LTD, and
VOYAGER DIGITAL LLC

     Defendants.

_____/

**<ins>NOTICE OF TAKING THE ZOOM DEPOSITION OF</ins>**
**<ins>VOYAGER DIGITAL LTD'S CCO, MICHAEL LEGG</ins>**

     Pursuant to Federal Rule of Civil Procedure 30 and this Court's Order dated March 3, 2022 [ECF No. 36], Plaintiff's counsel will take the deposition of the below-named person/entity on the date, time, and at the location indicated.

| | |
|---|---|
| **DEPONENT**: | Michael Legg, CCO of Voyager Digital LTD |
| **DATE**: | Tuesday, April 5, 2022 |
| **TIME**: | 10:00 AM (EST) |
| **LOCATION**: | Deposition will be taken via Zoom (contact counsel for details) |

     The aforesaid deposition will be before a court reporter, an officer authorized by law to administer oaths and take depositions in the State of Florida.  The deposition is being taken for the purpose of discovery, for use at trial, or both, or for such other purposes as are permitted under the Federal and Local Rules of Civil Procedure.

Dated: March 7, 2022          Respectfully submitted,

     By:  */s/ Adam Moskowitz*_____
         Adam M. Moskowitz
         Florida Bar No. 984280
         adam@moskowitz-law.com
         Joseph M. Kaye
         Florida Bar No. 117520

joseph@moskowitz-law.com
Barbara C. Lewis
Florida Bar No. 118114
barbara@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423


By: */s/_ Stuart Z. Grossman*
Stuart Z. Grossman
Florida Bar No. 156113
szg@grossmanroth.com
Rachel W. Furst
Florida Bar No. 45155
rwf@grossmanroth.com
GROSSMAN ROTH YAFFA COHEN, P.A.
2525 Ponce de Leon Blvd Ste 1150
Coral Gables, FL 33134
Office: 305-442-8666
*Co-Counsel for Plaintiff and the Class*


## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 7 2022, a true and correct copy of the foregoing was sent via electronic mail to counsel for Defendants.


By: */s/ Adam Moskowitz*
Adam M. Moskowitz