```
 1            IN THE UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
 2
                         MIAMI DIVISION
 3
                 CASE NO.:  21-cv-24441-CMA
 4

 5

 6
    MARK CASSIDY,                      )
 7                                     )
              Plaintiff,               )        April 7, 2022
 8    v.                               )
                                       )
 9    VOYAGER DIGITAL LIMITED, et al., )
                                       )        Pages 1 - 44
10            Defendants.              )
    _____/
11

12

13                      DISCOVERY HEARING

14           BEFORE THE HONORABLE EDWIN G. TORRES
                UNITED STATES MAGISTRATE JUDGE
15

16

17

18

19   APPEARANCES:

20
     Counsel on behalf of the Plaintiff:
21
                   THE MOSKOWITZ LAW FIRM, PLLC
22                 2 Alhambra Plaza,
                   Suite 601,
23                 Miami, FL 33134
                   BY:  ADAM M. MOSKOWITZ, ESQ.
24

25
```

```
 1   APPEARANCES CONTINUED:

 2
     Counsel on behalf of the Plaintiff:
 3
                    BERGER SINGERMAN LLP
 4                  350 East Las Olas Boulevard
                    Suite 1000,
 5                  Fort Lauderdale, FL 33301
                    BY:  GAVIN C. GAUKROGER, ESQ.
 6

 7

 8

 9   Transcribed By:

10                  BONNIE JOY LEWIS, R.P.R.
                    7001 SW 13 Street
11                  Pembroke Pines, FL  33023
                    954-985-8875
12                  caselawrptg@gmail.com

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Thereupon, the following proceeding was held:)

2          THE COURTROOM DEPUTY:  Calling case Voyager Digital

3   and Voyager Digital LLC Case Number 21-cv-24441-Judge Altonaga.

4          Counsel, please state your appearances starting with

5   the Plaintiff.

6          MR. MOSKOWITZ:  Good afternoon, Your Honor.

7          For the Plaintiff, Adam Moskowitz from the Moskowitz

8   Law Firm.

9          MR. GAUKROGER:  Good afternoon.

10         My name is Gavin Gaukroger from Berger Singerman on

11  behalf of the Defendants.

12         THE COURT:  Good afternoon to both of you.

13         You can have a seat.  You can present your argument

14  seated.  For spacing purposes I'm not going to have people go

15  to the lectern.  So you can just stay where you are.

16         Good afternoon.  This is a discovery hearing in the

17  case that is currently undergoing jurisdictional discovery

18  pursuant to Judge Altonaga's order, right?

19         MR. MOSKOWITZ:  Yes, Your Honor.

20         THE COURT:  And I believe there are some issues.  So

21  let me turn to counsel for the Plaintiff who I believe is the

22  movant, right?

23         MR. MOSKOWITZ:  Yes, Your Honor.

24         THE COURT:  Go ahead.  Tell me what the most important

25  issue is that you want to tackle.

4

1          MR. MOSKOWITZ:  Sure.  I will just give you a one

2     minute quick overview and background and it will explain

3     exactly why we are here.

4          This case involves hundreds of millions of dollars and

5     it is pretty basic simple claim and there are two parts to it.

6     One is we allege that Voyager's marketing campaign that we

7     don't charge commissions and we are the cheapest who will get

8     you the best price because of this secret thing that we do, we

9     say that doesn't work and that's fraudulent.

10          Part two is that the way they sell this is a security,

11     which should be a registered security in order to be

12     specifically a complaint to name a federal count because things

13     have happened since we have filed our complaint against other

14     companies where you loan out people's Bitcoin and you give them

15     interest.  The SEC says that's a registered security.

16          So researched the case for about six months with

17     experts.  We looked at the arbitration clause and we did not

18     think it would be binding.  There are many different reasons

19     and we certainly don't have to get into it today, but it lets

20     them choose whatever they want.  So under New Jersey law --

21          THE COURT:  And remind me, who are the parties to the

22     arbitration agreement?

23          MR. MOSKOWITZ:  Voyager LLC and our client.

24          THE COURT:  Okay.

25          MR. MOSKOWITZ:  Voyager LTD.

1          THE COURT:  Got it.

2          MR. MOSKOWITZ:  So we researched it for six months and

3    we were pretty confident that the agreement wouldn't be

4    binding.  It has all of these specific provisions.  We filed

5    the lawsuit with our expert's report ready to go.

6          After we filed the complaint, they locked our client

7    out of his account.  We don't know why and we have a couple of

8    meet and confers.  Why are you locking him out?  We don't think

9    we are locking him out, but he can't get into his account and

10   he can't get any messages.

11         They produce a voicemail where my client says I can't

12   get into my account.  What are you doing?  And then, they

13   change the arbitration agreement to clean it up to make all the

14   problems that happened before different.

15         So that was troublesome to us.  So we filed a motion

16   after asking them a few times, what did you do?  I mean, are

17   going to try to bind this new agreement on our client?  How

18   could you have given him notice?  You locked him out.  And all

19   they said was, well, we really don't have any information on

20   it.  We are not going to be deposed in the meet and confer.

21   Ask the deponents.

22         So then we get some information saying we think we

23   sent him an e-mail about the new changes.  And again, here is a

24   declaration from the client.  He never got those changes.

25   What's going on?  So we didn't know.

1        And then, after we filed the complaint, the SEC went

2  against three companies and said this process of loaning out

3  Bitcoin and giving interest to the person is a registered

4  security.  So we are going down that avenue and we are going to

5  be relying on federal statutes and state statutes and not any

6  user agreement.

7        So we sent out some discovery.  They did a motion to

8  dismiss and a motion to stay.  We shouldn't be allowed to do

9  discovery.  Judge Altonaga said, no, I think that is nonsense.

10  First of all, you are raising personal jurisdiction now.  They

11  didn't know about it.  So I am going to allow discovery and I

12  want depositions to take place immediately.

13        So we asked them for some dates for the depositions

14  and one of them, the LLC, they said he is not available for a

15  month.  He is not available until the day that your amended

16  complaint is due.  I said that's not okay.  I mean, I need a

17  little bit of time after the depo.  So that's point one.

18        In the documents they had two main objections.  One is

19  we are only going to look during the timeframe when your guy

20  invested with our platform.  Only when he invested.

21        THE COURT:  All right.  Back up.  Repeat that.  Repeat

22  point number two is what again?

23        MR. MOSKOWITZ:  Sure.  So they have objections to all

24  the discovery.  The depositions Judge Altonaga required, the

25  interrogatories, and their request for production.  The two

1  main ones are broad.

2         The first one is you can only ask questions and we

3  will only search for documents from the time Mark Cassidy, the

4  Plaintiff, joined the Voyager platform and he quit the Voyager

5  platform for about one year.

6         THE COURT:  Okay.

7         MR. MOSKOWITZ:  We're not willing to go back to 2019

8  like you would like.

9         And we said why and they said, well, he only used our

10  product during that time.  And we said, yeah, but the statute

11  of limitations on the cause of action is four years.  You know,

12  you can always go back more.

13         There may be evidence which leads to the admissibility

14  of -- there may be relevant evidence the day before he joined

15  that talks about the arbitration clause and talks about

16  personal jurisdiction, of course.

17         And they said no.  And so, then, we had all these meet

18  and confers because we tried to cooperate and they said we'll

19  give you three more months.  That's all we'll give you.  And I

20  said, well, you haven't proved there is any excess burden or

21  any costs for going back more.

22         So yesterday we got an affidavit from one of their

23  lawyers saying they spent a lot of money.  So that first

24  objection I think is invalid.  I have never seen it in any

25  decision that says you just have to limit the timeframes when

1  the client, himself, invested.  Because how would that have

2  anything to do with personal jurisdiction.  They are not

3  claiming that Voyager LTD, the parent, has no personal

4  jurisdiction.

5        Well, Judge Altonaga said I think that's, quote,

6  nonsense.  You have to let them take discovery on that.  How

7  would you know that Voyager LTD -- because we have their

8  organizational chart.

9        There are many other companies that they own separate

10 from LLC.  We don't know if they do business in Florida.  We

11 don't know if they do registered securities in Florida.  We

12 don't know.  So that's objection one.

13       Objection two was we are only going to give you

14 documents about the Voyager platform that your client bought

15 and sold Bitcoin.  We are not going to search anything else.

16 And we said, well, that also is not valid in a meet and confer.

17       Especially against the LTD because you are saying it

18 is a circular argument.  You're saying your LTD didn't run the

19 platform, the LLC does, and we are only going to search for

20 documents about the Voyager platform.

21       So I said, well, we are allowed to get discovery on

22 personal jurisdiction of that LTD.  That doesn't have to do

23 with the platform.

24       THE COURT:  And what is your allegation in the

25 complaint having to do with LTD, specifically?

