VoyagerCorpRepShannonCaseyRough_Rough

1

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
 2
                    CASE NO:  21-24441-CIV-ALTONAGA/Torres
 3                   2009-CA-212-O

 4   MARK CASSIDY, on behalf of himself
     and others similarly situated,
 5
             Plaintiff,
 6
     vs.
 7
     VOYAGER DIGITAL LTD, and
 8   VOYAGER DIGITAL LLC,

 9           Defendants.
     _____/
10
     * * * * * * * * * * * * * * * * * * * * * * * *
11   The following transcript of proceedings, or any portion
     thereof, in the above entitled matter, taken on April
12   26, 2022, is being delivered unedited and uncertified by
     the official court reporter.
13
     The purchaser agrees not to disclose this unedited
14   transcript in any form (written or electronic) to anyone
     who has no connection to this case.  This is an
15   unofficial transcript which should not be relied upon
     for purposes of verbatim citation of testimony.
16   This transcript has not been checked, proofread, or
     corrected.  It is a draft transcript, not a certified
17   transcript.  As such, it may contain computer-generated
     mistranslations or stenotype code or electronic
18   transmission errors, resulting in inaccurate or
     nonsensical word combinations or untranslated stenotype
19   symbols which cannot be deciphered by non-stenotypists.
     Corrections will be made in the preparation of the
20   certified transcript (which must be purchased in
     addition to the disk) resulting in differences in
21   content, page and line numbers, punctuation, and
     formatting.
22   * * * * * * * * * * * * * * * * * * * * * * * *
```

VoyagerCorpRepShannonCaseyRough_Rough

7       Q.   And it's kept in Voyager's name, not in his

8   name?

9       A.   I don't know.

10      Q.   Okay.  So what does it matter you say that

11  Voyager buys it on his behalf?

12      A.   Well, I don't know if it's kept in Voyager's

13  name or another name, I guess I should say.

14      Q.   Okay.  So, going back to this interest, is

15  there anything unique that you can see here or tell us

16  about Mr. Cassidy that makes it different from anyone

17  else that was registered in the Voyager Earning Program

18  in terms of how this interest is paid?

19      A.   Not looking at this, no.

20      Q.   Okay.  And I don't want to -- I don't want to

21  spend hours on this.  I mean, if Mr. Cassidy was in

22  Texas or if he was in California, would there be any

23  different that you would look at in this chart in terms

24  of how he was paid interest every month if both people

25  met the minimum amount that was necessary each month?

                  UNCERTIFIED ROUGH DRAFT

                                          42


1            MR. SADEGHI:  Objection to form.

2            THE WITNESS:  No.  His earn would be the same,

VoyagerCorpRepShannonCaseyRough_Rough

3      as far as I know, in those state -- in those

4      states.

5   BY MR. MOSKOWITZ:

6      Q.   So there's no distinction for the Voyager Earn

7   Program by state.

8           Is there any difference in terms of how much

9   besides just their percentage would be higher?  You

10  don't, like, get treated completely different if you

11  have $100,000 versus whatever the minimum amount is; you

12  would just get more -- more interest at that month,

13  correct?

14          MR. SADEGHI:  Objection to form.

15          THE WITNESS:  Yes, as far as I'm aware.

16  BY MR. MOSKOWITZ:

17     Q.   Okay.  And sitting here today as the corporate

18  rep -- representative, do you know if anything from

19  Mr. Cassidy's account, looking at his account, that

20  makes him unique or different from any other investor

21  with Voyager Digital, LLC, on the platform?

22     A.   No.

23          (Defendants' Exhibit Number 4 was marked for

24          identification.)

25

VoyagerCorpRepShannonCaseyRough_Rough

15      Q.   Do you see there's a little mark after the

16   true; it says up and down?

17           If you went into this database and you took

18   the screenshot, what else can you change true to?

19           MR. SADEGHI:  Objection to form.

20           THE WITNESS:  You can't chain -- I don't have

21       right -- access to the database, so I can't change

22       anything.

23   BY MR. MOSKOWITZ:

24      Q.   You can just view this.  You can't actually go

25   into the database?

                     UNCERTIFIED ROUGH DRAFT

♀                                                    46


1            MR. SADEGHI:  Objection, form.

2            THE WITNESS:  I can view it and I can't change

3       it.  I have read access only.

4   BY MR. MOSKOWITZ:

5       Q.   Okay.  Did you -- so somebody asked you to

6   find out if Mr. Cassidy clicked the box.  You knew he

7   did before you even started because you said you can't

8   trade on the account unless you click the box, right?

9   There's no exceptions?

10      A.   Not that I'm aware of you can't create an

                         Page 53

VoyagerCorpRepShannonCaseyRough_Rough

11   account.

12       Q.   Did you click in here "Mr. Cassidy's user_ID

13   redacted for privilege [sic]"?  Did you enter that in

14   the program?

15       A.   I'm sorry, enter what?

16       Q.   When you have the screenshot here it says

17   under the "user_id" box "Mr. Cassidy's user_id redacted

18   for privacy," right?  We have his user ID because we

19   just looked at the prior document, which showed what his

20   ID was.

21            But who typed in his user ID in order to find

22   this information?

23       A.   I did.

24       Q.   Okay.  Is there any other time in the Voyager

25   process where a consumer needs to actually click a box

UNCERTIFIED ROUGH DRAFT

47

1   to accept any revisions or changes to the User

2   Agreement?

3       A.   Not that I'm aware of, no.

4       Q.   Do you know why?

5       A.   No.

6       Q.   Would that show you, then, that they actually

Page 54

VoyagerCorpRepShannonCaseyRough_Rough

3          THE WITNESS:  I can always know they have

4      clicked the box and that they have said that they

5      have read it, but I don't know if they've actually

6      read it.

7  BY MR. MOSKOWITZ:

8      Q.    But at least they're clicking a box and

9  telling you that they say they read it, right?

10     A.    Yes.

11     Q.    I'm asking you do you know why, when Voyager

12  makes continuous revisions to the User Agreement -- and

13  you're aware of that, right?  Every couple --

14     A.    Yeah.

15     Q.    -- months or years there's changes to this

16  agreement?

17          MR. SADEGHI:  Objection to form.

18          THE WITNESS:  Yes.

19  BY MR. MOSKOWITZ:

20     Q.    Okay.  Why -- for those subsequent changes

21  that are made why doesn't Voyager just follow the same

22  easy process of having this "click this button," and if

23  you click it, then you could go back, type in the user

24  ID, and you can see, simply, if they clicked it and read

25  it or even received it.  Why don't you do that?

UNCERTIFIED ROUGH DRAFT

VoyagerCorpRepShannonCaseyRough_Rough

11          THE WITNESS:  What's the exact question?

12 BY MR. MOSKOWITZ:

13     Q.   Yeah.

14          As of April 18 this email change -- this --

15 this User Agreement change that you made on April 16th

16 was already binding on Mark Cassidy regardless if he got

17 this marking master email or not, according to your

18 testimony all morning?

19     A.   Yes.

20     Q.   Okay.  So this document just shows that there

21 was a mass email -- that we see on the right -- sent to

22 a Marketing Master 2021.  What is that list?

23     A.   I understand that to be the list of the

24 recipients of this email.

25     Q.   Okay.  But I don't have -- you already

                    UNCERTIFIED ROUGH DRAFT

                                                    65

1 produced the whole thing.  Are these people that are

2 just under a marketing email for Voyager or are they all

3 customers of Voyager or do you know?

4     A.   I don't know.

5     Q.   So you don't know who comprises this list,

6 whether they're customers or not?

                    Page 75

VoyagerCorpRepShannonCaseyRough_Rough

7      A.   No.

8      Q.   Did you discuss this document with your

9  counsel?

10     A.   Yes.

11     Q.   And did you ask any questions that you didn't

12 know?

13     A.   No.

14     Q.   Okay.  So -- so walk me through it.  When it

15 says here Marketing Master 2021, did you ask her, well,

16 who actually got this email?

17          MR. SADEGHI:  Objection to form.

18          THE WITNESS:  We just discussed that

19     Mr. Cassidy's name was on the list to receive the

20     email.

21 BY MR. MOSKOWITZ:

22     Q.   Okay.  We'll get back to the next exhibit.

23 But on this exhibit, it shows that it was mailed out to

24 1 million 279 people 869; is that correct?

25     A.   Yes.  That's what it says.

                    UNCERTIFIED ROUGH DRAFT

                                             66

1      Q.   And it took 6 hours to send out this email?

2          MR. SADEGHI:  Objection to form.

                    Page 76

VoyagerCorpRepShannonCaseyRough_Rough

19          MR. SADEGHI:  Objection to form.

20          THE WITNESS:  I just knew this and that this

21      one took place over Zoom.

22  BY MR. MOSKOWITZ:

23      Q.  I'm sorry, you just knew this; what does that

24  mean?

25      A.  That the setting -- the arbitration occurring

                        UNCERTIFIED ROUGH DRAFT

⚲

                                                        81


1   in New Jersey was not -- wasn't -- not part of their

2   rules, so it had to be changed.

3       Q.  So you had to change the Voyager Standard

4   Agreement at that time?

5       A.  I don't know.

6       Q.  Well, that's what you just said.  So how do

7   you know that?

8       A.  I don't know the results.  I don't know what

9   the res- -- the result of this would be.

10      Q.  You knew that at least this arbitration had to

11  take place by Zoom and not in person in New Jersey?

12          MR. SADEGHI:  Objection to form.

13          THE WITNESS:  I don't know why it took place

14      in New Jer- -- in -- by Zoom.

