# Exhibit F

STATE OF NEW JERSEY
BUREAU OF SECURITIES
P.O. Box 47029
Newark, New Jersey 07101
(973) 504-3600

---

**IN THE MATTER OF:**

Voyager Digital Ltd., Voyager Digital
Holdings, Inc. and Voyager Digital, LLC,

Respondents.

**SUMMARY CEASE
AND DESIST ORDER**

---

Pursuant to the authority granted to Amy G. Kopleton, Acting Chief of the New Jersey

Bureau of Securities ("Bureau Chief"), under the Uniform Securities Law (1997), N.J.S.A. 49:3-

47 to -89 ("Securities Law") and certain regulations thereunder, and based upon documents and

information obtained during the investigation by the New Jersey Bureau of Securities ("Bureau"),

the Bureau Chief hereby finds that there is good cause and it is in the public interest to enter this

Summary Cease and Desist Order ("Order") against Voyager Digital Ltd., Voyager Holdings, Inc.

and Voyager Digital, LLC (collectively, "Voyager").

The Bureau Chief makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1.    Voyager Digital, LLC is a financial services company that generates revenue

through trading, borrowing, staking, and lending cryptocurrency.  Since November 1, 2019,

Voyager has been, at least in part, funding its income generating activities, including lending

operations, digital asset staking,  and proprietary trading, through the sale of unregistered securities

in the form of cryptocurrency interest-earning accounts.  Voyager refers to these unregistered

1

securities as its "Earn Program,"[1] which is a feature of all Voyager cryptocurrency trading accounts ("Voyager Earn Program Accounts,") unless the account holder opts out.

2.      Voyager solicits investors to invest in the Voyager Earn Program Accounts by depositing certain eligible cryptocurrencies into the investors' Voyager Earn Program Account. After obtaining transfers of cryptocurrencies from retail investors, Voyager then pools these cryptocurrencies together to fund its various income generating activities, including lending operations, proprietary trading, cryptocurrency staking, and investments in other cryptocurrency trading platforms, such as Celsius Network. In exchange for investing in the Voyager Earn Program Accounts, investors are promised an attractive interest rate that is paid monthly in the same type of cryptocurrency as originally invested.

3.      The Voyager Earn Program Accounts are not registered with the Bureau or any other securities regulatory authority; nor are they otherwise exempt from registration. Digital assets contained in Voyager Earn Program Accounts are not protected by the Securities Investor Protection Corporation ("SIPC"), insured by the Federal Deposit Insurance Corporation ("FDIC"), or insured by the National Credit Union Administration ("NCUA"). This lack of a protective scheme or regulatory oversight subjects Voyager Earn Program Account investors to additional risks not borne by investors who maintain assets with most SIPC member broker-dealers, or with banks, savings associations, or credit unions, although Voyager does disclose the lack of insurance of digital assets to Voyager Earn Program Account investors.

4.      As of March 1, 2022, Voyager had approximately 1,530,000 Voyager Earn Program Accounts representing approximately $5 billion in assets, of which approximately 52,800 were New Jersey-based accounts representing approximately $197 million in assets.

---

[1] At various times, Voyager has referred to its cryptocurrency interest account product as the Voyager Interest Program and Voyager Rewards.

5.     Despite the Voyager Earn Program Accounts lacking the safeguards that the SIPC, FDIC, and NCUA would offer, and lacking the regulatory oversight of securities registration, by March 1, 2022, Voyager's holdings had mushroomed to the equivalent of approximately $5 billion in cryptocurrency assets from the sale of these unregistered securities in violation of the Securities Law.

6.     The Bureau Chief enters this Order to protect the investing public by halting the offer and sale of these unregistered securities, and the contribution of additional assets to existing Voyager Earn Program Accounts. Nothing in this order shall preclude Voyager, or any of its affiliates, from paying interest, also known as "Rewards," on the existing Voyager Earn Program Accounts or refunding principal to the Voyager Earn Program Account investors consistent with Voyager's Customer Agreement.

**A.     The Respondents**

7.     Voyager Digital Ltd. is incorporated in British Columbia, Canada and is the parent company for Voyager's subsidiaries, including Voyager Digital Holdings, Inc.

8.     Voyager Digital Holdings, Inc. is incorporated in Delaware and is the holding company for Voyager Digital Ltd.'s subsidiaries in the United States, including Voyager Digital, LLC.

9.     Voyager Digital, LLC, is a Delaware limited liability company, that effected a foreign entity filing in New Jersey on March 2, 2018, with offices at 185 Hudson Street, Jersey City, New Jersey. Voyager conducts its business on the internet, through a website accessible to the general public at https://www.investvoyager.com/ (the "Voyager Website"), which is also accessible through Voyager's own proprietary app via smartphone.