```
 1            MR. MOSKOWITZ:  Well, there is no dispute.  All of the
 2    money went up to LTD.  LTD is the publically traded company in
 3    Canada.  That's the stock.  Voyager is the stock.  It is LTD.
 4            So our allegation is all the money goes up to them.
 5    All the revenue went up to them.  LLC is just their agent
 6    acting for them.
 7            And also, negligent supervision because there's a case
 8    that was decided by the Eleventh Circuit against Coin Base, a
 9    company.  The investor sued as part of the receiver and the
10    company said, no, you are bound by the arbitration agreement.
11            And the District Court said no and the Eleventh
12    Circuit said no because they said the parent company didn't
13    properly monitor and supervise what was going on at this
14    platform because now we decide it is an unregistered security.
15    So everything is off, right?  If it is an unregistered security
16    you are in big trouble.
17            So arbitration was not enforced.  So we're saying that
18    the LTD didn't supervise, didn't manage, didn't watch what was
19    going on, and collected all the money.  They are a Defendant.
20    So those are the two main objections.
21            THE COURT:  And remind me, I asked you this before,
22    but I am asking you again.
23            MR. MOSKOWITZ:  Of course.
24            THE COURT:  The arbitration agreement is the LTD or
25    the LLC?
```

1      MR. MOSKOWITZ:  Just LLC.

2      THE COURT:  LLC.

3      MR. MOSKOWITZ:  There is no arbitration agreement

4  between the client and LTD.

5      THE COURT:  Got it.

6      MR. MOSKOWITZ:  The only way they are trying to get

7  LTD out is on personal jurisdiction.

8      THE COURT:  Okay.

9      MR. MOSKOWITZ:  For that they won't give us discovery

10 on.  They say because it doesn't relate to the Voyager platform

11 that our client did, but we don't know.

12      I mean, Judge Altonaga, in her order denying their

13 motions to stay and denying their motion for arbitration at

14 this stage said, Plaintiffs don't have to believe what you

15 allege.  I mean, it was a great quote.  It says Plaintiffs are

16 able to find out what Voyager LTD does besides what you say it

17 does.

18      You know, they owned another FINRA company.  Does that

19 have anything to do with our securities?  And then, mainly,

20 which we're getting down the road, is this an unregistered

21 security?  Because if it is there is no arbitration.  We are

22 going on state and federal statutes.

23      So we want the two main objections overruled.  We want

24 to take the deposition of the LLC on not the last day.  We

25 would like it earlier.  And then, third, they locked out our

1 client and they took action against him.  They tell us in one

2 page we sent him notice about it.

3 　　　　And I said on the phone where have you produced

4 documents?  We don't have it.  So I would like to have that

5 document before I take their corporate rep depositions.  So

6 those are the four very narrow things that we are seeking

7 today.

8 　　　　THE COURT:  All right.  Let me turn to the Defendant.

9 　　　　You may take one individually if you want.  Whichever

10 one you want to start with.

11 　　　　MR. GAUKROGER:  These issues --

12 　　　　MR. MOSKOWITZ:  I have one more thing, Your Honor.

13 Could I just add so I don't mess up Gavin's order?

14 　　　　So it is the two objections and the one deposition.

15 And then last night we just got a privilege log of like twelve

16 documents that I don't think is appropriate.

17 　　　　And I would like to ask for a *in camera* review of

18 those twelve documents because they were saying to us, well,

19 the local rule is you have to give a privilege log two weeks

20 later.  And I said that's not applicable here because Judge

21 Altonaga ruled you have to produce the documents by a certain

22 date.  They said no.  But, then, for some reason last night

23 they changed their mind.

24 　　　　THE COURT:  When did you get the documents that she

25 ordered?  The unobjected to documents, when did you receive

1  them?

2      MR. MOSKOWITZ:  On a rolling basis like last week.

3      THE COURT:  Okay.

4      MR. MOSKOWITZ:  We got some.

5      But then this privilege log last night was e-mailed to

6  us.  Okay.  We're going to give you a privilege log, but it

7  looks to me like those documents should be produced.  So all I

8  would ask for is an *in camera* review.  There is only twelve or

9  ten.  So I would ask the Court to review those.  So those are

10  the four points.

11      THE COURT:  Go ahead and start with the broader issue

12  first and then we will get to the privilege log.

13      MR. GAUKROGER:  Sure.  Thank you, Your Honor.

14      There are really two issues in Judge Altonaga's order

15  ECF-36 really lays it out clearly what is permissible discovery

16  in this case.  It is related to the versions of the arbitration

17  agreement whether it is subject to arbitration.

18      And we assert and believe that the arbitration

19  agreement that is applicable to Mr. Cassidy, who is the

20  Plaintiff, is the one that he signed when he joined the

21  platform or the one that was amended during the time he was a

22  user of the platform.

23      So if he started using the platform in March of 2021,

24  anything after March of 2021 would be within the first

25  permissible discovery period.  Like Mr. Moszkowicz confirmed

1  they asked for during a meet and confer additional time.  We

2  went back a few months and started from January 1st.

3          THE COURT:  But wouldn't that be true of the

4  arbitration, but how did you deal with the personal

5  jurisdiction issue?

6          MR. GAUKROGER:  Well, those are two separate issues,

7  right?

8          THE COURT:  Right.

9          MR. GAUKROGER:  They are two separate issues.

10         Personal jurisdiction in this case would be specific

11  personal jurisdiction over the LTD entity for the cause of

12  action alleged in the complaint.  There is no claim for general

13  jurisdiction in this case, right?

14         Whatever LTD may have done in Florida, the question is

15  limited to does the minimum contacts test of LTD apply such

16  that it should be hailed into court in Florida.  As Mr.

17  Moszkowicz confirmed it is a Canadian company.  It operates

18  subsidiaries.  One of which is Voyager Digital LLC, which has

19  the platform.

20         We are not objecting to the jurisdiction of LLC in

21  Florida.  However, there is a corporate separateness that is

22  recognized between a parent and an operational LLC.  The LLC

23  has the staff.  It has the platform.  It operates the platform.

24  It interacted and entered into a contract with the Plaintiff .

25         We produced the documents that are requested subject

14

1   to the scope of permissible discovery for LLC.  For LTD we have

2   given them the corporate records that would show the nature of

3   these corporations.  Including the chart that Mr. Moszkowicz

4   mentioned.

5        THE COURT:  But his theory is that basically in this

6   situation, the parent, the LTD -- is that a Canadian specific

7   designation?

8        MR. GAUKROGER:  That's what it is called; Voyager

9   Digital LTD, limited.  It's a Canadian company.

10       THE COURT:  It's a corporation?

11       MR. GAUKROGER:  Yes, it's a corporation.

12       THE COURT:  So what you are saying is in the operation

13  of the digital platform, LTD was the principal and the LLC was

14  its agent.

15       MR. GAUKROGER:  But that's not in the allegation.

16       What he described as being this negligent oversight

17  that's not -- that's kind of a moot theory I just heard, to be

18  candid.

19       The reality is the corporate formalities of the

20  corporation have been maintained; the corporate formalities and

21  separateness of the LLC have been maintained.  We have produced

22  documents.

23       They are going to take the deposition of the LTD

24  entity's corporate representative to ask him all of the

25  questions they may have about the LTD's contacts, if any, with

1  Florida.

2  The idea that there is a repository of documents of

3  information for LTD about LLC does not make sense because the

4  LLC is the one that runs the platform and has the consumers and

5  has the employees.

6  THE COURT:  So you are saying that that principal

7  agent theory is not in the complaint?

8  MR. GAUKROGER:  I haven't seen it.

9  THE COURT:  So you haven't alleged that or have you?

10  MR. MOSKOWITZ:  It is there.  I mean, I don't know how

11  in detail it is.  Judge Altonaga gave us to amend the complaint

12  until August 26th.  So we --

13  MR. GAUKROGER:  April.

14  MR. MOSKOWITZ:  April, yes.

15  We certainly will be putting that in there.  But, I