                        Page 94

VoyagerCorpRepShannonCaseyRough_Rough

15  BY MR. MOSKOWITZ:

16      Q.   Okay.  Well, reading this, it says "The above

17  provision violates Principle 7:  Reasonably convenient

18  location."  So were you aware of that, sitting here

19  today?

20      A.   Aware of what?

21      Q.   That the Voyager standard arbitration

22  provision as of this date, June 26, 2021, violated the

23  AAA's regulations.

24      A.   I just knew it was changed.

25      Q.   What do you mean by changed?

                    UNCERTIFIED ROUGH DRAFT

                                        82

1      A.   The -- that the arbitration agreement was

2  changed.

3      Q.   By who?

4      A.   The legal team.

5      Q.   And how was it changed?

6      A.   What do you mean how?

7      Q.   You said that it was by Zoom so they didn't

8  have to go to New Jersey, but how else was it changed?

9      A.   I don't know specifics.

10      Q.   Do you know if it was conducted confidentially

                        Page 95

VoyagerCorpRepShannonCaseyRough_Rough

11    before a single neutral arbitrator?

12         A.   I don't know.

13         Q.   Well, you're here as the person with the most

14    knowledge about the Voyager Platform User Agreement

15    including revisions thereto.  Is there somebody that

16    would have more knowledge than you about how this

17    agreement was changed?

18         A.   The legal team.

19              MR. SADEGHI:  Objection, form.

20    BY MR. MOSKOWITZ:

21         Q.   I'm sorry?

22         A.   The legal team.

23         Q.   But you're the one who's the corporate

24    representative today.  I can't ask Kayvan.  I can't put

25    him under oath and ask him questions.  You've been

                    UNCERTIFIED ROUGH DRAFT

                                             83

 1    designated by the company to answer my questions.  So

 2    I'm trying to figure out as much as I can because you're

 3    supposed to be prepared today on all of the revisions.

 4              So if there's only one arbitration that ever

 5    existed and that changed, can you -- can you help me out

 6    a little bit and kind of tell me a little bit how you

                    Page 96

VoyagerCorpRepShannonCaseyRough_Rough

85

1   New Jersey and it no longer required it to be under

2   confidentiality by a single new -- neutral arbitrator.

3   You know those two changes --

4            MR. SADEGHI:  Form.

5            MR. MOSKOWITZ:  Let me just finish the

6       question.

7   BY MR. MOSKOWITZ:

8       Q.   You just -- you just may not know other

9   changes?

10           MR. SADEGHI:  Objection to form.  Misstates

11      the testimony.

12           THE WITNESS:  I know the New Jersey change.  I

13      do not know about the other change.

14  BY MR. MOSKOWITZ:

15      Q.   Okay.  And you say the New Jersey change.  I

16  just want to be clear on the record, what is the

17  New Jersey change?

18      A.   That the arbitration must occur in New Jersey,

19  and now that has been -- that's not part of it.

20      Q.   Okay.  And what about you don't have any

21  knowledge on this second part, that will be conducted

22  confidentially, or today the arbitration's required to

Page 99

# Exhibit 3

| EMAIL | USER_ID | TRANSACT| SYMBOL | TRANSACTI | TRANSACTI | TRANSACTI | QUANTITY | TRANSACTI | NET | PRICE |
|---|---|---|---|---|---|---|---|---|---|---|
| markcassid | 9d0c832a-( | 01FD9AGS! | USD | withdrawa | BANK | 2021-08-17 | 1018.29 | N/A | 1018.29 | 1 |
| markcassid | 9d0c832a-( | 01FD9AE7! | BTC | Sell | TRADE | 2021-08-17 | 0.017862 | USD | 821.2948 | 45980 |
| markcassid | 9d0c832a-( | 01FD9AEV\ | ETH | Sell | TRADE | 2021-08-17 | 0.06227 | USD | 197.0011 | 3163.66 |
| markcassid | 9d0c832a-( | 01FC0C0YT | BTC | deposit | INTEREST | 2021-08-01 | 7.42E-05 | N/A | 3.098384 | 41745.95 |
| markcassid | 9d0c832a-( | 01FBZ931S | BTC | Buy | TRADE | 2021-07-31 | 0.002296 | USD | 96.78982 | 42147.58 |
| markcassid | 9d0c832a-( | 01F9GM2K | BTC | deposit | INTEREST | 2021-07-01 | 8.03E-05 | N/A | 2.690644 | 33524.1 |
| markcassid | 9d0c832a-( | 01F73D8TS | BTC | deposit | INTEREST | 2021-06-01 | 7.98E-05 | N/A | 2.948955 | 36940.44 |
| markcassid | 9d0c832a-( | 01F659C8F | ADA | Sell | TRADE | 2021-05-2( | 55.3 | USD | 95.29462 | 1.72323 |
| markcassid | 9d0c832a-( | 01F5E1BXY | ETH | Buy | TRADE | 2021-05-11 | 0.0025 | USD | 10.11425 | 4045.7 |
| markcassid | 9d0c832a-( | 01F5E1751 | USD | deposit | BANK | 2021-05-11 | 10 | N/A | 10 | 1 |
| markcassid | 9d0c832a-( | 01F5E02FC | ETH | Buy | TRADE | 2021-05-11 | 0.002484 | USD | 10 | 4025.286 |
| markcassid | 9d0c832a-( | 01F5E01FZ | USD | deposit | BANK | 2021-05-11 | 10 | N/A | 10 | 1 |
| markcassid | 9d0c832a-( | 01F4VVZQI | USDC | Sell | TRADE | 2021-05-04 | 1.6 | USD | 1.6 | 1 |
| markcassid | 9d0c832a-( | 01F4VPP8E | ADA | Buy | TRADE | 2021-05-04 | 55.34034 | USD | 75 | 1.35525 |
| markcassid | 9d0c832a-( | 01F4VPNS) | USD | deposit | BANK | 2021-05-04 | 75 | N/A | 75 | 1 |
| markcassid | 9d0c832a-( | 01F4MFHB | USDC | deposit | INTEREST | 2021-05-01 | 1.6041 | N/A | 1.6041 | 1 |
| markcassid | 9d0c832a-( | 01F4KQDD | BTC | deposit | INTEREST | 2021-05-01 | 6.07E-05 | N/A | 3.515016 | 57946.2 |
| markcassid | 9d0c832a-( | 01F4K4F9F | ETH | Buy | TRADE | 2021-05-01 | 0.057291 | USD | 163.88 | 2860.484 |
| markcassid | 9d0c832a-( | 01F4K4ERY | USDC | Sell | TRADE | 2021-05-01 | 163.88 | USD | 163.88 | 1 |
| markcassid | 9d0c832a-( | 01F45NFR\ | BTC | Buy | TRADE | 2021-04-25 | 0.003062 | USD | 150.0002 | 48993.43 |
| markcassid | 9d0c832a-( | 01F45NEA( | USD | deposit | BANK | 2021-04-25 | 150 | N/A | 150 | 1 |
| markcassid | 9d0c832a-( | 01F3JZA5A | BTC | Buy | TRADE | 2021-04-18 | 0.001788 | USD | 99.99973 | 55927.63 |
| markcassid | 9d0c832a-( | 01F3JZ9S9! | USDC | Sell | TRADE | 2021-04-18 | 100 | USD | 100 | 1 |
| markcassid | 9d0c832a-( | 01F2MBMI | USDC | Buy | TRADE | 2021-04-06 | 100 | USD | 100 | 1 |
| markcassid | 9d0c832a-( | 01F2C3HVI | USDC | Sell | TRADE | 2021-04-0( | 100 | USD | 100 | 1 |
| markcassid | 9d0c832a-( | 01F24G155 | USDC | Buy | TRADE | 2021-03-31 | 263.88 | USD | 263.88 | 1 |
| markcassid | 9d0c832a-( | 01F24FZAN | ETH | Sell | TRADE | 2021-03-31 | 0.14358 | USD | 263.8865 | 1837.906 |
| markcassid | 9d0c832a-( | 01F1370X4 | BTC | deposit | REWARD | 2021-03-18 | 0.000421 | N/A | 25.00013 | 59355.95 |
| markcassid | 9d0c832a-( | 01F130MK | ETH | Buy | TRADE | 2021-03-18 | 0.143577 | USD | 263.32 | 1834.003 |
| markcassid | 9d0c832a-( | 01F130M1` | BTC | Sell | TRADE | 2021-03-18 | 0.004455 | USD | 263.3225 | 59107.19 |
| markcassid | 9d0c832a-( | 01F130JDV | BTC | Buy | TRADE | 2021-03-18 | 0.005029 | USD | 301.0602 | 59866.49 |
| markcassid | 9d0c832a-( | 01F130HW | ETH | Sell | TRADE | 2021-03-18 | 0.16627 | USD | 301.0606 | 1810.673 |
| markcassid | 9d0c832a-( | 01F130D7; | BTC | Buy | TRADE | 2021-03-18 | 0.000839 | USD | 50.00011 | 59630.43 |
| markcassid | 9d0c832a-( | 01F12XH3! | ETH | Buy | TRADE | 2021-03-18 | 0.166276 | USD | 300 | 1804.233 |
| markcassid | 9d0c832a-( | 01F12XGQ | BTC | Buy | TRADE | 2021-03-18 | 0.008588 | USD | 500.0003 | 58220.67 |
| markcassid | 9d0c832a-( | 01F12X8PV | USD | deposit | BANK | 2021-03-18 | 850 | N/A | 850 | 1 |

# Exhibit 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-24441-CIV-ALTONAGA/Torres

MARK CASSIDY, on behalf of himself
and others similarly situated,

Plaintiff,

v.

VOYAGER    DIGITAL    LTD.,    and
VOYAGER DIGITAL LLC

Defendants.

_____/

**DECLARATION OF SHANNON CASEY**

I, Shannon Casey, declare that:

1.      I am employed by Voyager Digital LLC ("Voyager LLC") as a Director of Operations.  I have served in that role since February 2021. As part of my responsibilities, I am familiar with Voyager LLC's records with respect to the Voyager LLC User Agreement and communications with customers with respect thereto.