10.     Voyager is not presently registered, and has never been registered, in any capacity with the Bureau; nor have the Voyager Earn Program Accounts ever been registered with the

Bureau.

**B.    The Voyager Earn Program Account Securities**

      **a.    Voyager Earn Program**

      11.    Voyager offers and sells its Voyager Earn Program Account unregistered securities in the form of individual and corporate accounts. Investors in these accounts ("Earn Program Investors") deposit certain popular cryptocurrencies with Voyager to earn "up to 12% Rewards." The Voyager Earn Program Account "Rewards" rates Voyager advertises are well in excess of the rates currently being offered on short-term investment grade fixed income securities, or on bank savings accounts.

      12.    Voyager offers its Voyager Earn Program Accounts to all U.S. residents over the age of eighteen, except residents of New York state.

      13.    When an investor signs up with Voyager, they complete a KYC (Know Your Customer) protocol in which they input certain identifying personal information, including name, age and address, and provide verification using an identification document such as a driver's license. To create an account, a user must check a box next to the statement, "By creating an account, you agree to our Terms," with the word "terms" hyperlinking to Voyager's Customer Agreement (the "Voyager Terms"). Links to the Voyager Terms also appear elsewhere on the Voyager Website.

      14.    The Voyager Website states that Voyager requires Earn Program Investors to maintain a specified minimum average monthly cryptocurrency balance for an Earn Program Investor to earn interest on Voyager Earn Program Account balances. Specific minimum balances for particular coins are listed on the Voyager app information page for that coin.

      15.    Voyager only accepts certain types of cryptocurrencies for deposit in the Voyager Earn Program Accounts. Although Voyager refers to its payments to Earn Program Investors as

4

"Rewards," the term "Rewards" is a substitute for interest.

16.     Voyager Earn Program Investors earn a variable interest rate on their investment and may withdraw their digital assets at any time, subject to certain restrictions, including discretionary decisions by Voyager to "delay, modify or prohibit, in whole or in part, any requested Withdrawal," and withdrawals within sixty days of a cryptocurrency or cash deposit.

17.     The currently monthly interest rates for Earn Program Investors are posted on the Voyager Website.  Voyager's interest rates for deposits of certain cryptocurrencies in its Earn Program Accounts may be "tiered" with specified rates in effect at any time only applied to specified portions of cryptocurrency held in the account, according to the Voyager Terms.  Annual interest rates on eligible cryptocurrencies posted on the Voyager Website for March 2022 ranged from 12% for Polkadot to 0.5% for OMG:

**THIS AREA INTENTIONALLY LEFT BLANK**

| | | | | | |
|---|---|---|---|---|---|
| DOT POLKADOT | 12% | | USDC USD COIN | 9% | |
| Min. monthly balance: 20 DOT | | | Min. monthly balance: 100 USDC | | |
| VGX VOYAGER TOKEN | 7% | | MATIC POLYGON | 5.25% | |
| Min. monthly balance: 100 VGX | | | Min. monthly balance: 100 MATIC | | |
| ETH ETHEREUM* | 4.25% | | BTC BITCOIN* | 4.05% | |
| Min. monthly balance: 0.5 ETH | | | Min. monthly balance: 0.01 BTC | | |
| ADA CARDANO | 4% | | LUNA TERRA LUNA | 4% | |
| Min. monthly balance: 100 ADA | | | Min. monthly balance: 10 LUNA | | |
| AAVE AAVE | 3% | | CELO CELO | 3% | |
| Min. monthly balance: 1 AAVE | | | Min. monthly balance: 50 CELO | | |
| COMP COMPOUND | 3% | | DASH DASH | 3% | |
| Min. monthly balance: 1 COMP | | | Min. monthly balance: 1.5 DASH | | |
| SOL SOLANA | 3% | | LINK CHAINLINK | 2.5% | |
| Min. monthly balance: 3 SOL | | | Min. monthly balance: 10 LINK | | |
| LTC LITECOIN | 2.5% | | BCH BITCOIN CASH | 2% | |
| Min. monthly balance: 2 LTC | | | Min. monthly balance: 0.5 BCH | | |
| ATOM COSMOS | 2% | | XTZ TEZOS | 2% | |
| Min. monthly balance: 20 ATOM | | | Min. monthly balance: 50 XTZ | | |
| UNI UNISWAP | 2% | | FIL FILECOIN | 2% | |
| Min. monthly balance: 10 UNI | | | Min. monthly balance: 3 FIL | | |
| STMX STORMX | 2% | | GRT THE GRAPH | 2% | |
| Min. monthly balance: 5000 STMX | | | Min. monthly balance: 200 GRT | | |
| ALGO ALGORAND | 2% | | ZRX 0X | 1.5% | |
| Min. monthly balance: 200 ALGO | | | Min. monthly balance: 200 ZRX | | |