16  mean, we were kind of shocked when they raised this personal

17  jurisdiction issue because there is no doubt that at least LLC

18  makes 17 million dollars --

19  THE COURT:  They are not disputing LLCs to --

20  MR. MOSKOWITZ:  No, no, no.  They gave it up to the

21  LTD.  17 million dollars was made by LLC in the State of

22  Florida.  All that money went to LTD.

23  THE COURT:  And how do you know that?

24  MR. MOSKOWITZ:  They told us that.

25  We said where does the money go?  They said it goes

1  back to LTD.  That is not in dispute.

2        THE COURT:  Is that right?

3        MR. GAUKROGER:  Well, let's be really clear about what

4  that means.

5        I'm sorry.  May I respond?

6        THE COURT:  Go ahead.

7        MR. GAUKROGER:  Thank you.

8        There are consolidated financial statements issued for

9  the LTD.  Voyager Digital is one of many subsidiaries across

10 the globe --

11        THE COURT:  Right.

12        MR. GAUKROGER:  -- whose financials flow up to

13 ultimately for reporting and the parent company of all of the

14 entities.  That doesn't *ipso facto* mean that the parent company

15 is the *de facto* LLC company operating in Florida.  They are

16 completing different.

17        And the *Dimeler* case, which is a Supreme Court case,

18 was this agency theory that Mr. Moskowitz just mentioned,

19 throws that in the garbage.  Judge Ginsberg wrote an opinion

20 and said the Ninth Circuit had a case on whether Mercedes Benz

21 USA operates in the United States means that *Dimeler* AG is

22 subject to jurisdiction and in that case it was in California.

23        And the Supreme Court said that doesn't hold water.

24 That is rejected.  So this idea that a corporate parent just

25 because it has an LLC that operates in Florida that is subject

1  to Florida jurisdiction is wrong.  It's wrong.  Now there's an

2  exception.

3          THE COURT:  But *Dimeler* is a general jurisdiction

4  case.

5          MR. GAUKROGER:  Right.  And we're saying there isn't a

6  showing in the complaint, let alone in reality, that LTD would

7  be specific jurisdiction.

8          That is why I keep going back to the cause of action

9  here, which is the use of the Voyager platform.  That is why

10 the Voyager platform as the source of the cause of action, the

11 actions conducted by Mr. Cassidy are in return LLC with Mr.

12 Cassidy on the Voyager platform establishes the cause of

13 action.  That is the scope of discovery that is relevant and

14 permissible.

15         Judge Altonaga specifically acknowledged that, I

16 think, when she referenced when allowing jurisdictional

17 discovery that she said particularly, if the discovery is too

18 far-reaching, which we assert this is, and conferral is

19 unsuccessful in resolving any disagreements, Defendants may

20 address that matter with Magistrate Judge Torres.

21         Judge Torres, we believe that we have done a fulsome

22 production and review within the limited scope of permissible

23 discovery in this case.  This is not your standard case where

24 broad discovery of rules apply.

25         Judge Altonaga expressly limited jurisdiction to which

1  form of the arbitration agreement should be applicable and let

2  the parties brief its enforceability.  That's issue one.

3          And number two is whether or not the LTD entity is

4  subject to personal jurisdiction in Florida.  And that must be

5  specific personal jurisdiction to establish our constitutional

6  due process as an entity that is in Canada.  So that is the

7  primary argument.

8          The timing argument is completely related to that,

9  Your Honor.  Because, again, the scope of permissible discovery

10  arises from the causes of action in this case and the causes of

11  action arise from Mr. Cassidy as a user of the Voyager

12  platform, which started in March of 2021.

13          This idea that we should go back years in time is not

14  plausible because he couldn't have possibly been a victim of a

15  tort, or any allegation of wrongdoing, or breach of a contract

16  because he wasn't in the contract until March of 2021.

17          So this idea that we should go back years and years

18  for discovery, that is burdensome.  We have identified through

19  evidence, through a sworn declaration from counsel as to the

20  burden of the existing production that was done.  It was over a

21  hundred hours and about tens of thousands of dollars were spent

22  to get to here to give them what they asked for.

23          In fact, Your Honor we have meet and confer as early

24  as Monday.  And yes, Mr. Moskowitz mentioned the production was

25  rolling because they asked us for more particular documents

1   during the meet and confer on AAA, other AAA claims of

2   arbitration.  We went back and got them and produced them.

3          So this idea that we are somehow not complying with

4   the intent, the spirit, and letter of the order is wrong.  We

5   have been fulsome in our production.  We have been actively

6   listening to their request on the privilege log issue.

7          Yes, Rule 26.1 -- I believe it is (e) of our local

8   rules -- says after response to discovery you have 14 days to

9   serve a privilege log.  We served it last night well within

10  that time.  Why?  To take away this argument.  They asked for

11  it to be produced early before the time permissible.  We went

12  and we did the work.

13         And in fact, some of the documents that were

14  conditionally redacted we identified while doing that effort,

15  we unredacted it and we supplemented production with clean

16  documents.  That's how this is supposed to work.  We have done

17  it to the letter.

18         This idea that there should be an expansive discovery

19  beyond the scope of what was specifically permitted by Judge

20  Altonaga at great expense to my client who has strong arguments

21  that they should not be in this jurisdiction at all,

22  alternatively, or in this forum because they have an

23  arbitration agreement, which Judge Altonaga will certainly

24  decide upon the next round of whatever the pleading is and it

25  will be dealt with that way.

1        But right now today, Judge, the scope of discovery is

2    limited to the Judge Altonaga's order and we have complied to

3    the letter, plus some.

4        THE COURT:  All right.  I took a quick read of your

5    complaint.  There is not a lot in terms of a specific theory

6    beyond the generalities that they are basically doing, Voyager

7    LTD doing business in the State of Florida.  Unjust enrichment

8    claim and then you have FDUPTA claims; one in New Jersey and

9    one in Florida.

10       MR. MOSKOWITZ:  Yes, Your Honor.

11       THE COURT:  So for purposes of jurisdictional

12   discovery ordinarily, right, you would be getting documents

13   showing how much business they made from the State of Florida.

14   That kind of thing.

15       Let me ask it this way.  What haven't you gotten that

16   you think you are entitled to?

17       MR. MOSKOWITZ:  Okay.  Your Honor, we've gotten

18   nothing.  All we've gotten is a chart that shows the revenues

19   because we asked them three times in the calls:  You haven't

20   given us a chart yet, please?  We'll think about it.

21       THE COURT:  You asked for a chart that shows what,

22   specifically?

23       MR. MOSKOWITZ:  How much did LTD make from LLC in the

24   State of Florida?

25       THE COURT:  Okay.

1    MR. MOSKOWITZ:  So we got that for each year.

2    THE COURT:  And what does that show?

3    MR. MOSKOWITZ:  It shows 14 million dollars they made

4    in the State of Florida that was pocketed by LTD.

5    THE COURT:  Okay.

6    MR. MOSKOWITZ:  So I understand that we are not so

7    descriptive in our complaint because we didn't think that it

8    would be an issue on personal jurisdiction.

9         So that is why Judge Altonaga said I am not going to

10   stay discovery on that issue.  She says the Court cannot take

11   Defendant's word without giving Plaintiff a chance to

12   investigate the evidence.

13        So all of the cases Gavin is talking about, yeah, they

14   look at do you share revenue?  Do you do one consolidated

15   financial statement?  You know, they have certain factors.

16   THE COURT:  Right.

17   MR. MOSKOWITZ:  He's not letting us find out anything.

18   He is saying I am not going to give you any discovery at all

19   because it doesn't relate to the Voyager platform.

20        But he doesn't understand that Judge Altonaga said we

21   are allowed to take discovery about those factors so that we

22   can make that argument to Your Honor and to Judge Altonaga that

23   we need the six factors of those cases .

24        How do we know if they share revenue?  Well, we asked

25   them on the phone but --