2.      I am also familiar with the lawsuit filed against Voyager Digital Ltd ("Voyager Ltd") and Voyager LLC by Mark Cassidy. I submit this declaration in support of the Motion to Compel Arbitration and to Dismiss to be filed on behalf of Voyager LLC and Voyager Ltd.

3.      This declaration is based upon my personal knowledge, including knowledge gained through my review of company records and confirmed with other experienced Voyager employees, and I would testify to the following facts if called as a witness in a court of law. I am also familiar with Voyager LLC's business practices, and understand the records referenced herein to have been created and maintained in the course of Voyager LLC's regularly conducted activity.

4. Voyager LLC operates the Voyager Platform accessible through Voyager's mobile phone application and website.

5. Voyager Ltd is a foreign holding company parent of Voyager LLC with no operations or employees. Voyager Ltd does not operate or market the Voyager Platform.

6. Users of the Voyager Platform must agree to Voyager LLC's User Agreement to access and use the Voyager Platform. Voyager LLC publishes its User Agreement through its App and on its website. Voyager LLC's User Agreement can be viewed on the company's website via a hyperlink on the website's landing page (https://www.investvoyager.com/), which directs the user to the User Agreement at https://www.investvoyager.com/useragreement/.

7. Voyager LLC also directs users to its User Agreement via a bold, purple hyperlink as part of the account opening process in its App, as shown below:

8.      To open an account and use the Voyager Platform, each user is required to first check the box confirming that "By creating an account, you agree to our **Terms**." No user would have been able to proceed with opening a Voyager account without first checking the box confirming their agreement to the terms of the User Agreement.

9.      Clicking on the word "Terms" on the account opening screen takes the user to the version of Voyager's User Agreement that is in place at the time the user clicks on the link. When Plaintiff signed up for a Voyager account on March 17, 2021, the "Terms" link directed the user to the Voyager User Agreement last revised January 2021.

10.     Voyager LLC's records confirm that Mr. Cassidy did check the box confirming his agreement to the User Agreement when he opened his account on March 17, 2021.

11.     Voyager LLC assigns a unique user_id to each user, and keeps records of user's account registration, including the time of registration and that the user manifested assent to the User Agreement. I have reviewed records reflecting Mr. Cassidy's unique user_id.

12.     Voyager's user registration records, maintained in the ordinary course of business, reflect that Mr. Cassidy registered for an account through the App on March 17, 2021 at 4:28 pm U.T.C.  An excerpt of that record appears in Voyager's internal database as follows:



The "did_agree" field in the database reflected in the above image is set to true when the user clicks "Continue" after having checked the box confirming that "By creating an account, you agree to our Terms."

13.     Voyager LLC's records also indicate that all of Mr. Cassidy's transactions on the App took place between March 18, 2021 and August 17, 2021.

3

14.     From March 18, 2021 to present, Voyager LLC has updated its User Agreement multiple times.  I have attached as exhibits to this declaration each version of the User Agreement in place during that time period.

15.     Attached as **Exhibit A** is a true and correct copy of the User Agreement as revised in January 2021, which remained in place until April 16, 2021.

16.     Attached as **Exhibit B** is a true and correct copy of the User Agreement as revised on April 16, 2021, which remained in place until August 20, 2021.

17.     Attached as **Exhibit C** is a true and correct copy of the User Agreement as revised on August 20, 2021, which remained in place until November 23, 2021.

18.     Attached as **Exhibit D** is a true and correct copy of the User Agreement as revised on November 23, 2021, which remained in place until January 7, 2022.

19.     Attached as **Exhibit E** is a true and correct copy of the current User Agreement as revised on January 7, 2022.

20.     The only update to the User Agreement that occurred during the time period in which Mr. Cassidy traded on the Voyager Platform was the April 16, 2021 update.

21.     Customers, including Mr. Cassidy, were notified of that update by email on April 18, 2021.  Attached as **Exhibit F** is a printout of a record maintained by Voyager LLC in the ordinary course of business, depicting the email sent on April 18, 2021 notifying customers of the update to the User Agreement, and recording the date, time and distribution list. Voyager LLC's records also reflect that Mr. Cassidy was included in the distribution list to which the update was sent.

22.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 17, 2022.

SHANNON CASEY

# Exhibit 5



Click to apply labels to campaign

| | |
|---|---|
| **Campaign ID** | 2234649 |
| **Created** | Sun, Apr 18, 2021 10:52 AM |
| **Launch time** | Sun, Apr 18, 2021 11:19 AM EDT |
| **End time** | Sun, Apr 18, 2021 5:05 PM EDT |
| **Medium** | Email |
| **List** | Marketing Master 2021 |
| **List Size at Send Time** ⓘ | 1,279,869 |
| **Send Time Optimization** ⓘ | Enabled |
| **STO Window** | 6 hours |
| **Campaign state** | Finished |
| **utm_campaign** | None |
| **Template** | Support - Update to Customer Agreement |
| **From** | Voyager <no-reply@investvoyager.com> |
| **Subject** | Update to Customer Agreement |
| **Preheader Text** | None (email client default will be used) |
| **Message Type** | Transactional Email |
| **Message Channel** | Email Transactional Channel (Transactional) |

1

# Exhibit 5a

**Date:**    Wednesday, December 1 2021 04:26 PM
**Subject:** Re: Customer Agreement changes summary.
**From:**    Pam Kramer <pkramer@investvoyager.com>
**To:**      Julia Hyman <jhyman@investvoyager.com>;

Great work, THX!

On Wed, Dec 1, 2021 at 1:23 PM Julia Hyman <jhyman@investvoyager.com> wrote:
Hi All,

Confirming this has been updated and is currently in deployment.

Thanks!




Julia

Senior Marketing Program Manager

On Wed, Dec 1, 2021 at 12:52 PM Brian Nistler <bnistler@investvoyager.com> wrote:
For convenience, I have also attached a clean word and PDF copy of the updated agreement.

Thanks,
Brian

On Wed, Dec 1, 2021 at 12:48 PM Pam Kramer <pkramer@investvoyager.com> wrote:
Thank you very much, this is very helpful. Will let you know when it has been updated.
Pam

On Wed, Dec 1, 2021 at 9:47 AM Brian Nistler <bnistler@investvoyager.com> wrote:
Attached Pam.

On Wed, Dec 1, 2021 at 12:08 PM Pam Kramer <pkramer@investvoyager.com> wrote:
Yes, if possible, thanks.
Pam

On Wed, Dec 1, 2021 at 9:04 AM Brian Nistler <bnistler@investvoyager.com> wrote:
Hi Pam,


Do you mean that you want a redline of the original agreement as compared to the updated version?

- Brian

On Wed, Dec 1, 2021 at 11:50 AM Pam Kramer <pkramer@investvoyager.com> wrote:
Hi Brian et al,
Thank you for the update.

Adding Dan and Julia to this thread because they are in charge of ensuring the updates to the Customer
Agreement happen on the website. **Would be great to have a mark up of the currently posted agreement**

so that Dan knows which pieces to update and Julia knows what to QA, etc.

Also, based on these specific updates--do you think this warrants an email to customers? This summary is very helpful in that regard.