Search coins                                                          Sort by:   Highest rates

| | | | | | |
|---|---|---|---|---|---|
| UMA UMA | 1% | | BAT BASIC ATTENTION TOKEN | 1% | |
| Min. monthly balance: 25 UMA | | | Min. monthly balance: 300 BAT | | |
| EOS EOS | 1% | | OXT ORCHID | 1% | |
| Min. monthly balance: 50 EOS | | | Min. monthly balance: 500 OXT | | |
| XLM STELLAR LUMENS | 1% | | ZEC ZCASH | 1% | |
| Min. monthly balance: 1000 XLM | | | Min. monthly balance: 2 ZEC | | |
| MANA DECENTRALAND | 0.5% | | DOGE DOGECOIN | 0.50% | |
| Min. monthly balance: 1000 MANA | | | Min. monthly balance: 1000 DOGE | | |
| KNC KYBER NETWORK | 0.5% | | OMG OMG NETWORK | 0.5% | |
| Min. monthly balance: 100 KNC | | | Min. monthly balance: 50 OMG | | |

*Rewards are paid up to 100 Bitcoin and 500 Ethereum

18.     Voyager also pays interest for deposits of certain stablecoins, which are cryptocurrencies pegged to an external measure of value such as the U.S. dollar, in its Voyager Earn Program Accounts, as explained on the Voyager Website. For example, Voyager currently pays 9% annual interest on deposits of USDC with a minimum balance of 100 USDC.

19.     Voyager's Customer Agreement describes the interest calculation and payment methodology:

> 10. Rewards Program. By entering into this Customer Agreement, and subject to clause (F) of this Section 10, Customer understands, acknowledges and agrees that Customer is opting into the Voyager Earn Program (the "Rewards Program").     The Rewards Program allows Customer to earn additional Cryptocurrency of the same kind of Cryptocurrency held in Customer's Account (the "Rewards"). The terms and conditions governing the Rewards Program are as follows:

> \*     \*     \*

> (B)  How Rewards Are Calculated. Rewards earned on Cryptocurrency are variable. Voyager will typically publish anticipated Rewards rates once per month on or before the first business day of each month. Reward rates may be tiered, with specified rates in effect at any time only applied to specified portions of amounts of Cryptocurrency held in the Account. Rewards will be payable in arrears and added to the Account on or before the fifth business day of each calendar month for the prior calendar month. Voyager uses the daily balance method to calculate the Rewards on the Account. This method applies a daily periodic rate to the specified principal in the Account each day. The daily periodic rate is calculated by dividing the applicable interest rate by three hundred sixty-five (365) days, even in leap years. Voyager will determine the Reward rates and tiers for each month in Voyager's sole discretion, and Customer acknowledges that such Rewards may not be equivalent to benchmark interest rates observed in the market for bank deposit accounts.

### b.     Voyager's Promotion of Earn Program Accounts as Investment Products

20.     Voyager encourages its Earn Program Investors to think of their Voyager Earn Program Accounts as investments as evidenced by Voyager's own homepage address: https://www.investvoyager.com/ and certain investment-related statements on Voyager's website,

such as "Grow your crypto portfolio" and "journey to the new frontier of investing," as illustrated

in the following:



and

and

# We believe that crypto assets are the future of finance and investing. Together, we are creating the broker that the crypto market deserves.

We are a team of finance and technology industry veterans dedicated to empowering and servicing investors in the most exciting asset class to date – crypto. Our founders have combined their decades worth of experience from leading organizations like E*TRADE, Uber, TradeIt, Lightspeed Financial and more, to bring you Voyager.

Our mission is to provide every investor with a trusted and secure access point to crypto asset trading. We offer best-in-class customer service, incomparable access to the most popular assets and commission-free trading.

Let us be your guide on this journey to the new frontier of investing. Please email contact@investvoyager.com with any inquiries.

### c.  Voyager's Use of the Earn Program Account Deposit Funds

21.  The Voyager Customer Agreement provides that an Earn Program Investor relinquishes control over the deposited cryptocurrency to Voyager and that Voyager is free to use those assets as it sees fit, including commingling the Earn Program Investor's cryptocurrency with those of other Earn Program Investors, investing those pooled assets, and staking them, or lending them to various third parties, including custodians and other financial institutions. Having relinquished control over the deposited cryptocurrency in their Voyager Earn Program Accounts, the Earn Program Investors are passive investors.