```
1          THE COURT:  But they have now confirmed it to you.
2          MR. MOSKOWITZ:  Yeah, that they have confirmed.
3          THE COURT:  And that 14 million was for what time
4   period?
5          MR. MOSKOWITZ:  I believe during the time that Mr.
6   Cassidy participated in -- they restricted everything to the
7   time he signed up to the time he --
8          THE COURT:  So even within that limitation they
9   established 14 million dollars revenue?
10          MR. MOSKOWITZ:  I believe so.
11          I don't have it with me, but that's it and that took
12   three calls to just get that piece of information.  You know,
13   we said we are going to bring it up today.
14          THE COURT:  Right.
15          MR. MOSKOWITZ:  I don't think they could have resisted
16   that but --
17          THE COURT:  And now that you have that, in other
18   words, that's a very important fact from your point of view.
19          MR. MOSKOWITZ:  That's a very important fact.
20          THE COURT:  Okay.
21          MR. MOSKOWITZ:  And we would like more information.
22          THE COURT:  Like what?  What are you missing that you
23   think you are entitled to is my point?
24          MR. MOSKOWITZ:  Well, I'll give you two reasons why
25   most importantly, Your Honor.  I'm taking the depositions,
```

1    right?  They did not agree on our telephone call that we could
2    go into these areas.
3           I read your order that said a Defendant can't come in
4    and try to preclude us from asking questions about certain
5    categories.  I don't want to be precluded.  So I want to be
6    really careful.
7           When I go to the depositions I don't want them to say,
8    well, you can't ask about revenues, or work, or businesses
9    before Mark Cassidy signed up for the program.  So one reason I
10   am here is I want the depositions to be open.
11          THE COURT:  Got it.
12          MR. MOSKOWITZ:  And I don't want the depositions to be
13   restricted by time and I don't want our depositions to be
14   restricted to the Voyager platform.  So when I depose the LTD
15   man --
16          THE COURT:  As to that second point --
17          MR. MOSKOWITZ:  Yes.
18          THE COURT:  -- you don't want the deposition of the
19   Voyager platform --
20          MR. MOSKOWITZ:  For personal jurisdiction.
21          THE COURT:  Isn't that what the case is about, the
22   Voyager platform?
23          MR. GAUKROGER:  Yes.
24          MR. MOSKOWITZ:  No, it is not just about that.
25          THE COURT:  Okay.

1          MR. MOSKOWITZ:  Because we are saying also their

2     supervision of it and we don't know how else these other

3     companies are involved.  We keep asking them are you FINRA

4     registered?  No, we're not FINRA regulated.  Really?  You're

5     not?  But you're selling securities.

6          So there are other FINRA companies they own.  I don't

7     understand how those other FINRA companies work with the

8     platform yet.  We don't know that.

9          So in discovery I am allowed to ask about personal

10    jurisdiction of LTD.  Do you own 50 businesses in Miami,

11    Florida?  Why wouldn't I be able to ask that?  Do you own a

12    FINRA company in Miami?

13         In my calls I said can you tell me if you are

14    registered to sell securities in the state of Florida?  They

15    said we'll think about it.  I didn't get that.

16         THE COURT:  Okay.

17         MR. MOSKOWITZ:  So all these questions that I would

18    like to go into in the deposition on the LTD to see if I have

19    jurisdiction over him, I want to be allowed to ask.

20         THE COURT:  Got it.  So, then, let's take that point

21    and move forward on that.

22         MR. MOSKOWITZ:  Yes.

23         THE COURT:  And let me back up a second.  Normally the

24    way I handle jurisdictional discovery the way I get around --

25    especially when you have a lot of resources to bear to an

1  argument -- my take on jurisdictional discovery is it is

2  supposed to be limited, right?  So I would agree with that

3  generally.  It's not supposed to be all encompassing.  And the

4  most efficient way for there to be an initial exchange of basic

5  information is followed up with a deposition to test what that

6  information is about, right?

7          So here it sounds to me like you have complied with a

8  lot of what I would require.  And so what he is saying is that

9  when he gets to the deposition, he doesn't want to be limited

10  in the way that you would like to limit it for the specific,

11  for example, a time period involved.

12          So let me give you an example.  You have now set

13  during the time period of Mr. Cassidy has had access to the

14  site.  The revenue he generated was 14 million.  He's not going

15  to ask, well, how much was generated in 2020, right?

16          The question is, well, can the witness answer that

17  question?  Your argument is that they can't answer that

18  question.  Is that what you are saying?

19          MR. GAUKROGER:  Well, my argument is even simpler than

20  that.

21          THE COURT:  Okay.

22          MR. GAUKROGER:  I think Judge Altonaga agrees with you

23  as well on the limited scope because she told us if it is too

24  far reaching to come and talk to her.

25          Again, we are limited in this case to the Plaintiff

1  and his cause of action, which started on March of 2021.  He

2  had no relationship to my client prior to that time.  There is

3  no plausible reason that discovery in this case about the

4  operation of the Voyager platform before he was a participant

5  on it.

6         It doesn't make sense.  It's as though -- it doesn't

7  make sense to me and I think it is not plausible.

8         THE COURT:  But let me ask this question.

9         If he asked the question about revenue generated in

10 2020, right?  And say the revenue is a matter of fact actually

11 20 million, right?  So are you saying that he can't ask that

12 question so he is not entitled to know the 20 million as

13 opposed to the 14 million that he does know?  Is that what you

14 are saying?

15        MR. GAUKROGER:  I'm saying that we wouldn't have the

16 duty -- my belief is that we don't have an obligation under the

17 limited scope of discovery to prepare a witness to testify on

18 that issue, which is not actually one of the -- I want to be

19 really precise on what they have asked for.

20        THE COURT:  But you haven't answered my question.

21        MR. GAUKROGER:  Okay.  I'm sorry.

22        THE COURT:  My question is when you want to be able to

23 instruct the witness not to answer that question even though

24 the witness knows the answer.  Let's say this is the

25 controller.  So that guy knows or that woman knows.