Thanks,
Pam K

On Tue, Nov 30, 2021 at 2:47 PM Brian Nistler <bnistler@investvoyager.com> wrote:
**Privileged and Confidential**



--

Brian Nistler
Associate Counsel


investvoyager.com


--

Brian Nistler
Associate Counsel


investvoyager.com


--



Brian Nistler
Associate Counsel

investvoyager.com

--

Brian Nistler
Associate Counsel

investvoyager.com

VOYAGER_001963

# Exhibit 6

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | eventName | predictionId | email | catalogLookupCount | templateId | messageBusId | messageId | createdAt | catalogCollectionCount | campaignId | channelId | messageTypeId | transactionalData | productRecommendationCount | contentId |
| 802357 | | 000100000114222cdc06348-8132-4b6b-bed7-54d7c8ce779f | joebeutts@gmail.com | 0 | 3062892 | 01000178e5f15b01-9529dad1-8ce2-494f-801f-ec0daee11982-000000 | 109a17d8cb0740da855571432e434616 | 2021-04-18 17:05:03 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802358 | | 0001000001142206101056-f621-4150-a860-44ceda810ceb | nick.birnbaum@gmail.com | 0 | 3062892 | 01000178e5f15c04-09bd1df2-5897-46f4-a614-de5aba0db39b-000000 | 9a4bf7fc03c643ddba02194a71f57124 | 2021-04-18 17:05:03 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802359 | | 000100000114222d3d9dc82-62c9-462b-b4b8-5ac190f98fe6 | sdh.liberty@gmail.com | 0 | 3062892 | 01000178e5f15c34-d2daf69e-2a51-48ce-85e4-c16236bb7596-000000 | 4303736e4223400286cc8d1d49074f7f | 2021-04-18 17:05:03 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802360 | | 0001000001142227d17ac15-6cdf-408f-9d46-a655172494d8 | bgoldin22@yahoo.com | 0 | 3062892 | 01000178e5f15c84-653b8e9f-32af-46b1-a5dd-1b3d0b0fc36d-000000 | 1a0c799112184d91910c31c0fc369c5d | 2021-04-18 17:05:03 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802361 | | 0001000001142229bfe74f4-102c-4315-b62b-244f7747ce51 | optimus9696@gmail.com | 0 | 3062892 | 01000178e5f15e13-2a450593-a014-40c7-a766-a121ce0d74ae-000000 | ee1614c6eabc420da72262a37a66eff7 | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802362 | | 0001000001142229532fdf4-52aa-4ee6-9ed5-af1732f40c96 | sheltoncgraham@gmail.com | 0 | 3062892 | 01000178e5f15a3b-c7f14d63-6906-4e11-9a0c-2d3fa919d8d9-000000 | b10dfcf4b6d447908a8bb879777a00f6 | 2021-04-18 17:05:03 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802363 | | 0001000001142226d861d31-dc80-4cf5-b805-34d6c978ddcf | ryanlapietra@yahoo.com | 0 | 3062892 | 01000178e5f15bd5-4809ccdc-72da-4159-a88b-dfe2e2181bba-000000 | 23e8df0779c14d078dbc6edbb14054cf | 2021-04-18 17:05:03 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802364 | | 000100000114222d3d5a18d-78a2-4ec2-9609-eda1e68db83f | johnsouthall56@gmail.com | 0 | 3062892 | 01000178e5f15f96-f7a29c28-f8c4-4e5d-a308-b769ccb83563-000000 | a6f70461c2bf4511be6ec64b2e05649e | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802365 | | 0001000001142221540e819-9f87-4230-b734-8d010be888fc | steffiebrennan@aol.com | 0 | 3062892 | 01000178e5f15c8f-9f3e3e75-5063-4c64-813a-b25c34eda641-000000 | 10f973b253f24326b512924458cd8f4d | 2021-04-18 17:05:03 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802366 | | 0001000001142234725086-a988-404d-9c55-03a7a82cc2bf | johnjoe.braxton@yahoo.com | 0 | 3062892 | 01000178e5f15c0e-d74a760d-7d67-4afc-bcec-16f0690525e5-000000 | a3f9e69ba9f64f78bc331ebefa50cc7b | 2021-04-18 17:05:03 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802367 | | 000100000114222691f01bc-2877-4dcf-9c3b-554d13c63e39 | salpad62@gmail.com | 0 | 3062892 | 01000178e5f15c70-d9d6b576-75eb-40dc-86c9-1f74b7d1a3d5-000000 | ecabbd92ab9d47a0b7cc1332c3a463ce | 2021-04-18 17:05:03 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802368 | | 000100000114222fa222838-e897-4b1e-8400-3f42d780c143 | michosarkisian@icloud.com | 0 | 3062892 | 01000178e5f15be6-0de57e97-d232-4804-9f11-23debed3f03e-000000 | 7a57dfe8888844dca6eef5d4f47c3534 | 2021-04-18 17:05:03 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802369 | | 0001000001142221a7d4682-5c36-4fe2-adf2-373828916aee | markcassidy528@gmail.com | 0 | 3062892 | 01000178e5f1541a-cc877c4b-814d-4fc8-8df6-28c2282a236d-000000 | c170d90ad26749c8801a95665dbb1a00 | 2021-04-18 17:05:01 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802370 | | 0001000001142284df769a-1c87-46dc-8af6-3c79b2d7af91 | camcast51@yahoo.com | 0 | 3062892 | 01000178e5f15b6b-afb60c53-9529-4678-b5f8-808955ec7f86-000000 | 933f41969ffd4601bd5ac2d5d7faa8ab | 2021-04-18 17:05:03 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802371 | | 00010000011422201 2b6fb1-fa9f-49d7-852c-9a567dcf95bc | slawrence434@gmail.com | 0 | 3062892 | 01000178e5f15808-e3b4a872-95ba-4d74-8c39-a47ef677d9a9-000000 | 4a330045082645399a3c73a6bde61662 | 2021-04-18 17:05:02 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802372 | | 000100000114222e3143941-602e-43db-a107-3cf825d97fea | sparkie909shiloh3@gmail.com | 0 | 3062892 | 01000178e5f15bed-efe8c377-fa5d-4ba3-bac1-2a7dbb6756fd-000000 | 814a7dba67294bd592548a8005c57f74 | 2021-04-18 17:05:03 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802373 | | 000100000114222d042e3f4-621a-4c81-a7b7-58b1dfb28a43 | christam_office@yahoo.com | 0 | 3062892 | 01000178e5f1614e-911fc1f3-5515-40c4-961d-3fac1aebde55-000000 | 684d3908a04d45088ec4e061f92adfd7 | 2021-04-18 17:05:05 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802374 | | 0001000001142226a6c60c7-b3ac-4c82-8f47-4738d812621a | jliketheltr@gmail.com | 0 | 3062892 | 01000178e5f15eff-d5f389c3-bd9a-4647-8904-782c340ca822-000000 | 3b0f702e5d5d4d568f14894cba2107a3 | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802375 | | 000100000114222772ff65a-d77a-4a5e-b556-ba4a47eb6f96 | jaimeahluwalia@gmail.com | 0 | 3062892 | 01000178e5f15ed1-c4c2eec8-f5ae-4f86-87b6-836b50a101d3-000000 | 3a7c282740394822b9011d0ed6830fff | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802376 | | 000100000114222b51bf810-26c7-4fc2-902f-28cd15384f97 | garrettauby@gmail.com | 0 | 3062892 | 01000178e5f15f70-deb09ece-3bb6-4390-ad29-e87bb0c60635-000000 | 1d9dc88ea5f34d038224fadb1cee233f | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802377 | | 000100000114222a428bdda-e203-424d-8378-2c8ac00d1330 | briana.lark@comcast.net | 0 | 3062892 | 01000178e5f15f28-d1aae84b-2b0c-42d5-ae33-0f3c38e62aed-000000 | 3187e93dd68b49fba83e45d8180550b1 | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802378 | | 0001000001142223f871483-4348-4c8b-b93d-8341e80289ff | nsdoc78@gmail.com | 0 | 3062892 | 01000178e5f15e1d-1e37b7cf-bb20-4389-9af8-e65ab7813c0e-000000 | 23cfef83fcf245cc89bc67198edc8ea5 | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802379 | | 000100000114222eb1f213d-39cc-4381-bd17-e9a6e2ba3479 | guidoterry@gmail.com | 0 | 3062892 | 01000178e5f160a7-63af07e7-9d42-4d77-b9af-ce89e9d9064a-000000 | 1d99e50e6c2b453aa5d4a714542e871c | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802380 | | 0001000001142223e3316e8-a6cc-479c-b33d-1aa80000b244 | jgrado@okstate.edu | 0 | 3062892 | 01000178e5f15f4c-8d99ffa0-4c09-4da9-9f0d-6341e04a3f5f-000000 | 7838924a5a394ae6a370b8b135a5cc6e | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802381 | | 000100000114222478c5615-c7f1-4153-904b-344338eca32e | guillermo.llamas@ymail.com | 0 | 3062892 | 01000178e5f16103-251645a9-d5bd-49ae-ac0e-b1dfaf0dc199-000000 | fb028f4f3d164489bb1aa41b8b8d2cdd | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802382 | | 000100000114222d878d0e5-fcfc-44d5-a777-c81775333f7b | tom.catalanotto@gmail.com | 0 | 3062892 | 01000178e5f15f2e-abbdf9a7-c43e-470b-91ef-83a5b464bacf-000000 | 739c067d4c394e37aa8555df7af865f2 | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802383 | | 0001000001142233a60102-c099-4217-b208-dd7fe596d5fe | raycooljay12@gmail.com | 0 | 3062892 | 01000178e5f15e81-92ec8640-160c-469a-ad96-ccf2cc088494-000000 | 7ed34480c4ea458ba5015eaa9cabdb2c | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802384 | | 000100000114222db8c7581-1ac2-4ec0-9c05-2ae1ac4abff2 | hushmypretty@gmail.com | 0 | 3062892 | 01000178e5f15e4b-2b76cac2-36d8-4de7-8106-f5966e511bd6-000000 | 78ad762a427d412081fe04b0b2311068 | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802385 | | 000100000114222f1659fed-0b36-4b6d-b6fb-2ded44b1c4b2 | dlogsdon3@gmail.com | 0 | 3062892 | 01000178e5f160ba-f4915e4d-be90-4fd1-a3b9-00943bf10b89-000000 | 4311d8aa0ec54159922cf83e15c06cf6 | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802386 | | 0001000001142228792d411-a41d-4613-b3d1-606b215097a3 | john.j.farrell611@gmail.com | 0 | 3062892 | 01000178e5f161b3-1fc4fac7-d8cd-422f-becb-0eb8d1acc734-000000 | a7bb330a151c40f6813f38a496ff8e59 | 2021-04-18 17:05:05 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802387 | | 0001000001142241400566-502e-4b09-93bd-12e1029567a5 | derrick.fuqua@gmail.com | 0 | 3062892 | 01000178e5f16228-2687b0dd-f8b0-40a1-bb05-4cd5a0e22113-000000 | 51b24148f9b84a7088bca880a9c1aea8 | 2021-04-18 17:05:05 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802388 | | 000100000114222525ea59a-7368-4da2-b376-6af43fac976a | clightford1@gmail.com | 0 | 3062892 | 01000178e5f1623e-9d37f52c-a507-4080-ab85-f2fad8979d62-000000 | c5505369c7b5464cb97a9e16232b05da | 2021-04-18 17:05:05 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802389 | | 0001000001142261172f67-3c50-40fd-8078-1f6fb64ad789 | artwhkg@knology.net | 0 | 3062892 | 01000178e5f15f34-8ddcc783-94b7-4cc4-aae1-7fd4045e937a-000000 | b42dbe9ab631482eba2171306874f0fc | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802390 | | 0001000001142219cfce64-0347-4aba-a077-b0c0872433c7 | david.zhu5@gmail.com | 0 | 3062892 | 01000178e5f16178-bf912343-f58e-4104-aa28-2a42a5741de5-000000 | 511ad4227efb41109a2f25f53c9a2dba | 2021-04-18 17:05:04 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |
| 802391 | | 0001000001142224025d55a-fad2-4703-b77c-1f2d39a2cc64 | robinballengee1965@gmail.com | 0 | 3062892 | 01000178e5f161c4-dd404630-6dd8-4bcf-bfaa-6ca4f0918713-000000 | 892808ce184f4931a9cd76e7106dcb6f | 2021-04-18 17:05:05 +00:00 | 0 | 2234649 | 15590 | 17024 | | 0 | 12108973 |

# Exhibit 7



AMERICAN
ARBITRATION
ASSOCIATION®

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION™

1101 Laurel Oak Road
Voorhees, NJ 08043

July 26, 2021

Voyager Digital LLC
185 Hudson Street, Suite 2500
Jersey City, NJ 07311
Via Mail

**Case Number: 01-21-0003-9886**

Daniel Schaefer
-vs-
Voyager Digital LLC

Dear Parties:

The claimant has filed with us a demand for arbitration. The American Arbitration Association ("AAA") has determined that this arbitration arises out of a consumer agreement and, as such, the Consumer Arbitration Rules ("Consumer Rules") apply to this dispute. The Consumer Rules may be found on our website at www.adr.org.