22.  Specifically, Paragraph 10. A. "Rewards Program - Overview" of the Voyager Customer Agreement provides:

> (A) Overview. Each Customer participating in the Rewards Program acknowledges and agrees that Voyager may rely on the consent to rehypothecate granted by each customer pursuant to **Section 5(D) – Consent to Rehypothecate** with respect to Cryptocurrency held in

9

such Customer Account. Such consent to rehypothecate expressly includes allowing Voyager to (1) stake Cryptocurrency held in an omnibus fashion through various blockchain protocols (either by delegating Cryptocurrencies to the financial institutions which, in return, stake such Cryptocurrencies or using staking service providers to stake Cryptocurrencies); and (2) lend such Cryptocurrency to various institutional third parties (each, a "Borrower") determined at Voyager's sole discretion (each, a "Loan"). Voyager enters into these Loans as principal and independently negotiates with each Borrower the terms of a Loan, but these Loans are generally unsecured, for a fixed term of less than one year or can be repaid on a demand basis, and provide a fee payable in Cryptocurrency based on the percentage and denominated in the Cryptocurrency lent. Voyager selects which and how much Cryptocurrencies are available for such staking and lending.

23.     In a response to an August 6, 2021 inquiry from the Bureau to Voyager, Voyager noted that "[a]s of the date of the request, all of the outstanding institutional lending activities represent uncollateralized loans."

24.     Paragraph 5.D. of Voyager's Customer Agreement, "Consent to Rehypothecate," further details the status of cryptocurrency deposited with Voyager by Earn Program Investors:

(D) Consent to Rehypothecate. Customer grants Voyager the right, subject to applicable law, without further notice to Customer, to hold Cryptocurrency held in Customer's Account in Voyager's name or in another name, and to pledge, repledge, hypothecate, rehypothecate, sell, lend, stake, arrange for staking, or otherwise transfer or use any amount of such Cryptocurrency, separately or together with other property, with all attendant rights of ownership, and for any period of time and without retaining a like amount of Cryptocurrency, and to use or invest such Cryptocurrency at Customer's sole risk.

25.     Voyager then pools the deposited cryptocurrencies together with Voyager's other assets in order to, among other income-generating activities, stake them or, invest those pooled assets by making loans to various third parties, including custodians and other financial institutions.

26.     Voyager does not disclose certain material information to Earn Program Investors that issuers of registered securities must include in a registration statement and provide to prospective investors in the form of a prospectus pursuant to section 52(d) of the Securities Law.

**d.      The Voyager Earn Program Accounts are Unregistered Securities**

27.     While certain of Voyager's loan products appear to be licensed under various state licensing requirements for money services businesses or money transmitters, and Voyager Digital Ltd. is a registered public company in Canada, the Voyager Earn Program Account is not currently registered with any federal or state securities regulator, nor is it exempt from registration as required by law, even though the Voyager Earn Program Account is a "security" and subject to such requirements.

28.     Voyager fails to disclose to Earn Program Investors that its Earn Program Account is not currently registered by federal or state securities regulatory authorities, even though the Voyager Earn Program Account is a "security" and required to be registered.

**e.      Misrepresentations and Omissions in the Marketing of the Voyager Earn Program Accounts**

29.     Voyager represents to the public on its website that it is "publicly traded, licensed, and regulated." What Voyager fails to disclose in proximity to its advertising claim that it is "publicly traded," however, is that Voyager Digital, LLC's parent company, Voyager Digital Ltd., is publicly traded *in Canada*, not the U.S., by virtue of its equity securities being listed on the Toronto Stock Exchange. Thus, Voyager's advertising claim that it is "publicly traded" is inaccurate with respect to Voyager Digital, LLC, which is not a publicly-traded entity, and creates a misleading impression with respect to Voyager Digital, LLC's regulatory status, particularly because Voyager's website notes that "[a]ll services [are] provided by Voyager Digital, LLC. . . ".

30. Voyager's claim to be "licensed" stems from state licensing in far fewer than all U.S. states as a money transmitter, or money services business, which is unrelated to Voyager's offering and selling of unregistered securities, and may convey the misleading impression to unsophisticated investors that Voyager is "licensed" to offer and sell such securities, when it is not.

31. Notwithstanding its claims to be licensed and regulated, Voyager's Earn Program Accounts are neither licensed nor regulated by the Bureau, and Voyager has not sought to register its Earn Program Account with the Bureau, notwithstanding that it is a security required to be registered with the Bureau.