```
1              MR. GAUKROGER:  Depends on which company.

2              THE COURT:  LTD.

3              MR. GAUKROGER:  LTD.  Okay.

4              THE COURT:  So that person had prepared spreadsheets

5    that shows how much was generated by LTD in Florida and

6    elsewhere, right?  So assume that person knows --

7              MR. GAUKROGER:  I'm just trying to understand.  How is

8    that even relevant to this cause of action?

9              THE COURT:  Because it is relevant because if he

10   establishes a pattern that they have been operating in the

11   State of Florida for years and they are operating in the State

12   of Florida in 2021 and they are continuing to operate in the

13   State of Florida, it undermines your argument that there is no

14   jurisdiction in Florida.

15             MR. GAUKROGER:  And the they in that sentence is LTD?

16             THE COURT:  Correct.

17             MR. GAUKROGER:  Okay.  I mean, I could certainly take

18   that to my client and if you order us to make someone available

19   on that point, of course we will comply with your order.

20             THE COURT:  Right.

21             MR. GAUKROGER:  Do I think it is relevant?  I don't.

22             THE COURT:  You don't think that if they made 20

23   million in 2020 and 2021 and about to make 20 million in 2022,

24   you don't think that is relevant to an analysis of how much

25   contact they are having with the State of Florida?  Well,
```

1   again, I am assuming facts.

2           MR. GAUKROGER:  You are assuming facts.

3           THE COURT:  I'm giving you a hypothetical.

4           MR. GAUKROGER:  Because I know the LLC that runs the

5   platform --

6           THE COURT:  Right.

7           MR. GAUKROGER:  -- is an independent business.

8           There's actually an intermediary owner that owns this

9   company called Voyager Digital Holdings, Inc., a Delaware

10  company.  And then, that rolls up through a corporate chart,

11  which Mr. Moskowitz -- to the old parent, which owns LLCs in

12  the structure across the whole world.

13          THE COURT:  Right.

14          MR. GAUKROGER:  So the idea that there is this revenue

15  stream that is ultimately where profits are distributed

16  upstream to the owners and then the owner distributes it to the

17  ultimate parent.

18          THE COURT:  If true.

19          MR. GAUKROGER:  If true could be because the -- here's

20  what we're talking about.  The operations are at the LLC level.

21          THE COURT:  But you have conceded, apparently, that

22  revenue generated at the LLC level were ultimately distributed

23  to the parent.

24          MR. GAUKROGER:  It's on a public --

25          THE COURT:  Right.

1        MR. GAUKROGER:  -- consolidated financial statement.

2        THE COURT:  Right.

3        MR. GAUKROGER:  You can see the revenue generated from

4   that subsidiary.

5        THE COURT:  Right.

6        MR. GAUKROGER:  What they got was the revenue from

7   that subsidiary from Florida.

8        THE COURT:  Right.

9        MR. GAUKROGER:  That's the numbers that we produced.

10        THE COURT:  Right.

11        MR. GAUKROGER:  Which wouldn't be readily available

12   from a public filing.

13        THE COURT:  Right.

14        MR. GAUKROGER:  So we got the database of financials

15   and sorted it and gave them a spreadsheet.  They could ask

16   about that.  That is what they are going to ask the witness

17   about.  That's fine.

18        THE COURT:  We're on the same page.

19        So here's my point here.  Is that ordinarily when I

20   have dealt with these situations is I give you a pretty tight

21   leash on the documents and the interrogatories because that

22   generates a lot of more work beyond what jurisdictional

23   discovery is supposed to be.

24        In this case, given that there is some *prima facie*

25   basis for him to inquire, which I think there is, I am not

1   putting limitations on reasonable questions related to, for

2   example, time period that is strictly limited that he can't ask

3   a simple question that goes beyond -- what was the date, April

4   1 of 2021?

5           MR. GAUKROGER:  March of 2021.

6           THE COURT:  That he can't ask a single question beyond

7   that or a single question after that.

8               That's not appropriate because if he establishes the

9   pattern of, for example, irrelevant conduct which is generated

10  in the State for a period of time prior to that it may be

11  relevant to the decision-maker.

12              And so, therefore, I am not imposing those kind of

13  limitations.  So you can preserve whatever limitation argument

14  you want.

15          MR. GAUKROGER:  Okay.

16          THE COURT:  But if the witness is somebody with

17  knowledge they need to answer the question about -- so long as

18  it is reasonably tied to something having to do with Florida,

19  right?

20              Because this is a specific jurisdiction case.  I'm

21  giving him a lot more leeway on a deposition than I would in

22  terms if I had to compel on individual requests because I

23  think, number one, you've done a fair amount of complied with

24  what I think is --

25          MR. GAUKROGER:  Interrogatories tell a ton.

```
 1              THE COURT:  And I saw that and I'm fine with it.
 2              So the only thing that I am saying to you is, I will
 3   let you preserve whatever objections you want.  But if the
 4   witness knows an answer to something that goes beyond March of
 5   2021 to now, the witness should answer the question.  The same
 6   rule applies as applies to every other deposition.
 7              MR. GAUKROGER:  Okay.
 8              THE COURT:  Right?  So if it a has to do with Florida,
 9   the witness needs to answer.
10              MR. GAUKROGER:  Okay.
11              THE COURT:  So I am basically, then, I am not
12   pre-ruling because if there are questions that the witness is