Under R-12 of the Consumer Rules, businesses that provide for AAA arbitration in a consumer contract are obligated to submit their current or proposed consumer agreements to the AAA for review and inclusion on the Consumer Clause Registry ("Registry"). The AAA reviews the agreement for material compliance with the due process standards of the Consumer Due Process Protocol ("Protocol") and the Consumer Rules. The AAA's review is administrative; it is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable, nor is it a determination regarding the arbitrability of the dispute.

This business has not previously submitted its consumer arbitration clause for review. As such, the AAA will review the clause for this matter on an expedited basis. The additional fee for this expedited review is $250, payable by the business.

**The business is also directed to submit its current consumer arbitration clause for inclusion on the Registry at** https://www.adr.org/Consumer **at which time the business will also incur a $500 Registry fee.** Once the business' clause is registered, it will no longer be assessed the $250 additional expedited review fee on each consumer case filed.

For cases proceeding under the Consumer Rules, the AAA reviews the relevant arbitration agreement for material compliance with the due process standards of the Consumer Due Process Protocol ("Protocol") and the Consumer Rules. The AAA's review is administrative; it is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable, nor is it a determination regarding the arbitrability of the dispute. **We note that the arbitration provision has a material or substantial deviation from the Consumer Rules and/or Protocol. Specifically, the provision states:**

> *THE ARBITRATION WILL OCCUR IN NEW JERSEY AND WILL BE CONDUCTED*
> *CONFIDENTIALLY BY A SINGLE, NEUTRAL ARBITRATOR*

**The above provision violates Principle 7: Reasonably Convenient Location.** If a party believes that there are additional conflicts with the Protocol and/or Consumer Rules, those issues may be brought before the arbitrator once one has been appointed.

VOYAGER_001951

However, so that we may commence administration of this matter, **we are requesting that the business waive the above provision(s) and agree to have this matter and any future consumer arbitrations filed under this agreement administered under the Consumer Rules and in compliance with the Protocol**. Please confirm your agreement to waive the above-quoted provision by signing and dating below and returning a copy of this letter. Absent receipt of the requested waiver, the AAA will decline to administer this dispute and possibly any future consumer arbitrations involving this business. Please note that pursuant to the R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution. In addition, Rule R-9 states either party may choose to take the claim to small claims court if the claim is within the jurisdiction of that court.

_____          _____
Business (authorized representative)                              Date

Pursuant to New Jersey Statutes § 2A:23B-1 et seq, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the New Jersey Arbitration Act, and to all consumer arbitrations conducted in New Jersey. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

Under the Consumer Rules, the consumer pays a filing fee of $200 and the business pays a filing fee of $300. We have received the consumer's $200 portion of the filing fee. So that the filing requirements are complete, **the business is requested to submit filing fees of $300, the expedited consumer clause review fee of $250 and its arbitrator's compensation deposit of $2,500, totaling $3,050**.

**Please note payment should be submitted by credit card or electronic check. Please confirm the email address AAA may send a secured paylink with instructions to submit payment via either method**. In the event that payment is being made by a third party, such as an insurance company, please request that payment be sent directly to the business' representative. The business' representative should then forward payment to the AAA in accordance with the foregoing instructions.

**The requested payment and waiver should be received no later than August 9, 2021** and the AAA may decline to administer this dispute if the business does not timely respond. It should be noted that the consumer's satisfaction of the filing requirements triggers the business' obligation to promptly pay its share of the filing fees under the rules and the business may owe all or a portion of the filing fees even if the matter is settled or withdrawn. The AAA will refund any overpayments received from the consumer with the filing.

No answering statement or counterclaim is due at this time and the parties will be notified of the applicable deadlines upon satisfaction of all the filing requirements.

Please note all communication for this matter will be in writing, if you have any questions please feel free to send us an e-mail.

Sincerely,
Consumer Filing
Email: ConsumerFiling@adr.org
Fax: (877)304-8457

cc:     Daniel Schaefer
        3578 232nd Court NW
        Saint Francis, MN 55070
        Via Email to: d11schae@gmail.com

CONFIDENTIAL                                                                                       VOYAGER_001952

# Exhibit 8

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 21-24441-CIV-ALTONAGA/Torres

MARK CASSIDY, on behalf of himself
and others similarly situated,

      Plaintiff,

v.

VOYAGER DIGITAL LTD, and
VOYAGER DIGITAL LLC

      Defendants.

_____/

### DECLARATION OF MARK CASSIDY IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' EXPEDITED MOTION TO STAY

      I, Mark Cassidy, hereby declare as follows:

      1.      I have personal knowledge of the facts stated herein, and if called upon as a witness, I would and could testify competently to the matters set forth herein.

      2.      I am a citizen and resident of the State of Florida and am 30 years old.

      3.      I created my Voyager account on March 17, 2021.

      4.      I placed the trade orders identified in the complaint, *see* Compl. ¶ 58, and an additional purchase of bitcoin (BTC) on July 31, 2021.

      5.      On August 17, 2021, I sold all of my holdings in my Voyager account and transferred the funds out.

      6.      Since then, I have not conducted trades on the Voyager platform, but did not cancel my Voyager account.

      7.      I only have one email account associated with my Voyager account. Since opening my Voyager account through February 15, 2022, I have received the following emails from no-reply@investvoyager.com to that email account:

1

CASE NO.: 21-24441-CIV-ALTONAGA/Torres



CASE NO.: 21-24441-CIV-ALTONAGA/Torres





8.       I reviewed the Declaration of Shannon Casey in support of Defendants' Motion to Compel Arbitration. I did not receive the April 18, 2021, email notifying of the April 16, 2021 update to the Customer Agreement. It was not marked as SPAM or delivered to a SPAM folder, nor was it in the trash folder.

9.       I did not receive any email, notification, or any other form of actual notice of any of the other versions of the Customer Agreement referenced in Shannon Casey's declaration. Further, I have never received any form of explanation regarding what revisions were made to the Customer Agreement at any time.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate to the best of my knowledge and belief.

Executed February 23, 2022.

By: _Mark Cassidy_____

Mark Cassidy
*Plaintiff*

# Exhibit 9

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.: 21-24441-CIV-ALTONAGA/Torres

MARK CASSIDY, on behalf of himself
and others similarly situated,

   Plaintiff,

v.

VOYAGER DIGITAL LTD, and
VOYAGER DIGITAL LLC

   Defendants.

_____/

## DECLARATION OF MARK CASSIDY IN SUPPORT OF
## PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE

   I, Mark Cassidy, hereby declare as follows:

  1. I have personal knowledge of the facts stated herein, and if called upon as a witness, I would and could testify competently to the matters set forth herein.

  2. I am a citizen and resident of the State of Florida and am 30 years old.

  3. I created my Voyager account on March 17, 2021.

  4. I placed the trade orders identified in the complaint, *see* Compl. ¶ 58, and an additional purchase of bitcoin (BTC) on July 31, 2021.

  5. On August 17, 2021, I sold all of my holdings in my Voyager account and transferred the funds out.

  6. Since then, I have not conducted trades on the Voyager platform, but did not cancel my Voyager account.

*CASE NO.: 21-24441-CIV-ALTONAGA/Torres*

7.      On January 31, 2022, I attempted to log in to the Voyager account to obtain information regarding my account activity for this lawsuit, but my account was inaccessible.

8.      I submitted a "forgot my password" request, received a link, and reset my password. Upon attempting to log in to my account with the new password, I received a notification that now my email was invalid and/or not associated with a Voyager account.

9.      I repeated the process a second time with a new password, and I received the same notification.

10.     Users apparently cannot contact Defendants by phone with questions about their account—the only available number I found is for "Investor Relations." I placed several calls and left at least one voicemail to the Investor Relations number to get an answer regarding the apparent deactivation of my account, but to date have received no response.

11.     My only other avenue to contact Voyager was through a written request submitted on a fillable form on Voyager's website provided by Zendesk. So, unable to reach anyone on the phone and unable to access my account through the App, at 10:29pm on January 31st, I submitted a request in writing through the investvoyager.com website and requested "Details of account including transactions and date of opening/closing."

12.     On February 1st at 8:04 AM, I received an email response from Zendesk giving me a link to a "tax/transaction report request form," but was given no explanation about the status of my account.

13.     As of the time of this declaration, I still have not accessed my account through the Voyager App, and I am waiting for a response to my phone calls and voicemail left on Defendants' Investor Relations line.

*CASE NO.: 21-24441-CIV-ALTONAGA/Torres*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate to the best of my knowledge and belief.

Executed February 9, 2022.

By: _*Mark Cassidy*_____

Mark Cassidy
*Plaintiff*

# Exhibit 10

# VOYAGER

## CRYPTO FOR ALL™

**APRIL 2022**

© 2022 Voyager Digital Ltd. All rights reserved.