## CONCLUSIONS OF LAW

## VOYAGER OFFERED AND SOLD UNREGISTERED SECURITIES
## N.J.S.A. 49:3-60

32. The preceding paragraphs are incorporated by reference as though set forth verbatim herein.

33. The Voyager Earn Program Account is a security as defined in N.J.S.A. 49:3-49(m).

34. The Voyager Earn Program Account was and is required to be registered with the Bureau pursuant to N.J.S.A. 49:3-60.

35. The Voyager Earn Program Account has not been registered with the Bureau, is not exempt from registration, and is not federally covered.

36. Voyager has offered and sold unregistered securities in violation of N.J.S.A. 49:3-60 and continues to do so.

37. Each violation of N.J.S.A. 49:3-60 is a separate violation of the Securities Law and is cause for the denial of certain exemptions.

12

38.     N.J.S.A. 49:3-69(a)(1) empowers the Bureau Chief to issue a cease and desist order against persons engaged in prohibited activities, directing them to cease and desist from further illegal activity or doing acts in furtherance thereof.

### CONCLUSION

**THEREFORE,** it is on this 29th day of March 2022, **ORDERED** that:

39.     Effective on April 29, 2022, Voyager and any person, agent, employee, broker, partner, officer, director, affiliate, successor, or stockholder thereof, under any of their direction or control shall CEASE AND DESIST from:

a.      offering for sale any security, including any Voyager Earn Program Account, to or from New Jersey unless the security is registered with the Bureau, is a covered security, or is exempt from registration under the Securities Law;

b.      accepting any additional assets into an existing Voyager Earn Program Account; and

c.      violating any other provisions of the Securities Law and any rules promulgated thereunder for the sale of any security in New Jersey.

40.     Nothing in this order shall preclude Voyager from paying interest, also known as "Rewards," on existing Voyager Earn Program Accounts or refunding principal to Earn Program Account Investors consistent with the Voyager Terms.

41.     All exemptions contained in N.J.S.A. 49:3-50 subsection (a) paragraph 9, 10, and 11 and subsection (b) are hereby DENIED as to Voyager.

42.     All exemptions to the registration requirements provided by N.J.S.A. 49:3-56(b),

N.J.S.A. 49:3-56(c), and N.J.S.A. 49:3-56(g) are hereby DENIED as to Voyager.

Amy G. Kopleton
Acting Chief, New Jersey Bureau of Securities

## NOTICE OF RIGHT TO HEARING

Pursuant to N.J.S.A. 49:3-69(a)(1)(i), the Bureau Chief shall entertain on no less than three days' notice a written application to lift the Order to Cease and Desist on written application of the person subject thereto and in connection therewith may, but need not, hold a hearing and hear testimony, but shall provide to the person subject thereto a written statement of the reasons for the Order to Cease and Desist.

Pursuant to N.J.S.A. 49:3-69(a)(l)(ii), upon service of notice of the Order to Cease and Desist issued by the Bureau Chief, the person subject thereto shall have up to 15 days to respond to the Bureau in the form of a written answer and written request for a hearing. The Bureau Chief shall, within five days of receiving the answer and request for a hearing, either transmit the matter to the Office of Administrative Law for a hearing or schedule a hearing at the Bureau of Securities. Orders issued pursuant to N.J.S.A. 49:3-69 shall be subject to an application to vacate upon 10 days' notice, and a preliminary hearing on the Order shall be held in any event within 20 days after it is requested, and the filing of a motion to vacate the Order shall toll the time for filing an answer and written request for a hearing.

Pursuant to N.J.S.A. 49:3-69(a)(l)(iii), if any person subject to the Order fails to respond by filing a written answer and written request for a hearing with the Bureau or moving to vacate the order within the 15-day prescribed period, that person shall have waived the opportunity to be heard. The Order will be a Final Order and shall remain in effect until modified or vacated.

## NOTICE OF OTHER ENFORCEMENT REMEDIES

You are advised that the Uniform Securities Law provides several enforcement remedies, which are available to be exercised by the Bureau Chief, either alone or in combination. These remedies include, in addition to this action, the right to seek and obtain injunctive and ancillary relief in a civil enforcement action, N.J.S.A. 49:3-69, and the right to seek and obtain civil penalties in an administrative or civil action, N.J.S.A. 49:3-70.1.

You are further advised that the entry of the relief requested does not preclude the Bureau Chief from seeking and obtaining other enforcement remedies against you in connection with the claims made against you in this action.