13   directed not to answer, obviously I will have to deal with it
14   after the deposition.  But since we are already here and not to
15   waste any time, I am assuming that you are going to have
16   somebody knowledgeable about that.  So strict timeframes I am
17   not applying.  I will not enforce.
18              MR. GAUKROGER:  Okay.
19              THE COURT:  Because so long as the topic has to do
20   with anything having to do with Florida, I'm giving him a much
21   wider scope at a deposition in lieu of me doing much more
22   compelling of documents because I think that goes beyond what
23   jurisdictional discovery is supposed to be about.
24              So I think you are fine for now, but he is raising a
25   fair point which is he doesn't want the witness to be too
```

```
 1 | limited in scope.  And I am agreeing with him on that because
 2 | the deposition is the time where we need to test out his
 3 | theories of jurisdiction.  I agree with you.  I don't see a lot
 4 | here on principle either.  I'm with you, but I'm basically
 5 | saying I want the deposition to be a plenary deposition about
 6 | Florida.
 7 |         MR. GAUKROGER:  Okay.
 8 |         THE COURT:  Okay.  So on that I am agreeing with Mr.
 9 | Moskowitz.  What is the second issue that you raised?
10 |         MR. MOSKOWITZ:  About if it doesn't relate to the
11 | Voyager platform that --
12 |         THE COURT:  When you say that it doesn't relate to --
13 | I guess you are asking that, for examine, is this platform
14 | another business that they are in?
15 |         MR. MOSKOWITZ:  It would just be the chart.  I mean,
16 | they produced a chart to us that shows --
17 |         THE COURT:  Just give me an example.
18 |         MR. MOSKOWITZ:  Can I approach, Your Honor?
19 |         THE COURT:  Sure.
20 |         MR. GAUKROGER:  May I join so I could see?
21 |         MR. MOSKOWITZ:  No.
22 |         MR. GAUKROGER:  I've got them, but I want to see what
23 | you are giving him.  We're friends so this is okay.
24 |         THE COURT:  Is this what you have produced to him?
25 |         MR. GAUKROGER:  Yes.
```

1        THE COURT:  Okay.

2        MR. MOSKOWITZ:  And we've gotten a handful of

3  documents, Your Honor.  I just want to be clear.  So this is

4  their organizational chart.  I'm sure they have other more

5  sophisticated charts, but you see this chart.  On the top is

6  Voyager Digital LTD.  That's the public stock.  All the money

7  goes up to them.

8        THE COURT:  Right.

9        MR. MOSKOWITZ:  And they have other entities that they

10  deal with besides Voyager Digital LLC.

11        THE COURT:  Right.

12        MR. MOSKOWITZ:  So in jurisdiction of Voyager Digital

13  LTD, I certainly plan to ask what is DGR Holdings LLC?  What is

14  VYGR Digital Securities LLC?  Do they do business in Florida?

15  It's an FINRA company.  VYGR Management, what is that?

16        MR. GAUKROGER:  That's general jurisdiction he's

17  trying to --

18        THE COURT:  But how could you object that?

19        MR. MOSKOWITZ:  What's the objection?

20        THE COURT:  What is the objection?  You gave him this

21  document, right?

22        MR. GAUKROGER:  Right, I have.

23        THE COURT:  So he is not allowed to ask what does VYGR

24  Holdings do as a Florida operation?  He's not allowed to ask

25  that?  Is that what you are saying.

1          MR. GAUKROGER:  I'm saying it is not relevant.

2          The cause of accident is against for use of the

3    Voyager platform.  That's house of the Voyager LLC and in the

4    LLC.  That they decided to sue the corporate parent of all

5    these entities does not make anything about all these other

6    entities at all relevant to the cause of action that has been

7    pled.

8          THE COURT:  But, number one, it is a document that you

9    produced to him.  So he is entitled to it.  That's what

10    depositions are for.

11          MR. GAUKROGER:  Sure.

12          THE COURT:  The documents that you have produced to

13    him, he is entitled to ask what does this mean, right?  I think

14    (inaudible) relevance objection.  I have no problem with

15    preserving them.

16          MR. GAUKROGER:  It's a question do we have to prepare

17    a witness to then go figure out who may not know all of these

18    things?

19          THE COURT:  Well, let's put it this way.

20          Since it is more likely, at this point, is there some

21    one person you may identify?

22          MR. GAUKROGER:  Yes.

23          THE COURT:  Or are you still working on that?

24          MR. GAUKROGER:  No, the people who signed the

25    interrogatories will likely be the witnesses.

1          THE COURT:  And who is that person?

2          MR. GAUKROGER:  That is for LTD, I believe his name is

3   Brian Nistler (phonetic).  He's attorney.

4          THE COURT:  And he has counsel?

5          MR. GAUKROGER:  Yes.

6          THE COURT:  Okay.  How much does he need to prepare to

7   know what this company does?  Let's assume that.  Okay.  Let's

8   assume that this is not something that you really need to spend

9   a lot of time working this chart through.  If he knows the

10  answer, he knows the answer.

11         MR. GAUKROGER:  Okay.

12         THE COURT:  And so my --

13         MR. GAUKROGER:  I have a duty to prepare on these

14  related things --

15         THE COURT:  Right.

16         MR. GAUKROGER:  -- really takes the jurisdictional

17  issue and turns it into something really different.  Looking

18  for new causes of action.

19         THE COURT:  He's entitled to ask about this document

20  introduced in jurisdictional discovery.

21         MR. GAUKROGER:  Very good, Your Honor.

22         THE COURT:  So that's basically, I am just

23  highlighting -- I am not assuming, but I am highlighting for

24  you how I generally do this so that he can ask in deposition

25  and I don't have to bring anybody back.