## LEGAL DISCLAIMERS

The information contained in this presentation ("Presentation") is being offered by Voyager Digital (Canada) Ltd. (the "Company") for information purposes only. This Presentation is not for release, distribution or publication into or in any jurisdiction where applicable laws prohibit its release, distribution or publication. This Presentation is not a prospectus, offering memorandum, advertisement, or solicitation and does not constitute or form part of, and should not be construed as, an offer or invitation to sell or any solicitation of any offer to purchase or subscribe for any securities of the Company in Canada, the United States or any other jurisdiction. Neither this Presentation, nor any part of it nor anything contained or referred to in it, nor the fact of its distribution, should form the basis of or be relied on in connection with or act as an inducement in relation to a decision to purchase or subscribe for or enter into any contract or make any other commitment whatsoever in relation to any securities of the Company. No representation or warranty, expressed or implied, is given by or on behalf of the Company, its directors and affiliates or any other person as to the accuracy or completeness of the information or opinions contained in this Presentation; and no liability whatsoever is accepted by the Company, its directors and affiliates or any other person for any loss howsoever arising, directly or indirectly, from any use of such information or opinions or otherwise arising in connection therewith. No representation or warranty is given as to the achievement or reasonableness of, and no reliance should be placed on, any projections, targets, estimates or forecasts contained in this presentation. Estimates, projections, targets, statistics, opinions and forecasts contained in this document are based on information available to the Company and its advisors. All estimates, statistics, opinions and forecasts by their nature are based on a number of assumptions which may not prove to be correct, and are inherently subjective. In addition, past performance may not be repeated or indicative of future performance. No investment advice is offered or deemed to be offered under the Presentation, and any prospective investor should consult with his own legal, investment, accounting and tax advisors for determination of, among other things, suitability of investing in securities of the Company.

Purchasing securities of the Company should be considered a risky investment as the securities are speculative in nature and are appropriate only for investors who are prepared to have their money invested for a long period of time and have the capacity to absorb a loss of some or all of their investment. No reliance may be placed for any purpose whatsoever on the information or opinions contained in this Presentation or on its completeness, accuracy or fairness. The business of the Company is subject to a number of risks and readers are encouraged to read the Risk Factors contained in the Company's public filings, including its Management Discussion & Analysis and its Annual Information Form filed and available on SEDAR at www.sedar.com. Readers should not treat the contents of this Presentation as advice relating to legal, taxation or investment matters, and must make their own assessments concerning these and other consequences of the various investments, including the merits of investing and the risks. Readers are advised to consult their own personal legal, tax and accounting advisors and to conduct their own due diligence and agree to be bound by the limitations of this disclaimer. This corporate presentation includes market and industry data and forecasts that were obtained from third-party sources, industry publications and publicly available information. Third-party sources generally state that the information contained therein has been obtained from sources believed to be reliable, but there can be no assurance as to the accuracy or completeness of included information. Although management believes it to be reliable, management has not independently verified any of the data from third-party sources referred to in this presentation or analyzed or verified the underlying studies or surveys relied upon or referred to by such sources, or ascertained the underlying economic assumptions relied upon by such sources. Except where otherwise indicated, the information contained in this presentation speaks as of the date hereof or as of the date at which such information is expressed to be stated, as applicable. In giving this presentation, the Company does not undertake and disavows any obligation to provide any additional information or to update this presentation or any additional information or to correct any inaccuracies which may become apparent.

## FORWARD-LOOKING STATEMENTS

Certain statements contained in this presentation constitute "forward-looking information" or "forward-looking statements" (collectively, "forward-looking statements") within the meaning of applicable securities laws relating to, without limitation, expectations, intentions, plans and beliefs, including information as to the future events, results of operations and the Company's future performance (both operational and financial) and business prospects. In certain cases, forward-looking statements can be identified by the use of words such as "expects", "estimates", "forecasts", "intends", "anticipates", "believes", "plans", "seeks", "projects" or variations of such words and phrases, or state that certain actions, events or results "may" or "will" be taken, occur or be achieved. Such forward-looking statements reflect the Company's beliefs, estimates and opinions regarding its future growth, results of operations, future performance (both operational and financial), and business prospects and opportunities at the time such statements are made, and the Company undertakes no obligation to update forward-looking statements if these beliefs, estimates and opinions or circumstances should change. Forward-looking statements are necessarily based upon a number of estimates and assumptions made by the Company that are inherently subject to significant business, economic, competitive, political and social risks, uncertainties and contingencies. Readers are encouraged to read the Risk Factors contained in the Company's public filings, including its Management Discussion & Analysis and its Annual Information Form filed and available on SEDAR at www.sedar.com. Forward-looking statements are not guarantees of future performance. By their nature, forward-looking statements involve numerous current assumptions, known and unknown risks uncertainties and other factors which may cause the actual results, performance or achievements of the Company to differ materially from those anticipated by the Company and described in the forward-looking statements.

With respect to the forward-looking statements contained in this presentation, assumptions have been made regarding, among other things: current and future prices of cryptocurrencies; future global economic and financial conditions; trading volumes; the accuracy and veracity of information and projections sourced from third parties respecting, among other things, future industry conditions and demand for cryptocurrencies; and, where applicable, each of those assumptions set forth in the footnotes provided herein in respect of particular forward-looking statements. Although the Company has attempted to identify important factors that could cause actual actions, events or results to differ materially from those described in its forward-looking statements, there may be other factors that cause actions, events or results not to be as anticipated, estimated or intended. There can be no assurance that forward-looking statements will materialize or prove to be accurate, as actual results and future events could differ materially from those anticipated in such statements. The forward-looking statements contained in this presentation are expressly qualified by this cautionary statement. Readers should not place undue reliance on forward-looking statements. These statements speak only as of the date of this presentation. Except as may be required by law, the Company expressly disclaims any intention or obligation to revise or update any forward-looking statements or information whether as a result of new information, future events or otherwise.



Voyager's mission is to replace traditional banking and financial services with digital assets and make crypto for all a reality.

Company Highlights

# The Voyager Difference

**Bringing Crypto to All**

## The first consumer-focused, crypto native platform designed to help individuals create wealth and to empower them to become financially self sufficient.

▶ Consumer Brand         ▶ Seamless Payments

▶ Broad Choice of Assets   ▶ Industry-Leading Loyalty

▶ Annualized Rewards       ▶ Engaged Community

© 2022 Voyager Digital Ltd. All rights reserved.



6

# Our customers represent the future of finance

**And they are here for the long haul**



## 63%
are Millennials and Gen Z.

## 87%
of Voyagers say they plan to hold their crypto for the medium or long term.

## ~90
Average number of days for a new Voyager customer account to become profitable

*\* Percentage stats from Voyager's first annual 2022 Crypto Confidence Survey dated January 20, 2022, that included over 4,000 responses from customers and the general population and is publicly available at www.investvoyager.com/blog/crypto-confidence-survey-2022/. Profitability is defined as transactional revenue exceeding the marketing costs to acquire such new customers and is based on our public financial statements*

© 2022 Voyager Digital Ltd. All rights reserved.



Now over 3.2 million unique users

# Unprecedented growth and engagement of users, deposits & transactions

3.2 Million

**Quarter ending December 31, 2021**

Unique, verified user growth by quarter

**9**
Million Crypto Transactions

**3.2**
Million Unique Users

**2.2**
Million ACH Deposit Transactions

120k

Q3 20    Q4 20    Q1 21    Q2 21    Q3 21    Q4 21

© 2022 Voyager Digital Ltd. All rights reserved.
* Quarters presented above are on a calendar year basis. Transactions represent transactional volume, not dollars.

Breakout momentum across users, assets, transactions and revenue growth

## Company Highlights
## Business Snapshot

### Outstanding User Growth

+2 million new verified users, +1 million new funded accounts for calendar 2021

### Continuously Growing AUM to December 21, 2021

Current run-rate +$1 billion net new deposits for quarter ended December 31, 2021

### Breakout Revenue Growth Calendar 2021 vs 2020

$415 million in calendar 2021 up from $6.6 million in calendar 2020

© 2022 Voyager Digital Ltd. All rights reserved.

9

**Successful
entrepreneurs
with significant finance
and tech expertise.**

# Proven Leadership in Finance & Technology



**Steve Ehrlich**
Co-Founder & CEO

*ETRADE*



**Gerard Hanshe**
COO

*ETRADE*



**Rakesh Gidwani**
CTO

*Two Sigma*



**Evan Psaropoulos**
CFO

*PwC, Credit Suisse*





**Marshal Jensen**
Head of Corporate
Development

*Digital Asset
Custody Company*



**Lewis Bateman**
Chief International
Officer

*CoinSquare*



**Pam Kramer**
CMO

*ETRADE*



**Dan Constantino**
Chief Administration
Officer

*Penn Medicine, US Marines*



**David Brosgol**
General Counsel

*Digital Asset
Custody Company,
Maverick Capital*

© 2022 Voyager Digital Ltd. All rights reserved.

**VOYAGER**   10

**Company formed in 2018**

# Experienced, Engaged Board of Directors and Advisor



**Steve Ehrlich**
Co-Founder & CEO

*ETRADE*



**Philip Eytan**
Co-founder & Chairman

*Morgan Stanley, Cerberus Capital*



**Brian Brooks**
Board Member

*Bitfury, Former Commissioner of OCC*



**Glenn Stevens**
Board Member

*Former CEO, Gain Capital*



**Jennifer Ackart**
Board Member

*Former CFO, Raymond James*



**Krisztian Toth**
Board Member

*Partner, Fasken*



**Oscar Salazar**
Co-founder & Advisor

*Uber*

© 2022 Voyager Digital Ltd. All rights reserved.



# Investment Highlights

### Significant Potential Market Opportunity

Opportunities across crypto, blockchain, banking, brokerage and payments

### Differentiated Growth Engine

Leader in ease of use, access, choice, trust and transparency for crypto consumers

### Scalable Multi-Product Platform

Proprietary and scalable global technology platform with integrated operations infrastructure

### Powerful Business Model

Diversified revenue streams, powerful unit economics



**Significant potential market opportunity**

**Significant Potential Market Opportunity: Still Early Days**

# Crypto market share growth outpaces all other asset classes and is disrupting the financial markets.

The global crypto market cap, now worth approximately $2 trillion, has grown fourfold since November 2020, when it stood at $578 billion.

Growth in crypto adoption is expected to reach 1 billion users by 2024, almost 2x faster than the internet did.



The internet reached 1 billion users in **7 years**

Crypto is projected to reach a billion users in **4.5 years**

Crypto

200 Million Users

2021

Internet

1997

© 2022 Voyager Digital Ltd. All rights reserved.