```
 1              MR. GAUKROGER:  I hear you.

 2              THE COURT:  So you can consider your objection

 3    preserved.

 4              MR. GAUKROGER:  Okay.

 5              THE COURT:  And you may be absolutely right, but for

 6    purposes of discovery, I am allowing the deposition.  So I am

 7    giving the Plaintiff leave to get this done, the deposition

 8    done, because I think that's the most efficient way to do it.

 9    And he certainly is entitled to ask questions about something

10    that was produced to him in discovery, right?

11              MR. GAUKROGER:  Okay.

12              THE COURT:  So you understand my point?

13              MR. GAUKROGER:  I do.  Our relevancy objection will be

14    preserved.  Okay.  Very good.  I can live with that.

15              THE COURT:  VGI Holdings owns real estate in the State

16    of Florida and your argument is --

17              MR. GAUKROGER:  Who cares.

18              THE COURT:  It doesn't matter because you are not

19    alleging general jurisdiction.  His argument is, well, it

20    certainly colors the case.

21              And then, the trial comes back and I can decide.  So

22    we won't have to review the argument now.  I am giving him a

23    wide scope at the deposition.

24              MR. GAUKROGER:  All right.

25              THE COURT:  Okay.  Now in terms of the timing of the
```

```
 1  deposition, did you say you wanted this individual in-house who
 2  is not available until the end of April?
 3          MR. GAUKROGER:  No, that's different.
 4          THE COURT:  Oh.
 5          MR. GAUKROGER:  We would agree -- so they have done
 6  two corp notices of 30(b)(6), one for each entity and, then, a
 7  third deposition for an individual.  We have agreed on the
 8  individual and we have agreed on Mr. Nistler's deposition.
 9  It's the LLC's deponent.  We are making this person available
10  because she is on vacation the week of -- I guess it's the
11  18th.  She's on the 26th.
12          THE COURT:  Okay.
13          MR. MOSKOWITZ:  Which is within the period provided
14  for the discovery, including discovery, which is on the 28th.
15          THE COURT:  So the jurisdictional issue on the LLC,
16  but it's an arbitration issue on the LLC?
17          MR. MOSKOWITZ:  Correct.
18          THE COURT:  Okay.
19          MR. MOSKOWITZ:  And this is again the 28th.
20          THE COURT:  Can't you get a different person for the
21  LLC on knowledge of the arbitration issue?  Does it have to be
22  this lady?  In other words, who is this lady?
23          MR. GAUKROGER:  She is the most informed.  She has
24  done the case with the discovery and served the responses to
25  interrogatories and that's who the client has designated as
```

1   their witness.

2          THE COURT:  And is she in-house attorney with the LLC?

3          MR. GAUKROGER:  She's an employee.  I don't think

4   she's an attorney.

5          THE COURT:  Okay.  That's fine.

6          MR. GAUKROGER:  I think she is compliance or

7   something.

8          THE COURT:  Got you.  And she is the person with the

9   most knowledge about arbitration issues?

10         MR. GAUKROGER:  I believe that's who Defense has

11  designated, yeah.

12         THE COURT:  Okay.  And you are saying she's not

13  available until when?

14         MR. GAUKROGER:  She's available on the 26th of April,

15  which is squarely within the deadline.  I could read in the

16  order where the Judge said it had to be done within the 28th.

17         So we are within the time period that Judge Altonaga

18  made permissible for this discovery.  We are putting the other

19  deponents on the timeframe that is not objectionable.

20         THE COURT:  Just to cut to the chase --

21         MR. GAUKROGER:  She's going on vacation.

22         THE COURT:  For purposes of the amended complaint do

23  you really --

24         MR. MOSKOWITZ:  Your Honor, we could agree to it.

25         It has been moved up.  What they said is that week she

1    is on vacation.  So we said, okay, we'll take her earlier or

2    we'll take her next week.  And they said, well, let's check on

3    that and then they said, no, we don't want to do that.

4          So it's just a question of I have to do an amended

5    complaint April 28th.

6          THE COURT:  But does the amended complaint have

7    anything to do with the arbitration part?

8          MR. MOSKOWITZ:  Possibly about the unregistered

9    securities, possibly, but I will live with April 26th, Your

10   Honor.

11         THE COURT:  Okay.  We accomplished that.

12         MR. GAUKROGER:  May I address the privilege log issue?

13         THE COURT:  I think that's the next issue, right?

14         MR. MOSKOWITZ:  That's the last issue.

15         THE COURT:  Could I just see it first because I

16   haven't seen it yet.

17         MR. GAUKROGER:  It hasn't been filed.  It was served

18   -- like I said, we jumped on the horse and got this done before

19   we needed to --

20         THE COURT:  I know.

21         MR. GAUKROGER:  -- technically because we are trying

22   not to be here on these --

23         THE COURT:  So let me see it.

24         MR. GAUKROGER:  May I approach?  I only have one.

25         THE COURT:  That's fine.