*Source: https://cryptoslate.com/internet-vs-crypto-adoption-chart-predicts-1-billion-users-by-2027/

**VOYAGER** 14

**Significant Potential
Market Opportunity**

# Opportunity & growth created by powerful shifts in the financial markets and in consumers

**Most Americans (55%) want to learn more about crypto today, including two-thirds (67%) of millennials***

*\* Crypto Confidence Survey, December 2021 available at
www.investvoyager.com/blog/crypto-confidence-survey-2022/*



**Expensive and Slow Traditional Systems**

Legacy financial systems no longer meet the needs of digital, mobile consumers who want real-time, direct access



**Changing Needs & Attitudes, Loss of Trust**

Financial crisis of 2008 triggered an increased loss of trust in the financial markets that persists today



**Wealth Inequality, Barriers to Entry**

Average college graduate in US has $30,000 in debt. Home ownership and wealth creation seem out of reach through traditional markets for many.*

© 2022 Voyager Digital Ltd. All rights reserved.

*\* Source: https://educationdata.org/average-student-loan-debt-by-year*

**VOYAGER** 15



# Differentiated growth engine



**Focus on Ease, Accessibility**

Making the crypto market easier to navigate and more accessible to the average consumer

**Data-driven Go to Market**

Building marketing channels and brand partnerships through data and metrics to reach our ideal consumer base

**Crypto-Led, Proprietary Technology**

Scalable system built to support many types of cryptocurrencies. Scaled to support $6 billion in crypto assets on the Voyager Platform in 2021

**Loyalty, Network Effects**

A growing and engaged community of consumers act as strong advocates for the platform and the brand

**Differentiated Growth Engine**

Increasingly diversified, multiple revenue streams. Investing aggressively for growth, global expansion.

# Meeting the Needs of the Crypto Consumer
## with Technology, Innovation & Scale

© 2022 Voyager Digital Ltd. All rights reserved.

**Sept 1, 2021 – March 1, 2022**

# Competitive Apple App Store Rankings: Finance

**Voyager consistently ranked third among crypto-first apps**, after Coinbase and Crypto.com



* Source: App Annie

© 2022 Voyager Digital Ltd. All rights reserved.

**VOYAGER** 18

# What sets Voyager apart:
## Outstanding funded-account economics

**Adding products will increase the ARPU of our customers**

**Profitability on new customer acquisitions: Within 30 days to 180 days**



**Example: July 2021 Cohort Economics**
Cost, Transaction Revenue $ in Millions

CUMULATIVE TRANSACTIONAL REVENUE

ACQUISITION COSTS
To acquire new customers that add to Voyager Revenue

$0.4 — MONTH 1
$1.3 — MONTH 2
$2.0 — MONTH 3
$3.4 — MONTH 4
$4.7 — MONTH 5
$4.5

*ARPU means average revenue per user.*

*Profitability is defined as transactional revenue exceeding the marketing costs to acquire such new customers.*

© 2022 Voyager Digital Ltd. All rights reserved.

**VOYAGER**  19

**What sets Voyager apart: The Voyager experience**



**Simplicity**   **Speed**   **Rewards**   **Loyalty**

© 2022 Voyager Digital Ltd. All rights reserved.

**VOYAGER**  20



# Catalysts for growth

Product Expansion, Global Scale, Consumer Brand

**Coming Soon:** Growing with the emerging, global crypto consumer

# Crypto Payments Ecosystem



**For Voyager Account Holders**

▶ Instantly spend crypto (USDC) on everyday purchases

▶ Full transactional capabilities, including personal routing and account numbers for direct deposit, bill pay

**For Businesses & Consumers**

▶ Global payment processing via Coinify acquisition

▶ Wallet-free system supports 25+ coins, pays in fiat of choice

▶ Focus on PSPs and direct to merchants

Allowing consumers to hold and earn rewards on their crypto until the swipe

© 2022 Voyager Digital Ltd. All rights reserved.

22

**Coming Soon:** Growing with the emerging, global crypto consumer

# Product Expansion: More Coins, NFTs, Equity Trading

### Bringing the Voyager experience to NFTs

- ▶ Transcend marketplace silos and give customers choice and control over their NFTs

- ▶ Reduce complexity

- ▶ Allow customers to interact with, organize, and extract value from NFTs

### Fully-Integrated, Crypto-Based Equity Trading

- ▶ Joint-venture with Market Rebellion

- ▶ Based on the digital dollar (USDC)

- ▶ Proprietary, market-leading, funding and settlement



© 2022 Voyager Digital Ltd. All rights reserved.

23

**Coming Soon:** Growing with the
emerging, global crypto consumer

# International Expansion

### Canada

Working with the Ontario Securities Commission to
bring the Voyager app to Canada in 2022

### France, European Union

Received a Digital Asset Service Provider license from
the AMF (Authority of Financial Markets) in France which
required AMF to verify our senior management as "fit and
proper" for such license We are already building a waiting
list for a 2022 rollout in France.

### Global Payments

Leveraging the Coinify acquisition to expand crypto payment
solutions globally

© 2022 Voyager Digital Ltd. All rights reserved.



**VOYAGER**  24



# Powerful business model

# 8 Quarters of Strong Metrics & Outstanding Growth

\* Quarters presented based on Company's fiscal calendar ending June 30. Verified Users refers to customers that have downloaded the Voyager app and verified their email. Funded Accounts refers to customer accounts that have completed the KYC process and have been funded with an initial deposit or money transfer of any amount during the relevant period.



**Verified Users**
Numbers in Millions

544% CAGR



**Funded Accounts**
Numbers in Millions

877% CAGR

© 2022 Voyager Digital Ltd. All rights reserved.

# 8 Quarters of Strong Metrics & Outstanding Growth

*Quarters presented based on Company's fiscal calendar ending June 30. Assets on Platform include crypto assets held, crypto assets loaned and crypto assets collateral received.*



**$ Value in Assets on Platform**
Dollars in Millions at End of Quarter



**Net $ Value in Quarterly Crypto and Cash Deposits**
Total Net Deposits in Quarter, Dollars in Millions

© 2022 Voyager Digital Ltd. All rights reserved.

VOYAGER   27

# 8 Quarters of Strong Metrics & Outstanding Growth

*\* Quarters presented based on Company's fiscal calendar ending June 30*



**$ Volume Traded**
Dollars in Millions, in Quarter



**Revenue Growth**
Dollars in Millions, in Quarter

© 2022 Voyager Digital Ltd. All rights reserved.

**VOYAGER** 28

# VOYAGER

Voyager Digital Ltd.
33 Irving Place, 3rd Floor
New York, NY 10003 USA

+1 212.547.8807
investor.relations@investvoyager.com

VOYG

TORONTO STOCK EXCHANGE

© 2022 Voyager Digital Ltd. All rights reserved. Privileged and confidential.

# Exhibit 11

| | A | B | C |
|---|---|---|---|
| 1 | State | Month | Revenue |
| 2 | FL | 1/1/2021 | $ 701,401.53 |
| 3 | FL | 2/1/2021 | $ 1,796,226.95 |
| 4 | FL | 3/1/2021 | $ 2,359,232.44 |
| 5 | FL | 4/1/2021 | $ 3,873,860.41 |
| 6 | FL | 5/1/2021 | $ 4,371,145.88 |
| 7 | FL | 6/1/2021 | $ 1,368,414.67 |
| 8 | FL | 7/1/2021 | $ 699,620.81 |
| 9 | FL | 8/1/2021 | $ 1,647,511.83 |
| 10 | FL | 9/1/2021 | $ 1,960,430.87 |
| 11 | FL | 10/1/2021 | $ 4,012,972.77 |
| 12 | FL | 11/1/2021 | $ 3,906,962.62 |
| 13 | FL | 12/1/2021 | $ 2,050,824.97 |
| 14 | FL | 2021 Total | $ 28,748,605.75 |

CONFIDENTIAL

VOYAGER_001885

# Exhibit 13

# New Jersey Bureau of Securities Orders Cryptocurrency Company 'Voyager Digital' to Stop Offering and Selling Interest-Bearing Accounts - New Jersey Office of Attorney General

*NJOAG Communications*

[View Summary Cease and Desist Order](#)

**NEWARK —** Acting Attorney General Matthew J. Platkin today announced that the New Jersey Bureau of Securities has issued a Summary Cease and Desist Order to stop a Jersey City-based financial services company from selling unregistered securities in the form of interest-earning cryptocurrency accounts that have raised at least $5 billion nationwide.

Voyager Digital Ltd., Voyager Digital, LLC, and Voyager Digital Holdings, Inc. (Voyager) have allegedly been funding Voyager's income generating activities —including lending operations, digital asset staking, and proprietary trading—at least in part through the sale of unregistered securities in the form of cryptocurrency interest-earning accounts in violation of the Securities Law, according to the Order the Bureau issued today.

"Today's action says loud and clear that the cryptocurrency securities market is not the Wild West, and investor-protection laws absolutely apply," said Acting Attorney General Platkin. "Through efforts like this one, we continue to hold accountable all those who threaten the integrity of our financial industry and place investors at risk."

The Bureau's action against Voyager marks the third time it has acted to stop a New Jersey-based cryptocurrency firm from offering and selling unregistered securities in the form of interest-bearing accounts.

In July 2021, the Bureau [announced](#) a Summary Cease and Desist Order against BlockFi Lending, LLC (BlockFi), which raised at least $14.7 billion from the unlawful sale of unregistered securities worldwide. In February 2022, the Bureau entered a [settlement](#) with BlockFi that required the company to, among other things, stop the offer and sale of its interest-bearing cryptocurrency accounts until they were registered with state and federal securities regulators. The settlement also required BlockFi to pay regulators a total of $100 million, including $943,396.22 to New Jersey.