```
 1            MR. GAUKROGER:  You have one.  It was sent to you last
 2   night.
 3            MR. MOSKOWITZ:  That's okay.  I trust you.
 4            MR. GAUKROGER:  You should.  I'm an officer of the
 5   Court.
 6            THE COURT:  So this is your privilege log and the
 7   documents of which company that was produced?
 8            MR. GAUKROGER:  LLC.
 9            THE COURT:  LLC.
10            MR. GAUKROGER:  Because LLC has the documents subject
11   to the --
12            THE COURT:  Got it.
13            Okay.  So having taken a look at the privilege log
14   then, what is it that is your issue now?
15            MR. MOSKOWITZ:  I read it last night when I was on my
16   phone.  It didn't appear to me on its face to be lawyer to
17   lawyer only talking about anticipation of litigation at all.  I
18   mean, I couldn't understand just looking at the face of it --
19            THE COURT:  Well, to be privileged doesn't have to be
20   anticipated litigation.
21            MR. MOSKOWITZ:  Not at all, but I just see it's a
22   lawyer to a lawyer about a legal issue.  Not in the ordinary
23   course of business of what they're doing.
24            THE COURT:  For example, I'm just taking number two,
25   an e-mail from internal counsel, Miss Luani (phonetic) to a
```

```
 1   separate internal counsel regarding revisions to customer

 2   agreement.  So why wouldn't that be privileged?

 3            MR. MOSKOWITZ:  I got it last night, Your Honor.

 4            THE COURT:  Okay.

 5            MR. MOSKOWITZ:  So maybe let us take some time to

 6   review it better and we'll go through it and find out --

 7            THE COURT:  You can ask questions at the depositions.

 8            MR. MOSKOWITZ:  I'm going to ask questions at the

 9   deposition.

10            THE COURT:  You can do that.  He can do that and find

11   out who these people are.

12            MR. GAUKROGER:  Of course, yes.

13            THE COURT:  So we will table that issue.  It appears

14   to me to be okay, but I will let you develop it.

15            MR. MOSKOWITZ:  Thank you, Your Honor.

16            THE COURT:  So I will table that issue.

17            Anything else?  So I think that's a good guidepost for

18   what we're going to do.  Then just to make sure we are

19   complying with Judge Altonaga's order --

20            MR. GAUKROGER:  We've got three weeks from today to

21   finish discovery.  I'm sorry, Judge.  I spoke without leave.

22            THE COURT:  Okay.  So, then, technically the -- so I

23   guess she is giving you two days to evaluate the amended

24   complaint.

25            MR. GAUKROGER:  Yes.
```

1    THE COURT:  And then to make sure you set aside that
2    time.  And then, in which case you have until May 8th to renew
3    your motion to compel arbitration.
4         So to the extent there is any dispute after these
5    depositions, I have time before briefing on any motion to
6    dismiss is complete to fix anything if there is a dispute.
7         MR. MOSKOWITZ:  Thank you.
8         THE COURT:  So if there is no dispute, great.
9         If there is a dispute, I can give you time in the
10   beginning of May that addresses anything that needs to fix it.
11        So by the time any motions filed that are ripe, I want
12   to make sure that Judge Altonaga has the benefit of everything
13   that she would want to have the benefit of.
14        So I am telling you that comply with her directive.
15   Take the depositions.  To the extent there is anything I need
16   to do, I will give it expedited treatment in time for her to
17   have a complete record to the extent I need to order any
18   supplementation before briefing on the motion is complete.
19        Does that make sense?
20        MR. GAUKROGER:  Thank you so much, Your Honor.
21        THE COURT:  So I will give you that availability.
22   Hopefully you will not have any disputes and the record will be
23   what the record will be.
24        MR. GAUKROGER:  May I ask one housekeeping question,
25   Your Honor, before we leave?

1           THE COURT:  Yes.  Let me give this back to counsel for
2   the Defendant and this goes back to Mr. Moskowitz.
3           MR. MOSKOWITZ:  I get the chart.
4           MR. GAUKROGER:  I'll take the privilege log.  Nobody
5   wants the privilege log.
6           THE COURT:  Okay.  You wanted to add anything?
7           MR. GAUKROGER:  I just wanted to add one point of
8   clarification.
9           So with respect to I read your standard order on
10  discovery and how things are done and Monday by noon the
11  documents for today's hearing would have been proposed orders
12  and such.
13          THE COURT:  Right.
14          MR. GAUKROGER:  With this expedited nature what would
15  you have us do?  Is the submission of different proposed orders
16  as we did here the right way to do it?
17          THE COURT:  Yes, that's fine.
18          MR. GAUKROGER:  I mean, we weren't able to finish our
19  meet and confer before Monday at noon.  So we did it a little
20  later.
21          THE COURT:  That's fine.
22          I use it in part just to get what I need and then the
23  parties often will file the issues --
24          MR. GAUKROGER:  We did.
25          THE COURT:  -- the morning of and so that's fine with

1  me.

2          MR. GAUKROGER:  Okay.

3          THE COURT:  So prepare it for myself.

4          MR. GAUKROGER:  Awesome.

5          MR. MOSKOWITZ:  If you want to give me a proposed

6  draft on today, we have not that much ruled upon, but we can

7  really --

8          THE COURT:  We really haven't ruled on anything to be

9  clear.  I just want to make sure you don't under prepare the

10 witness for the deposition.  I am giving him jurisdictional

11 discovery should be primary deposition.

12         So, therefore, I am giving him wide strike zone --

13 that's a good word -- wide strike zone for the deposition.

14 Especially with somebody who is not with all these corporate

15 entities, number one.

16         And number two, we are okay with the date that was

17 initially in dispute and we will leave it on the 26th;

18         Number three, the privilege log issue I am tabling;

19         And then, otherwise, I think we are good and let's see

20 where we are after the depositions.  That's basically what

21 we're doing.

22         MR. MOSKOWITZ:  Thank you so much, Your Honor.

23         (Thereupon, the proceedings concluded.)

24

25

1

2                          CERTIFICATE

3

4         I hereby certify that the foregoing transcript is an

5  accurate transcript of the audio recorded proceedings in the

6  above-entitled matter.

7

8

9

10
   04/11/22                    Bonnie Joy Lewis,
11                      Registered Professional Reporter
                          CASE LAW REPORTING, INC.
12                        7001 Southwest 13 Street,
                        Pembroke Pines, Florida 33023
13                           954-985-8875

14

15

16

17

18

19

20

21

22

23

24

25