In September 2021, the Bureau [announced](#) a Summary Cease and Desist Order against Celsius Network LLC, whose unlawful sale of unregistered securities had raised at least $14 billion nationwide.

"The rules are clear: anyone selling securities in New Jersey must comply with the

State's securities laws," said Sean P. Neafsey, Acting Director of the Division of Consumer Affairs. "Our Bureau of Securities will continue to protect investors by monitoring the marketplace to ensure everyone is following the rules, especially when it comes to the ever-evolving cryptocurrency market."

Unregistered securities offerings pose significant risk to investors because the issuers do not make the same types of disclosures, including, for example, providing detailed financial statements that typically accompany registered offerings.

Investors in unregistered offerings, like the "Voyager Earn Program Accounts" addressed by the Bureau's Order today, may not receive any information about the specific investment strategies used by the issuer to generate investment returns, may not be advised about the creditworthiness of counterparties with whom the issuer does business, and may not be apprised of the use of leverage, or other risky investment strategies employed by the issuer to generate a return.  In contrast, registered offerings typically provide detailed information for investors to make reasonably informed decisions about the level of risk a particular investment entails.

According to the Bureau's findings, Voyager solicits investors to invest in the Voyager Earn Program Accounts by depositing certain eligible cryptocurrencies into the investors' Voyager account. Voyager then pools these cryptocurrencies together to fund its various income generating activities, including lending operations, digital asset staking, proprietary trading, and investments in other cryptocurrency trading platforms, such as Celsius Network. In exchange for investing in the Voyager Earn Program Accounts, investors are promised an attractive interest rate that is paid monthly in the same type of cryptocurrency as originally invested.

As of March 1, 2022, Voyager had approximately 1,530,000 Voyager Earn Program Accounts representing approximately $5 billion in assets, of which approximately 52,800 were New Jersey-based accounts representing approximately $197 million in assets.

The Voyager Earn Program Accounts are not registered with the Bureau or any other securities regulatory authority, nor are they otherwise exempt from registration. Digital assets contained in Voyager Earn Program Accounts are not protected by the Securities Investor Protection Corporation ("SIPC"), insured by the Federal Deposit Insurance Corporation ("FDIC"), or insured by the National Credit Union Administration ("NCUA").

"Platforms like Voyager that offer interest-bearing financial products may mirror the traditional financial structures we know and trust, but their lack of a protective scheme or regulatory oversight subjects investors to additional risks not borne by those who maintain assets with most SIPC member broker-dealers, or with banks, savings associations, or credit unions," said Acting Bureau Chief Amy G. Kopleton. "This adds a layer of risk to these cryptocurrency products and makes it all the more important for individuals to do their homework and fully understand the offerings before investing in them."

The Bureau's investigation was handled by Investigator Delfin Rodriguez of the Bureau of Securities, within the Division of Consumer Affairs. The Bureau is represented by Assistant Attorney General Brian F. McDonough and Deputy Attorneys General Victoria A. Manning and Evan A. Showell, Section Chief and

Assistant Section Chief, respectively, of the Securities Fraud Prosecution Section of the Division of Law within the Division of Law's Affirmative Civil Enforcement Practice Group.

The Bureau is charged with protecting investors from investment fraud and regulating the securities industry in New Jersey. It is critical that investors "Check Before You Invest." Investors can obtain information, including the registration status and disciplinary history, of any financial professional doing business to or from New Jersey, by contacting the Bureau toll-free within New Jersey at 1-866-I-Invest (1-866-446-8378) or from outside New Jersey at (973) 504-3600, or by visiting the Bureau's website at www.NJSecurities.gov. Investors can also contact the Bureau for assistance or to raise issues or complaints about New Jersey-based financial professionals or investments.

###

# Exhibit 14

| Date: | Monday, March 8 2021 02:04 PM |
|---|---|
| Subject: | FW: User Agreement Update |
| From: | <jbarrilleaux@investvoyager.com > |
| To: | <breynolds@investvoyager.com >; |
| Attachments: | Return Report Automation Logic as of Feb 2021.docx |

-----Original Message-----
From: jbarrilleaux@investvoyager.com  <jbarrilleaux@investvoyager.com >
Sent: Friday, March 5, 2021 2:24 PM
To: 'David Brosgol' <dbrosgol@investvoyager.com >
Cc: ghanshe@investvoyager.com;  jbarrilleaux@investvoyager.com
Subject: RE: User Agreement Update

Here are some things we need to address:

1 - Hypothetical training complaints during spikes or tech outages - we will not reimburse or entertain

2 - ACH Return Account Handling - we restrict accounts in many situations. - attached.

3 - Account Restrictions for the above mentioned ACH transactions or for Blockchain transaction investigations/issues

4 - PII mismatch on bank accounts vs account

5 - Additional verification requests may occur that might include bank statements, SSN validation, Videos, Liveness check or "other" for purpose of due diligence

6 - Firm standard of no longer going back and forth with individuals who threaten legal action

7 - Missing or delayed deposits for blockchain that require investigation

8 - Blockchain deposits and withdrawals where client sent to wrong address. Recovery request can be made but is rarely possible and even if possible, the investigation, timing and recovery are at the firm's discretion and are not guaranteed. We also charge a fee for the work and attempt

9 - client locks themselves out for 2FA (changed number, switched or lost device). We will work with the client to restore access but this will take some time as we go through a due diligence process and process of verification that is discretionary.

There is probably more but that's a good start.

-----Original Message-----
From: David Brosgol <dbrosgol@investvoyager.com >
Sent: Friday, March 5, 2021 8:15 AM
To: Janice Barrilleaux <jbarrilleaux@investvoyager.com >
Cc: ghanshe@investvoyager.com

Subject: Re: User Agreement Update

Got it. Yeah. would be great to get Gerard's input.

Idea: instead of filtering it all through me to Ethan, maybe it's most efficient to arrange a call with Ethan next week with the 3 of us to discuss it?

Which do you both prefer?

Dave


> On Mar 5, 2021, at 10:20 AM, <jbarrilleaux@investvoyager.com >
<jbarrilleaux@investvoyager.com > wrote:
>
> I am free at 4 pm your time today.
>
> I think Gerard would likely want to have some input as well.
>
> He doesn't read email, although I cc'd him here so maybe, but if you
slack him he will let you know.
>
> If today doesn't work, my calendar is up to date for next week!
>
> Look forward to it.
>
> -----Original Message-----
> From: David Brosgol <dbrosgol@investvoyager.com >
> Sent: Friday, March 5, 2021 6:03 AM
> To: Janice Barrilleaux <jbarrilleaux@investvoyager.com >
> Subject: User Agreement Update
>
> Hi Janice,
>
> Thanks for sending me the current User Agreement and the redline for the
January changes. I've reviewed and will be working with Lowenstein to
update it. Having discussed it with Ethan, it seems that it might be best
to do a significant overhaul. That said, I know you are the person with
most knowledge of the Voyager specific issues that need to be considered
and reflected so Ethan and I would love to get your input and help.
>
> I'd like to schedule some time to sync up and discuss issues/process.
Today or early next week would work if you are amenable.
>
> Best,
>
> Dave
>
>
>

VOYAGER_001894

| Date: | Monday, March 15 2021 06:55 PM |
|---|---|
| Subject: | Re: [EXT] OSC Comment Letter (Feb 2021) - Draft Response v.3.0 |
| From: | Evan Psaropoulos <epsaropoulos@investvoyager.com> |
| To: | Bechold, Edward <Edward.Bechold@marcumllp.com>; |
| CC: | Steve Ehrlich <sehrlich@investvoyager.com>; Peltzman, Zachary <Zachary.Peltzman@marcumllp.com>; |

In response to your question - the OSC asked to point specifically to the User agreement. The sentence you highlighted is paragraph 2 of the User agreement and needs to be read together with the next sentence that the client bears sole responsibility for transaction losses and the Company reserves the right to pass on any fees charged by exchanges, market-makers, liquidity providers, or other types of cryptocurrency counterparties.

Here is the language from the user agreement:

> Voyager is not a broker-dealer and is not a member of the Financial Industry Regulatory Authority ("**FINRA**") or the Securities Investor Protection Corporation ("**SIPC**"). I understand that my Cryptocurrency investments are not protected by either FDIC or SIPC insurance.

> I understand that Voyager reserves the right to pass on any fees charged by any Cryptocurrency exchanges, market-makers, liquidity providers, or other types of Cryptocurrency counterparties (each such counterparty, a "**Counterparty**"), including in connection with the withdrawal of Cryptocurrencies to an external wallet or any fees related to any enhanced due diligence related to my Voyager Account.

On Mon, Mar 15, 2021 at 6:44 PM Bechold, Edward <Edward.Bechold@marcumllp.com> wrote:

One question

**CONFIDENTIALITY NOTICE:**

The information transmitted, including this message and any attachments, is intended only for the individual or entity to which it is addressed and may contain information that is privileged, confidential or exempt from disclosure under applicable law. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by individuals or entities other than the intended recipient is strictly prohibited, and all liability arising therefrom is disclaimed. If you have received this in error, please notify Marcum immediately by telephone at (631) 414-4000 or (212) 485-5500 and delete the information. Marcum LLP is a New York limited liability partnership. This communication may come from Marcum LLP or any of its subsidiaries.

**DISCLAIMER:**

This communication has been prepared for informational purposes only and is not intended to constitute advertising or solicitation and should not be used or interpreted as tax or professional advice, unless otherwise stated. The content of this communication is limited to the matters specifically addressed herein and is not intended to address other potential tax consequences or the potential application of tax penalties to this or any other matter. Those seeking tax or professional advice should contact a member of our firm. Transmission of this information is not intended to create, and receipt does not constitute, any client-firm relationship. Personal or confidential information should not be sent to Marcum without first communicating directly with a member of our firm about establishing a client relationship.

--

VOYAGER_001903

Evan Psaropoulos
Chief Financial Officer
917.455.8927

CONFIDENTIAL