# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 21-24441-CIV-ALTONAGA/TORRES

MARK CASSIDY, on behalf of himself
and others similarly situated,

Plaintiff,

v.

VOYAGER DIGITAL LTD., and
VOYAGER DIGITAL LLC

Defendants.

_____/

### DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS THE AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................1

STATEMENT OF FACTS AND ALLEGATIONS.............................................................3

    A.    Plaintiff's Voyager Account and Use of the Voyager Platform ..............................3

    B.    The User Agreement and Its Mandatory Arbitration Agreement ...........................3

    C.    Procedural History and Jurisdictional Discovery ....................................................6

    D.    The Amended Complaint ..........................................................................................9

MEMORANDUM OF LAW ..............................................................................................10

I.    THE COURT MUST COMPEL ARBITRATION OF ALL CLAIMS AND
    DISMISS THE COMPLAINT......................................................................................11

    A.    The Mandatory Arbitration Clause of the Voyager User Agreement Is
        Valid and Binding on Plaintiff.................................................................................12

    B.    All Plaintiff's Claims Present Arbitrable Issues Under the User
        Agreement.................................................................................................................14

    C.    Plaintiff Cannot Evade Arbitration By Asserting Certain of His Claims
        Against Voyager Ltd.................................................................................................16

    D.    The Complaint Must Be Dismissed, Not Just Stayed, Pursuant to the User
        Agreement's Exclusive Jurisdiction Provision. ......................................................19

II.    THE SECURITIES CLAIMS AGAINST VOYAGER DIGITAL LTD. MUST BE
    DISMISSED FOR SEVERAL ADDITIONAL REASONS.............................................20

    A.    The Court Lacks Personal Jurisdiction Over Voyager Digital Ltd.......................21

    B.    Voyager Digital Ltd. Was Not a "Statutory Seller" to Plaintiff. ..........................25

    C.    The Federal Securities Claim (Count I) Is Time-Barred. .....................................26

    D.    Plaintiff Fails to Allege He Suffered Any Injury Arising From the
        Voyager Earn Program. ...........................................................................................27

        1.    Plaintiff Lacks Article III Standing..............................................................27

        2.    Plaintiff Fails to State a Redressable Claim.................................................29

CONCLUSION..................................................................................................................30

REQUEST FOR ORAL ARGUMENT ..............................................................................30

Defendants Voyager Digital, LLC ("Voyager LLC" or "VDL") and Voyager Digital Ltd. ("Voyager Ltd") respectfully move the Court for an order compelling Plaintiff to submit his claims to arbitration, and to dismiss this case in its entirety, pursuant to Sections 3 and 4 of the Federal Arbitration Act, and Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6).

## PRELIMINARY STATEMENT

The Amended Complaint is filled with inflammatory rhetoric but does nothing to change the result that Plaintiff agreed to arbitrate his claims and this case must be dismissed.

Plaintiff abandoned some claims, and asserts new ones, but the entire case still arises out of his Voyager Account and use of the Voyager Platform. That is dispositive because when Plaintiff opened his Voyager Account, he accepted the Voyager User Agreement and agreed to arbitrate "any Complaint arising in connection with this Agreement, the Account, the Platform, or the Services." Courts routinely enforce analogous arbitration agreements formed in precisely this manner. Nothing that arose in discovery provides a basis to deny enforcement here.

It is beyond dispute that all Plaintiff's claims arise out of his Voyager Account and his use of the Voyager Platform.  Counts III and IV are renewed from the prior complaint, and allege that Plaintiff was charged undisclosed "commissions" on trades he executed through the Voyager Platform. The Amended Complaint also adds two new claims (Counts I and II), alleging that the Voyager Earn Program should have been registered as a securities offering. The Earn Program is a feature of the Voyager Platform, which provides rewards for certain assets held on the Voyager Platform in users' Voyager Accounts. Plaintiff received rewards under that program as part of his Voyager Account, under the terms set forth in the Voyager User Agreement.

Congress and numerous appellate courts have made clear that courts must "rigorously enforce" arbitration agreements and *shall* direct the parties to proceed to arbitration when their contract so provides. That is what the law requires here.

The new claims concerning the Voyager Earn Program (Counts I and II) also suffer several additional flaws that require dismissal.

*First*, Plaintiff seeks to avoid arbitration by naming Voyager Ltd as the defendant on his new claims, but jurisdictional discovery confirmed that Voyager Ltd is a parent holding company and these claims relate to conduct by Voyager LLC, not Voyager Ltd. The new claims challenging the Earn Program—a different aspect of the same Voyager Platform—also relate to the conduct of Voyager LLC and provide no more basis for jurisdiction over Voyager Ltd. than the rightly abandoned claims.

*Second*, and for related reasons, the new claims fail because Voyager Ltd was not a "statutory seller" to Plaintiff.  The registration provisions of the securities laws under which Plaintiff brings suit provide a cause of action only against "statutory sellers" who sold to Plaintiff or solicited his purchase. Voyager Ltd did neither.

*Third*, Plaintiff's federal securities claim (Count I) is time-barred.  Federal claims for failure to register a security are subject to a one-year statute of limitation.  Plaintiff opened his account on March 17, 2021, yet he did not assert any claim for failure to register until April 28, 2022, more than one year later.  As a result, the claim is time-barred.

*Fourth*, and perhaps most fundamentally, Plaintiff lacks Article III standing, and fails to state a claim, because he has no alleged injury arising from the Earn Program.  He received rewards under the program.  He now alleges a violation of requirements to register the program as a security, but the law is clear that bare regulatory violations without injury do not confer standing and also do not support a right of action.

Plaintiff has failed to allege any claim properly before this Court and has been given every opportunity to do so. The Complaint should be dismissed.

## STATEMENT OF FACTS AND ALLEGATIONS[1]

### A.    Plaintiff's Voyager Account and Use of the Voyager Platform

On March 17, 2021, Plaintiff registered for an account on the Voyager Platform.  (AC ¶ 107.)  The Voyager Platform is a website and mobile application that provides users the ability "to trade, invest, earn and secure digital assets across multiple types of digital assets." (AC ¶ 69.)

From the time he signed up until August 17, 2021, Plaintiff engaged in trades of Bitcoin and other cryptocurrencies on the Voyager Platform, held those assets on the Voyager Platform, and received in-kind rewards of Bitcoin and one other cryptocurrency into his Voyager Account. On August 17, 2021, Plaintiff sold his holdings and transferred the funds out.  (AC ¶¶ 106-07.)

The Voyager Platform is operated by Voyager LLC.  (*See* AC ¶ 3 (referring to "Voyager's Platform, which is operated by VDL"); *see also* AC ¶¶ 34; 70.) Defendant Voyager Ltd is a foreign holding company parent of Voyager LLC with no operations or employees.  (Casey Decl. (attached as Sadeghi Decl. Ex. 1) ¶ 5.)  Voyager Ltd does not operate the Voyager Platform.  (*Id*.)

### B.    The User Agreement and Its Mandatory Arbitration Agreement

To register for a Voyager Account, a user must check a box confirming that they have read and understood the terms of Voyager LLC's User Agreement. (Casey Decl. ¶ 8.) The check-box appears next to the sentence "By creating an account, you agree to our **Terms**." (*Id.* ¶¶ 7-8.)  The word "**Terms**" in bold and purple text is a hyperlink.  Clicking on the word "Terms" on the account opening screen takes the user to Voyager's User Agreement. (*Id.* ¶ 9.)

---

[1] The facts are taken from the Amended Class Action Complaint (cited as "AC ¶ _"), documents referenced therein, and testimony and documents produced by Defendants through jurisdictional and arbitration-related discovery, copies of which are attached to the accompanying Declaration of Kayvan B. Sadeghi, filed contemporaneously herewith, including the Declaration of Shannon Casey, dated February 17, 2022 ("Casey Decl.") first submitted with Defendants' initial Motion to Compel Arbitration and Dismiss the Complaint [ECF No. 28-1], excerpts of the deposition testimony of Voyager Ltd's corporate representative (cited as "Ltd Tr.") and of Michael Legg ("Legg Tr."), and Voyager Ltd's and Voyager LLC's respective Responses to Interrogatories.

Voyager LLC also maintains records in the ordinary course of business recording whether and when users agree to the User Agreement.  (Casey Decl. ¶¶ 10-11.)  Those records establish that Plaintiff Mark Cassidy checked the box manifesting his agreement to the User Agreement at 4:28pm U.T.C. on March 17, 2021 (*Id.* ¶¶ 11-12.)

When Plaintiff signed up for a Voyager account on March 17, 2021, the "Terms" link directed the user to the User Agreement last revised January 2021, a copy of which is attached to the Casey Declaration as Exhibit A.

The first paragraph of the January 2021 User Agreement makes clear that the Voyager account and related Platform are provided by Voyager LLC, and the second paragraph makes clear that the User Agreement contains a binding arbitration agreement, and that if the user does not agree to those terms the user "shall not access or use the Voyager Services":

USER AGREEMENT

In consideration of Voyager Digital, LLC, a member of Voyager Digital Group, and its agents and assigns (collectively, "***Voyager***") opening an account ("***Voyager Account***") on my behalf, or my access or use of the Voyager Platform, I represent and agree to the terms set forth below (the "***Agreement***"). When used in this Agreement, the words "***I***", "***me***", or "***my***" mean the owner of the Voyager Account.

By accessing or using the Voyager Platform (as further described below), I understand that I am agreeing to be bound by the terms of this Agreement. Including but not limited to the binding arbitration provisions contained in Section 20 below that may significantly affect my legal rights, including my right to file a lawsuit in court and to have a jury hear my claims. I fully understand that if I do not agree to be bound by this Agreement, I shall not access or use the Voyager Services (as further defined below).

The arbitration clause mandates arbitration of "any Complaint arising in connection with this Agreement, the Account, the Platform, or the Services" in accordance with the American Arbitration Association's ("AAA's") rules for arbitration of consumer disputes, and expressly waives the right to participate in a class-action lawsuit.  (January 2021 User Agreement § 22 ("Arbitration Clause").)  In full, the Arbitration Clause states:

Voyager and I agree to attempt informal resolution of any Complaint arising in connection with this Agreement, my Voyager Account, the Voyager Platform, or the Voyager Services consistent with the procedures outlined in Section 20 prior to any demand for adjudication. Voyager and I further agree that if we cannot solve such Complaint informally and consistent with the procedures outlined in Section 20, any such dispute shall be finally settled in binding arbitration, on an individual basis, in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes, and Voyager and I hereby expressly waive trial by jury and right to participate in a class-action lawsuit or class-wide arbitration. The arbitration will occur in New Jersey and will be conducted confidentially by a single, neutral arbitrator. I agree to bear my own attorney's fees, costs, and expenses. The arbitrator may award any relief that a court of competent jurisdiction could award, including attorneys' fees when authorized by law, and the arbitral decision may be enforced in any court. Any dispute between the parties will be governed by this Agreement and the laws of the State of New Jersey and applicable United States law, without giving effect to any conflict of laws principles that may provide for the application of the law of another jurisdiction. Voyager and I further agree that the state or federal courts in New Jersey have exclusive jurisdiction over any appeals of an arbitration award and over any suit between the parties not subject to arbitration. In the event the prohibition on class arbitration or any other provision of this Section is deemed invalid or unenforceable, then I agree and understand that the remaining portions of the arbitration provisions in this Section will remain in full force and effect.

The third paragraph of the User Agreement makes clear that Voyager may amend the User Agreement, which will be effective upon posting on the website, and that the user has the option not to agree to such revisions but "[i]f I do not agree to the terms in effect when I am accessing my Voyager Account, I must stop using the Voyager Platform." (*Id.* at 2.)

The User Agreement was revised once during the time of Plaintiff's alleged trading on the Voyager Platform, on April 16, 2021 (Casey Decl. ¶¶ 16, 20 & Ex. B), and notice was emailed to customers on April 18, 2021. (*Id.* ¶ 21 & Ex. F.) In that revision, there was no change to the substance of the Arbitration Clause, which remained essentially verbatim other than updating the section references, changing the pronoun from "I" to "Customer", and placing the provision in all caps. (*See id.*)

The User Agreement has also been amended three times since Plaintiff's last trade, but the terms of the arbitration agreement have remained materially the same throughout: each version

mandates arbitration under the AAA's rules for arbitration of consumer disputes, expressly waives the right to participate in a class-action lawsuit, and provides for exclusive jurisdiction in New Jersey state and federal courts.  (*See id.* ¶¶ 17-19 & Exs. C-E.)

The Earn Program is also governed by the User Agreement, which makes clear that the Earn Program is part of the Voyager Platform operated by Voyager Digital LLC.[2] The current version of the User Agreement explains that "By entering into this Customer Agreement . . . Customer understands, acknowledges and agrees that Customer is opting into the Voyager Earn Program." (Casey Decl. Exhibit E § 10.)

### C.   Procedural History and Jurisdictional Discovery

Plaintiff filed his first complaint in this Court on December 24, 2021, nine months after having agreed to arbitrate "any Complaint arising in connection with [the User] Agreement, [his] Voyager Account, the Voyager Platform, or the Voyager Services."

The first complaint alleged that Plaintiff was charged undisclosed commissions on his cryptocurrency trades using the Voyager Platform, and on that basis asserted three causes of action against both Voyager LLC (which operates the Platform), and its parent company, Voyager Ltd. (*See* Complaint, ECF No. 1; Motion to Compel Arbitration, ECF No. 28, at 5-6.)

The first complaint attributed substantially all allegations to both Voyager LLC and Voyager Ltd without distinction.  To do so it relied on discussion in Voyager Ltd's consolidated financial statements and in earnings calls, which refer to "Voyager" or "we" when discussing

---

[2] As noted in the Amended Complaint, the terminology has changed over time.  (*See* AC ¶ 25.) The program was not called the "Earn Program" when Plaintiff signed up or received benefits, but the version of the User Agreement in force when Plaintiff signed up and when he received benefits similarly covered the same benefit program using the terminology in use at the time of each of those agreements. (*See* Casey Decl. Exhibit A (January 2021 User Agreement) § 19; Exhibit B (April 16, 2021 User Agreement) § 10.)

operations of Voyager Ltd. and its subsidiaries, including Voyager LLC, on a consolidated basis. (*See, e.g.,* First Complaint (ECF No. 1) ¶ 20 & Exs. A, G, H.)

Defendants moved to compel arbitration and to dismiss, including to dismiss Voyager Ltd for lack of personal jurisdiction because the operations related to the Voyager Platform and Plaintiff's Voyager Account were conducted by Voyager LLC, while Voyager Ltd is a holding company that lacks contacts with Florida sufficient to establish jurisdiction. (Motion to Compel Arbitration and to Dismiss, ECF No. 28.)

In response to Defendants' motion, the Court granted targeted discovery related to the motion to compel arbitration and to dismiss. The Court noted a statement in Voyager Ltd.'s March 2021 earnings call, where a representative stated: "We're at 49 states today. We offer our services in 49 states. It's only New York that we're not — we don't offer this service." (March 3 Order, ECF No. 36, at 3 (citing Compl., Ex. G).) The Court recognized that it was "possible that the representative meant to reference Voyager Digital, LLC, when he used 'we,'" and held that "this ambiguity only accentuates the need for jurisdictional discovery." (*Id.*)

Following the Court's March 3 Order, Defendants produced documents in response to dozens of requests, responded to interrogatories, and produced three witnesses for deposition.

Jurisdictional discovery confirmed that Voyager Ltd is a holding company and the relevant contacts with Plaintiff and with Florida relate to Voyager LLC and not Voyager Ltd. (*See, e.g.,* Ltd Tr. (Sadeghi Decl. Ex. 2) at 12:24-13:3 ("Voyager Digital LLC owns the platform through development of the software associated therewith and deploys that software into a user facing platform. That is all done through Voyager Digital LLC.").) Voyager Ltd neither operates the Voyager Platform nor does it have any policies or procedures from the Board that gave any authority or power over the day to day operations of Voyager Digital LLC or the platform. (*Id.* at 152:1-4.)

Discovery also confirmed that the Voyager Earn Program "is a functionality within the Voyager [P]latform, which is owned and operated by Voyager Digital LLC." (*Id.* at 54:7-9.)

When asked specifically about the description of company operations in connection with its consolidated financial statements, the Voyager Ltd corporate representative explained that: "transaction revenue and fees on crypto assets loaned occur at the Voyager Digital LLC level." (Ltd Tr. 182:2-5.) Voyager's former Chief Communications Officer likewise confirmed that he understood doing business in Florida to mean that the Voyager app was available in Florida. (*See* Legg Tr. (Sadeghi Decl. Ex. 3) at 30:10-18: (Q. "During the time that you were with Voyager, did you do business in the State of Florida?" . . . A. "The Voyager app was available in Florida for users to use.").)

With respect to marketing and promotional efforts, discovery similarly confirmed that Voyager LLC is the entity that "maintains the website" (Ltd Tr. 19:2), has hired a "marketing firm to handle marketing and advertising" (*id.* at 134:14-16) and "conducts marketing specific to the Voyager Platform." (*Id.* at 168:14-16.) And Voyager LLC identified agreements it had with "Victor Oladipo, Professional Basketball Player for the Miami Heat" and "Robert Gronkowski, Professional Football Player for the Tampa Bay Buccaneers." (Voyager Digital LLC's Responses to Plaintiff's Interrogatories (Sadeghi Decl. Ex. 4) at p. 9.) In contrast, Voyager Ltd had no similar agreements. (Voyager Digital LTD's Responses to Plaintiff's Interrogatories Regarding Personal Jurisdiction and Arbitration at p. 5.)

In short, discovery confirmed that the operation of the Voyager Platform and the marketing and promotional efforts related to it are undertaken by Voyager LLC—the same entity with which Plaintiff entered into a User Agreement mandating arbitration—and not its ultimate parent, Voyager Ltd.

### D.      The Amended Complaint

Following completion of jurisdictional and arbitration-related discovery, Plaintiff filed the Amended Complaint on April 28, 2022, asserting four causes of action. [ECF No. 46]

Counts III and IV reassert the previously alleged claims that trading revenue generated by the Voyager Platform—which is discussed at length in Voyager's public filings—purportedly constitutes an "undisclosed commission" causing statements that the trades are "commission-free" to be false or misleading.  (AC ¶ 146.)  On that basis, Plaintiff asserts claims under the New Jersey Consumer Fraud Act (*id*. ¶¶ 143-151 ("Count III")) and the Florida Deceptive and Unfair Trade Practices Act (*id*. ¶¶ 152-161 ("Count IV")).  Plaintiff asserts these claims only against Voyager LLC, abandoning those claims against Voyager Ltd.  (*See id*.)

Counts I and II are entirely new claims, alleging that the Earn Program constitutes a sale of unregistered securities. (AC ¶¶ 131-133.) While the Amended Complaint coins the term Earn Program Account or EPA, it also tacitly acknowledges that the Earn Program is part of the Voyager Platform. (*See* AC ¶ 134 (alleging that users "purchase" their earn program account "through Defendants' website and/or application."); *see also* AC Ex. E at 3 (asserting that "Voyager's Earn program is a means in which Voyager customers can make deposits of cryptocurrency to their Voyager accounts").)[3] On that basis, Plaintiff asserts claims under Section 5 of the Securities Act of 1933 (*id.* at ¶¶ 128-135 ("Count I")) and the Florida Securities and Investor Protection Act (*id.* at ¶¶ 136-142 ("Count II")).

To assert its new securities claims against Voyager Ltd instead of Voyager LLC, Plaintiff ignores substantially all of the jurisdictional discovery and the User Agreement itself, which make

---

[3] The supposed expert report attached to the Amended Complaint as Exhibit E is unfounded and inaccurate speculation as to what the author wrongly thinks Voyager is "likely" doing based on cursory analysis of other companies, and his lay opinion as a non-lawyer as to how he thinks one legal test for what constitutes a security should apply to the Voyager Earn Program.  Those inaccurate theories and lay opinions are not before the Court on this motion.

clear that the Earn Program is a feature of the Platform operated by Voyager LLC.  Instead, Plaintiff continues to rely on generalized statements discussing the consolidated financial results and operations oof Voyager Ltd and all of its subsidiaries. (*See*, e.g., AC ¶¶ 24, 31 (citing the Q2 2022 earnings call describing operations and using the term "we" or "Voyager"); ¶¶ 32-33 (citing press releases); ¶¶ 49-50 (citing press releases and Voyager's MD&A)).)

Plaintiff also relies on a number of innocuous allegations about the relationship of the Voyager entities that are neither controversial, nor unusual in a parent-subsidiary context, including that: (i) revenue from the Voyager Platform is reported on a consolidated basis as part of Voyager Ltd's financial statements; (ii) Voyager discusses its operations and financial results on a consolidated basis in certain public statements; (iii) funds raised by Voyager Ltd are used to fund operations by its subsidiary, Voyager LLC; and (iv) Voyager Ltd and Voyager LLC have overlapping officers. (*See id.* at ¶¶50-53.)  None of these facts, alone or in combination, is sufficient to ignore the distinct corporate entities or to support the exercise of jurisdiction over Voyager Ltd in Florida.

## MEMORANDUM OF LAW

All of the claims in this case are subject to a mandatory binding arbitration agreement in the Voyager User Agreement, so the Court must compel Plaintiff to submit all claims to arbitration and dismiss this case in its entirety.  (*See* Section I, *infra*.)  That arbitration agreement is valid and binding (*see* Section I.A), and it applies to all claims asserted in this action, all of which indisputably arise in connection with Plaintiff's Voyager Account and his use of the Voyager Platform.  (*See* Section I.B, *infra*.)  Plaintiff cannot evade the arbitration agreement by tactically pleading some of the claims against Voyager Ltd instead of Voyager LLC.  (*See* Section I.C, *infra*.) Dismissal is warranted, and not a stay, because all claims are subject to arbitration and because the

User Agreement provides for exclusive jurisdiction in New Jersey state and federal courts.  (*See* Section I.D.)  Discovery confirmed this analysis.

While the Court need not reach the issue, the new securities claims against Voyager Ltd (Counts I and II) should also be dismissed for several additional reasons.  (*See* Section II, *infra.*) These claims are based on the Earn Program, which is a feature of the Voyager Platform operated by Voyager LLC, and thus it provides no basis for personal jurisdiction over Voyager Ltd. (*See* Section II.A.) For similar reasons, because Voyager Ltd was not the relevant actor, it also was not a "statutory seller" to plaintiff as required to state a claim under the federal and state securities laws.  (*See* Section II.B.)  The federal securities claim (Count I) is also time-barred.  (Section II.C.) More fundamentally, Plaintiff lacks Article III standing and fails to state a claim because he fails to allege any injury from the rewards he received under the Earn Program.  (*See* Section II.D.)

## I.   THE COURT MUST COMPEL ARBITRATION OF ALL CLAIMS AND DISMISS THE COMPLAINT.

The Federal Arbitration Act, 9 U.S.C.§§ 1, et seq. ("FAA") reflects the "liberal federal policy favoring arbitration" and instructs that arbitration agreements "shall be valid, irrevocable, and enforceable."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

The Supreme Court has repeatedly made clear that "courts must 'rigorously enforce' arbitration agreements according to their terms."  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).  The FAA "leaves no place for the exercise of discretion…, but instead mandates that district courts *shall* direct the parties to proceed to arbitration" when their contract so provides.  *Dean Witter Reynolds*, 470 U.S. at 218 (emphasis in original).

The FAA requires a court to stay or dismiss a lawsuit and compel arbitration where (a) the parties have a valid arbitration agreement and (b) the claims asserted fall within the scope of the agreement.  *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).  In determining

whether a dispute is covered by an arbitration agreement, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983).[4] This strong Congressional policy in favor of arbitration requires enforcement of the arbitration agreement here.

> **A.   The Mandatory Arbitration Clause of the Voyager User Agreement Is Valid and Binding on Plaintiff.**

The "threshold question of whether an arbitration agreement exists at all" is a matter of contract to which state law applies. *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016); *Am. Exp. Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997). As this is a diversity action, the Court applies the choice-of-law principles of its forum state, Florida. *See Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Plaintiff alleges that he is a citizen and resident of Florida (AC ¶ 44), so it may be inferred that Florida law will govern his entry into the User Agreement. *Fioretti*, 53 F.3d at 1235 (*lex loci contractus* applies under Florida law).

Plaintiff entered into a binding agreement to arbitrate when he opened his account to use the Voyager Platform. Immediately above the "Continue" button to proceed with opening his Voyager account, Plaintiff was presented with a mandatory checkbox confirming that "By creating an account, you agree to our **Terms.**" (*See* Casey Decl. ¶ 7-8; *supra* at 3.) Voyager LLC's contemporaneous records demonstrate that Plaintiff did check the box confirming his acceptance of the User Agreement. (*See* Casey Decl. ¶¶ 10-12.)

---

[4] "Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) whether a written agreement exists between the parties containing an arbitration clause; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration has been waived." *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (Altonaga, J.). The Court previously recognized that Defendants were asserting and not waiving their right to arbitration. *See* March 3, 2022 Order [ECF No. 36] at 4.

It is well-established under both Florida and New Jersey law that agreements formed in precisely this manner, known as "click wrap" agreements—*i.e.,* "when a website directs a purchaser to the terms and conditions of the sale and requires a purchaser to click a box to acknowledge that they have read those terms and conditions"—are valid and binding. *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018) (reversing denial of motion to compel arbitration and holding that "click-wrap" agreement was enforceable regardless of whether plaintiff clicked on the hyperlink to view the agreement); *Beture v. Samsung Elecs. Am., Inc.*, No. CV 17-5757 (SRC), 2018 WL 4621586, at *5 (D.N.J. July 18, 2018) (granting motion to compel arbitration where users were required to check a box acknowledging terms of use prior to activation of phone).[5]

In its "preliminary peek" at the merits in the March 3 Order, the Court referenced two cases cited by Plaintiff to suggest that courts in Florida and New Jersey "have chosen not to immediately enforce arbitration agreements that bear at least some resemblance to the arbitration agreement at issue here." (ECF No. 36 at 5 (citing *Doe v. Natt*, 299 So. 3d 599, 600–02 (Fla. 2d DCA 2020);

---

[5] *See also Bell v. Royal Seas Cruises, Inc.*, No. 19-CIV-60752-RAR, 2020 WL 5639947, at *5 (S.D. Fla. Sept. 21, 2020) (finding that an arbitration agreement was enforceable where customers were required to "take the affirmative action of clicking the continue button directly below" a statement that "I understand and agree" to the Terms and Conditions); *Calderon v. Sixt Rent a Car, LLC*, No. 19-62408-CIV, 2021 WL 1325868 (S.D. Fla. Apr. 9, 2021) (granting a motion to compel arbitration based on a terms of use agreement where a customer was required to check box to confirm agreement); *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1302-03 (M.D. Fla. 2018) (granting motion to compel arbitration where user was informed that clicking the button would constitute acceptance of the terms available via a hyperlink); *Salco Distribs., LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22, 2006) (noting that in "Florida and the federal circuits . . . click-wrap agreements are valid and enforceable contracts."); *Davis v. Dell, Inc.*, No. CIV. 07-630RBKAMD, 2007 WL 4623030, at *4 (D.N.J. Dec. 28, 2007), *aff'd* 2008 WL 3843837 (D.N.J. Aug. 15, 2008) (granting motion to compel arbitration where buyer was required to affirmatively click a button indicating that he had agreed to the Terms and Conditions in connection with his purchase); *Scaba v. Jetsmarter, Inc.*, No. CV1817262MASDEA, 2019 WL 3947510, at *6 (D.N.J. Aug. 21, 2019) (granting motion to compel arbitration based on click-wrap agreement); *Davimos v. JetSmarter, Inc.*, No. CV1815144MASDEA, 2019 WL 3082643, at *4 (D.N.J. July 15, 2019) (same).

*Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1182 (N.J. 2016)).  Neither case provides any basis to deny enforcement of the arbitration agreement in this case.

Since the Court's March 3 Order, *Doe v. Natt* was quashed by the Supreme Court of Florida in *Airbnb, Inc. v. Doe*, --- So.3d ----, 2022 WL 969184 (March 31, 2022).  The court made clear that it was error to deny enforcement of Airbnb's Terms of Service, a click-wrap agreement that delegated the decision of arbitrability to the arbitrator by reference to the AAA rules. *See id.* at *4 (collecting cases and noting that "[a]ll of the federal circuit courts of appeal to consider the issue have consistently agreed that incorporation by reference of arbitral rules into an agreement that expressly empower an arbitrator to resolve questions of arbitrability clearly and unmistakably evidences the parties' intent to empower an arbitrator to resolve questions of arbitrability").

The other case referenced in the Order, *Morgan v. Sanford Brown Institute*, 225 N.J. 289 (2016), bears little resemblance to the arbitration agreement here and does not support a contrary result. *Morgan* did not involve a click-wrap agreement or a comparable arbitration provision. It addressed an enrollment agreement for an educational program signed by the plaintiffs.  The issue was whether the agreement sufficiently disclosed that arbitration waived the right to a jury trial, which New Jersey courts require to be explicit. *See id*. at 300-301. ("Plaintiffs contend that they did not know that the arbitration provision denied them their right of access to a judicial forum and to a jury trial.")  Here, by contrast, the arbitration agreement does expressly waive trial by jury.

### B.    All Plaintiff's Claims Present Arbitrable Issues Under the User Agreement.

Once the Court determines an arbitration agreement exists, it should compel Plaintiff to arbitrate because that arbitration agreement delegates arbitrability to the arbitrator.  *See Airbnb, Inc. v. Doe*, --- So.3d ----, 2022 WL 969184, at *4 (March 31, 2022) (collecting cases enforcing

delegation by reference to arbitral rules).[6] Moreover, the FAA's "presumption of arbitrability applies to all contracts that contain a broadly fashioned arbitration clause." *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986).

In any event, all claims here fit squarely within the terms of the Arbitration Clause, which broadly applies to "any Complaint arising in connection with this Agreement, [Plaintiff's] Voyager Account, the Voyager Platform, or the Voyager Services." (Casey Decl. Ex. A ¶ 22.)

**Counts I and II:** These claims assert that the Voyager Earn Program should have been registered as a securities offering. They arise in connection with the User Agreement, Plaintiff's Voyager Account, and the Voyager Platform because the program is a feature of the Voyager Platform, the terms of the program are set forth in the User Agreement, Plaintiff participated in this program through his Voyager Account, and he received rewards based on the assets he held in his Account on the Voyager Platform. (*See, e.g.,* AC ¶ 134 (alleging that users "purchase" the earn program "through Defendants' website and/or application") *and compare* Voyager User Agreement at 3 (defining the Voyager Platform to be "the 'App', and together with the Website, the 'Voyager Platform'"); *see also* AC Ex. E at 3 (asserting that "Voyager's Earn program is a means in which Voyager customers can make deposits of cryptocurrency to their Voyager accounts"); User Agreement § 19.)

---

[6] *See also* January 2021 User Agreement Arbitration Clause (incorporating AAA rules for consumer disputes); AAA Consumer Arbitration Rules R-14(a) (providing that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim") (*available at* https://adr.org/sites/default/files/Consumer%20Rules.pdf); *WasteCare Corp. v. Harmony Enterprises, Inc.*, 822 F. App'x 892, 895–96 (11th Cir. 2020) ("We have held that where the parties expressly incorporate the AAA rules into an arbitration provision, 'this alone serves as a clear and unmistakable delegation of questions of arbitrability to an arbitrator.'"), *cert. denied*, 141 S. Ct. 1383, 209 L. Ed. 2d 126 (2021) (quoting *JPay, Inc. v. Kobel*, 904 F.3d 923, 936 (11th Cir. 2018)).

**Counts III and IV:**   These claims assert that Voyager LLC charges undisclosed commissions for trades executed through the Voyager Platform.  The Amended Complaint appears to recognize that these claims arise in connection with the User Agreement, Plaintiff's Voyager Account, and the Voyager Platform, and does not allege otherwise. (*See, e.g.,* AC ¶¶ 69-70, 73; Count III ¶¶ 143-151 (same); Count IV ¶¶ 152-161 (same).)

C.     **Plaintiff Cannot Evade Arbitration By Asserting Certain of His Claims Against Voyager Ltd.**

The relevant Voyager entity for all Plaintiff's claims concerning his Voyager Account and the Voyager Platform is Voyager LLC, as discussed at length above and further below. Plaintiff cannot evade his agreement to arbitrate by strategically asserting some of those claims against a different Voyager entity.

Where the claims asserted fall squarely within an arbitration clause, that clause may be enforced even if the claims are asserted against a non-signatory to the agreement.  *See Cuningham Hamilton Quiter, P.A. v. B.L. of Miami, Inc.*, 776 So. 2d 940, 942 (Fla. 3d DCA 2000) ("It is well established that the courts broadly construe arbitration provisions containing the language, 'arising out of or relating to,' such that in certain instances the clause will include non-signatories"); *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210, 211 (Fla. 3d DCA 2003) ("arbitration provisions containing the language, 'arising out of or related to,' in certain instances can be construed to include non-signatories"); *see also Bruno v. Mark MaGrann Assocs., Inc*., 388 N.J. Super. 539, 546–47, 909 A.2d 768, 772–73 (App. Div. 2006) (broadly worded arbitration agreement covering "any and all controversies, disputes, or claims arising under, or related to" a contract or subject property encompassed claims against non-party subcontractors).

In addition, Voyager Ltd can directly enforce the arbitration clause as a third-party beneficiary of the contract and under principles of equitable estoppel and agency.  The question of whether a non-signatory can enforce an arbitration clause is governed by state law.  *See Lawson v.*

*Life of the S. Ins. Co.*, 648 F.3d 1166, 1170–71 (11th Cir. 2001) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)).  While the law is mixed on whether enforceability is governed by the law of the forum state or the contract's choice of law,[7] the Court need not reach the issue because under any applicable law Plaintiff cannot evade his agreement to arbitrate by deliberately naming the wrong party as a defendant.

Florida law provides Plaintiff is "equitably estopped from avoiding arbitration with" a non-signatory where the claims against that entity "stem from the same contractual obligation" on which claims against a second defendant are based. *Armas*, 842 So. 2d at 212.  As in Voyager LLC's User Agreement, the operative agreement in *Armas* stated that any claims "arising out of or related to" the agreement were subject to arbitration.  *Id*.  Based on this language, the court found that "the breadth and scope of the arbitration agreement is broad enough to include" a non-signatory defendant.  *Id*.

Principles of equitable estoppel allow a non-signatory to compel arbitration of claims in two circumstances: (i) "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory"; and (ii) "when the signatory to the contract containing the arbitration clause raises allegations of…substantially interdependent and concerted misconduct by both the nonsignatory and one or

---

[7] *See, e.g., Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1400 (S.D. Fla. 2014) (applying Florida law where there was no conflict with the contract's choice of law, and noting that, moreover, "the choice of law provisions are not necessarily applicable to the question of arbitrability" in addressing which state's law would govern non-signatory's ability to compel arbitration); *Orn v. Alltran Fin., L.P.*, 779 F. App'x 996, 998 (3d Cir. 2019) (noting that, while the parties did not argue it, state law of parties' location might have governed a non-signatory seeking to enforce an arbitration clause because only those with standing to enforce the agreement may invoke the choice of law clause).

more of the signatories to the contract." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (citing omitted).[8]  Both circumstances are present here.

The claims against Voyager Ltd rely on Plaintiff's User Agreement with Voyager LLC. Plaintiff's entry into the User Agreement was required to create his Voyager account and access the Voyager Platform (*see supra* at 3; Casey Decl. ¶ 8 & Ex. A at 1), it set forth the terms of the Earn Program and its predecessor programs, and it created his only relationship with the Voyager Defendants.  (*See supra* at 4-6.)  Similarly, in *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396 (S.D. Fla. 2014), the court compelled arbitration of purported class action claims against a non-signatory to loan agreements, because the agreements created the relationship between the plaintiff and the non-signatory defendants, noting that arbitration is required where an agreement including an arbitration clause "create[s] the relationship between the" plaintiff and the non-signatory and the claims against the non-signatory "presume[] the existence of" that agreement. *Id.* at 1401-02 (applying Florida law).

The claims against Voyager Ltd must also be compelled to arbitration because they are inextricably intertwined with the claims against Voyager LLC.  *Olsher Metals Corp. v. Olsher*, No. 03-12184, 2004 WL 5394012, at *1-3 (11th Cir. Jan. 26, 2004) (affirming order compelling arbitration of claims against non-signatory because of the non-signatory's "close relationship to the parties to the agreement" and the fact that all of the claims "factually relate to the interpretation and performance" of the agreement).

New Jersey law also allows a non-signatory parent company to compel claims to arbitration where those claims are based on the plaintiff's relationship with a subsidiary governed by an arbitration agreement.  *See, e.g., KPH Healthcare Servs., Inc. v. Janssen Biotech, Inc.*, No.

---

[8] *Abrogated on other grounds*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S. Ct. 1896, 1902, 173 L.Ed.2d 832 (2009).

20CV05901KMESK, 2021 WL 4739601, at *7 (D.N.J. Oct. 12, 2021). Under New Jersey law, courts reach this result under an agency theory rather than an equitable estoppel theory. *See id.* (noting that agency theory applies where, as here, "a non-signatory parent company seeks to compel arbitration based on an arbitration agreement made by its subsidiary").[9]

Under either state's approach, Plaintiff cannot evade his agreement to arbitrate by simply naming Voyager LLC's parent company as a defendant instead of Voyager LLC on a claim arising out of the Earn Program operated by Voyager LLC pursuant to his contract with Voyager LLC.

### D.    The Complaint Must Be Dismissed, Not Just Stayed, Pursuant to the User Agreement's Exclusive Jurisdiction Provision.

This case must be dismissed, not just stayed pending arbitration, because the User Agreement provides for exclusive jurisdiction and venue in New Jersey.  (*See* Arbitration Clause ("Voyager and I further agree that the state or federal courts in New Jersey have exclusive jurisdiction over any appeals of an arbitration award and over any suit between the parties not subject to arbitration.").)

Venue provisions in arbitration agreements are "presumptively enforceable" absent a "strong showing that enforcement would be unfair or unreasonable under the circumstances." *Green v. Masimo Corp.*, No. 09-CV-82355, 2010 WL 11601448, at *2 (S.D. Fla. Mar. 29, 2010) (granting motion to dismiss for lack of venue where valid arbitration agreement specified venue in California); *Rezny v. MoadBus, Inc.*, No. 610CV1067ORL18GJK, 2010 WL 11626828, at *3 (M.D. Fla. Nov. 22, 2010) ("Given the surfeit of caselaw stating that forum selection clauses are

---

[9] *See also Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174, 193, 71 A.3d 849, 860 (2013) (rejecting equitable estoppel in the context of a non-affiliate seeking to compel arbitration based on an arbitration clause expressly limited to disputes between the parties, but distinguishing cases in the parent-subsidiary context in which the non-signatory could compel arbitration as a result of the "agency relationship between the parent and subsidiary corporations in relation to their intertwinement with the plaintiff's claims and the relevant contractual language").

to be enforced absent a strong showing of unreasonableness, this Court will enforce the arbitration clause and dismiss the case for improper venue.")

Even putting aside the venue provision, the Complaint should be dismissed.  The Eleventh Circuit and courts in this District have repeatedly held that dismissal is appropriate where all claims are subject to arbitration.  *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1379 (11th Cir. 2005) (affirming dismissal where all claims were subject to arbitration); *Olsher Metals Corp.*, 2004 WL 5394012, at *3 (same).  *See also*, *Jacobs v. Bank of Am. Corp.*, No. 1:15-CV-24585-UU, 2019 WL 2268976, at *7 (S.D. Fla. Feb. 26, 2019) (collecting appellate authority explaining that dismissal was more appropriate than a stay); *Hodgson v. NCL (Bahamas), Ltd.*, 151 F. Supp. 3d 1315, 1317 (S.D. Fla. 2015) (compelling arbitration and dismissing the case, noting that "Plaintiff's counsel knew or should have been aware that this case would be subject to arbitration, and the filing of the Complaint notwithstanding this fact is borderline frivolous.").[10]

Plaintiff fails to state any individual claim properly before this Court, so he cannot represent a putative class and the Complaint should be dismissed in its entirety.  *See O'Shea v. Littleton,* 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes a requisite case or controversy with the defendant, none may seek relief on behalf of herself or himself or any other member of the class").

## II.    THE SECURITIES CLAIMS AGAINST VOYAGER DIGITAL LTD. MUST BE DISMISSED FOR SEVERAL ADDITIONAL REASONS.

Plaintiff's effort to avoid arbitration by pleading his securities claims against Voyager Ltd rather than Voyager LLC—a tactic that fails to avoid arbitration as set forth above—also gives rise

---

[10] U.S. Courts of Appeals in other federal circuits agree.  *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (collecting cases).  *See also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) (noting that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998) ("a court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable.")

to at least two additional grounds for dismissal of those claims.  First, Plaintiff cannot establish a basis for personal jurisdiction over Voyager Ltd because all the relevant contacts with Florida are by Voyager LLC.  (*See* Section II.A.)  Second, even if the securities laws did apply to the Earn Program, Plaintiff fails to plead facts to establish that Voyager Ltd was a statutory seller of that program as is required to state a claim. (*See* Section II.B.)  In addition, the federal securities claim (Count I) is barred by the one-year statute of limitations.  (Section II.C.)

More fundamentally, the federal and state securities claims fail no matter which entity Plaintiff names as a Defendant because he fails to allege any injury from the Earn Program. Plaintiff saw headlines about an alleged registration violation and sought to convert that into a claim, but the law is clear that bare legal violations do not confer standing on plaintiffs who have not suffered concrete injury from that violation, and Plaintiff alleges none.  (*See* Section II.D.)

### A.    The Court Lacks Personal Jurisdiction Over Voyager Digital Ltd.

Plaintiff brings his securities claims concerning the Earn Program (Counts III and IV) against Voyager Ltd, but the Court does not have general jurisdiction over Voyager Ltd—a foreign holding company—and Voyager Ltd does not operate, offer, or sell the Voyager Earn Program, so Plaintiff's claims concerning that program provide no basis for specific jurisdiction.

Specific personal jurisdiction requires that "a plaintiff's claim 'must arise out of or relate to at least one of the defendant's contacts with the forum.'"  *Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1372 (S.D. Fla. 2019) (Altonaga, J.).  To withstand a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), plaintiff bears the burden to "plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant."  *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) (citing *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 Fed. Appx. 623, 625 (11th Cir. 2010)).  Where "the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the

plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

There is no dispute that Voyager LLC was the entity in contractual privity with Plaintiff concerning his Voyager Account including the Earn Program (*see* User Agreement), and that Voyager LLC operated the Voyager Platform of which the Earn Program is part (AC ¶¶ 3, 34, 70). As a result, the program does not establish a basis for jurisdiction over Voyager Ltd. *See Atmos Nation LLC v. Alibaba Grp. Holding Ltd.*, No. 0:15-CV-62104-KMM, 2016 WL 1028332, at *4 (S.D. Fla. Mar. 15, 2016) (dismissing claims against Alibaba.com, Inc. because the complaint "identifie[d] the specific Alibaba entities it claims are responsible for operating the Alibaba Platforms"). Nevertheless, Plaintiff alleges several bases for personal jurisdiction over Voyager Ltd. Each of these should be rejected.

First, Plaintiff alleges that it was Voyager Ltd that was conducting the "promotion, marketing, and sale" of the Voyager Earn Program. (AC ¶¶ 48, 52.) The jurisdictional discovery refuted that allegation. As to promotion and marketing, discovery established that it is Voyager LLC, not Voyager Ltd, that has hired a "marketing firm to handle marketing and advertising" (Ltd Tr. at 134:14-16), "conducts marketing specific to the Voyager Platform." (*Id.* at 168:14-16) and has agreements with athletes. (Voyager Digital LLC's Responses to Plaintiff's Interrogatories Regarding Personal Jurisdiction and Arbitration at p. 9.)

As to the supposed "sale" of the "Earn Program Account," Plaintiff ignores that the Earn Program is part of the same account and governed by the same User Agreement entered into with Voyager LLC (*see supra* at 6), so to the extent opening an account could be construed as a purchase or sale at all, that too is conduct of Voyager LLC and not Voyager Ltd.

Ignoring the facts established in discovery, the Amended Complaint instead continues to rely on statements in the consolidated financials, and press releases to investors, to suggest that the marketing is conducted by Voyager Ltd.  (*See* AC ¶¶ 24, 31; ¶¶ 32-33 ¶¶ 49-50.) Those general statements may have been enough to warrant discovery into the underlying facts, but they cannot take the place of actual contacts with Plaintiff or with Florida necessary to establish jurisdiction.

Several courts in this Circuit have rejected efforts to establish jurisdiction over a parent company based on similar allegations, noting that public-facing statements about a company—such as those on company websites or public filings—are "not meant to state the legal relationship between the parties but to state in terms investors might understand" and that such statements do not provide a basis for jurisdiction. *Unitedhealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings, Inc.*, No. 16-81180-CIV, 2017 WL 1832436, at *5 (S.D. Fla. May 8, 2017) (collecting cases); *see also Yellow Pages Photos, Inc. v. Ziplocal, LP*, No. 8:12–cv–755–T–26TBM, 2012 WL 5830590, at * 4 (M.D. Fla. Nov. 16, 2012) ("'As for the statements in the website, annual report, and press release, courts do not rely on such statements as reliable evidence that the parent exercises 'operational control' necessary to confer personal jurisdiction.'") (quoting *Development Corporation of Palm Beach v. WBC Construction, LLC*, 925 So. 2d 1156, 1163 (Fla. 4th DCA 2006); *iSocial Media Inc. v. bwin.party 8 Digital Entm't PLC*, No. 12-81278-CIV, 2013 WL 5588238, at *8-10 (S.D. Fla. Oct. 10, 2013).

In *Yellow Pages Photos*, the court held that a description in "the annual report of Yellow Media stating that it 'operates' in the United States and 'exercises control' over its subsidiaries cannot be construed as a precise relationship *in fact* with respect to day-to-day control."  2012 WL 5830590, at *5 (emphasis in original).  The court instead looked to testimony, which showed "that the day-to-day operational control of YPG is handled by YPG, not Yellow Media."  *Id.*

Similarly, in *Cross Country Home Servs., Inc. v. Home Serv. USA Corp.*, No. 08-61456-CIV-SEITZ, 2010 WL 55439, at *4 (S.D. Fla. Jan. 6, 2010), the plaintiff sought to conflate the distinction between Homeserve and its US subsidiary.  In doing so, the plaintiff "relie[d] on public statements made by Homeserve that refer to 'Homeserve's U.S. business,' 'we,' [and] 'Homeserve ... in the USA'" *Id.*  The court found those "public statements, set out above, are not sufficient to ignore the separate corporate entities and Plaintiff has presented no evidence to support an argument that HSUSA was nothing more than the alter-ego of Homeserve." *Id.*

Courts have also rejected the argument that subsidiary profit distribution and "consolidated financial statements" establish personal jurisdiction over a parent company, as "such a financial arrangement is part and parcel of the parent/subsidiary relationship and is inadequate to confer personal jurisdiction." *Unitedhealthcare of Fla., Inc.,* 2017 WL 1832436, at *5 (citing *Miller v. Toyota Motor Corp.*, No. 6:07-cv-1358-Orl-19DAB, 2008 WL 516725, at * 5 (M.D. Fla. Feb. 22, 2008) (Florida revenue that passed through subsidiaries is insufficient to establish personal jurisdiction), and *Extendicare, Inc. v. Estate of McGillien*, 957 So. 2d 58, 64-65 (Fla. 5th DCA 2007) (collecting revenue from subsidiary is not enough to establish personal jurisdiction)).

Plaintiff next asserts that jurisdiction is proper because "Voyager sells its stock OTC throughout the United States, including specifically in the state of Florida to Florida residents." (AC at ¶ 49.) That is irrelevant because none of Plaintiff's claims are related to the sale of Voyager Ltd stock. Moreover, the Supreme Court has held that "[m]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984).

Finally, Plaintiff argues that shared resources between the two defendants serve as basis for personal jurisdiction over Voyager Ltd. (AC at ¶ 53.) The fact that Defendants share officers

and directors "does not impute day-to-day control to the parent corporation" as required to impute jurisdiction. *Yellow Pages Photos, Inc.*, 2012 WL 5830590, at *5. "One of the basic tents of corporate law is that shared directors and officers of parents and subsidiaries may hold the same position in both and 'change hats' to represent the two corporations separately." *Id.* Voyager Ltd does not control the day-to-day operations of Voyager LLC, is a distinct corporate entity with subsidiaries other than Voyager LLC conducting other lines of business, and has no business or operations in the state of Florida. (*See* Ltd. Tr. at 178:8-181:1.) "[T]here is nothing inherently improper about corporations creating subsidiaries to perform specific functions. This is what holding companies do." *Unitedhealthcare of Fla., Inc.,* 2017 WL 1832436, at *5 (citing *Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1268-69 (S.D. Fla. 2001)).

**B.      Voyager Digital Ltd. Was Not a "Statutory Seller" to Plaintiff.**

Plaintiff's failure to allege relevant conduct by Voyager Ltd also precludes him from pleading the "statutory seller" element of his securities claims.

As a preliminary matter, Plaintiff errs in pleading a cause of action under Section 5 of the Securities Act because there is no such private right of action.  The claim Plaintiff seeks to bring is properly construed as a claim under Section 12(a)(1). *See, e.g., Licht v. Watson*, No. 12-62197-CIV, 2013 WL 12089980, at *1 (S.D. Fla. Nov. 13, 2013) (construing a Section 5 claim as a Section 12 claim because there is no private right of action under Section 5), *report and recommendation adopted*, No. 12-62197-CIV, 2014 WL 12489596 (S.D. Fla. Apr. 4, 2014).

Regardless, Plaintiff fails to state a claim against Voyager Ltd under Section 12(a)(1), or Florida's Blue-Sky law (Count II), because *Voyager Ltd* did not sell to Plaintiff or solicit a purchase from Plaintiff. Liability under Section 12(a)(1) is limited to "statutory sellers." *Pinter v. Dahl,* 486 U.S. 622, 643–47 & n.21 (1988) (noting that the statutory language "contemplates a

buyer-seller relationship not unlike traditional contractual privity").[11] *See also* 15 U.S.C. § 77l(a)(1) ("Any person who . . . offers or sells a security in violation of [Section 5] of this title . . . shall be liable . . . *to the person purchasing such security from him* . . . .") (emphasis added).

To be a statutory seller, plaintiff must allege that the defendant either "(1) passed title of the security to the plaintiff, or (2) successfully solicited the purchase motivated at least in part by his own financial interest*." Nesbeth v. Wachovia Bank*, No. 09-62042-CIV, 2010 WL 11601016, at *3 (S.D. Fla. July 19, 2010), report and recommendation adopted sub nom. *Nesbeth v. USIMO*, No. 09-62042-CIV, 2010 WL 11601017 (S.D. Fla. Sept. 9, 2010) (quoting *Pinter,* 486 U.S. 642-47).

Here, Plaintiff's allegations that Voyager Digital Ltd solicited Plaintiff or other users is based on the same generalized statements in earnings calls and press releases that discuss the activities of Voyager LLC, and those allegations are refuted by factual allegations acknowledging that Voyager LLC operates the Voyager Platform, not Voyager Ltd.  (*See* AC ¶¶ 3, 34, 70; *see also supra* at 7-8.)  "[B]ald allegations of solicitation are insufficient to sustain . . . section 12(a)(2) liability as a 'seller' . . . ." *In re Deutsche Telekom AG Sec. Litig.*, No. 00 CIV 9475 SHS, 2002 WL 244597, at *5 (S.D.N.Y. Feb. 20, 2002).

### C.    The Federal Securities Claim (Count I) Is Time-Barred.

Federal claims for failure to register a security, properly brought under Section 12(a)(1) of the Securities Act, are untimely "unless brought within one year after the violation upon which it is based." 15 U.S.C. § 77m. The purported violation here was the offer of an Earn Program

---

[11] Florida follows federal law on this point. *See In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 372 n.40 (S.D. Fla. 1991) ("Although no case to this Court's knowledge has specifically addressed the issue, this Court determines that conduct sufficient to constitute solicitation for the purposes of satisfying § 517.211 liability is similar to that deemed sufficient by the Supreme Court in *Pinter v. Dahl* to hold one liable as a 'seller' under § 12(2) of the Securities Act of 1933.").

Account, culminating in Plaintiff opening his Voyager Account on March 17, 2021, and depositing funds on March 18, 2021. (AC ¶¶ 105-08.)

Plaintiff did not assert any claims concerning an unregistered securities violation until his Amended Complaint was filed on April 28, 2022, more than one year after he opened and funded his Voyager account, so his federal securities claim is time-barred. 15 U.S.C. § 77m.  *See also e.g., Woods v. Michael*, No. 20-80651-CV, 2021 WL 1055816, at *6 (S.D. Fla. Feb. 10, 2021) (dismissing Section 12 claims for failure to register as time-barred), *aff'd*, No. 21-10818, 2021 WL 3355459 (11th Cir. Aug. 3, 2021); *In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 337–38 (S.D.N.Y. 2021) (granting motion to dismiss where the claim was brought more than one year after the alleged sale and thus the statute of limitations "defense appears on the face of the complaint"); *Holsworth v. BProtocol Found.*, No. 20 CIV. 2810 (AKH), 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021) (granting motion to dismiss and noting that, among other pleading failures, the "one-year statute of limitations under sections 13 and 77m, which applies to sections 5 and section 12 violations, cannot be satisfied").

A putative "class representative whose claim is time-barred cannot assert the claim on behalf of the class." *Franze v. Equitable Assurance*, 296 F.3d 1250, 1254 (11th Cir. 2002).

### D.   Plaintiff Fails to Allege He Suffered Any Injury Arising From the Voyager Earn Program.

Plaintiff already withdrew his assets from Voyager and has pled no damages from the Earn Program that he now contends should have been registered as a security, and from which he was paid benefits.  (*See* AC ¶ 106.)  As a result, his securities claims should be dismissed both for lack of standing and for failure to plead a redressable claim under the securities laws.

### 1.   Plaintiff Lacks Article III Standing.

To have standing under Article III, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021) (collecting cases). "A plaintiff at the pleading stage, as the party invoking federal jurisdiction, bears the burden of establishing these elements by alleging facts that plausibly demonstrate each element." *Id*. Mere conclusory statements do not suffice." *Id.* at 1338 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). These Article III standing requirements apply alike to federal and state law claims. *See Harnett v. Est. of Chislett*, 487 F. Supp. 3d 1270, 1276 (S.D. Ala. 2020). "[E]ach claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1204 (S.D. Fla. 2021) (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F. 3d 1266, 1280 (11th Cir. 2000)).

The injury-in-fact element of the standing test means that "a plaintiff must set forth general factual allegations that 'plausibly and clearly allege a concrete injury,' and that injury must be 'actual or imminent, not conjectural or hypothetical.'" *Tsao* at 1337-38 (quoting *Thole v. U.S. Bank N.A*, 140 S. Ct. 1615, 1621 (2020) and *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)). In other words, if "the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

In two recent decisions, the U.S. Supreme Court addressed the specific question of whether uninjured plaintiffs who sue over a statutory violation have standing – and definitively ruled that they do not. In *Spokeo*, the plaintiff alleged that the defendant inaccurately reported information about him in violation of the Fair Credit Reporting Act. *Spokeo*, 578 U.S. at 334. Remanding, the Court held that that the plaintiff "could not . . . allege a bare procedural violation, divorced from any concrete harm and satisfy the injury-in-fact requirement of Article III." *Id.* at 341. Likewise, in *TransUnion*, the Supreme Court explained: "[U]nder Article III, an injury in law is not an injury

in fact.. . . . Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion LLC*, 141 S. Ct. at 2205.  Plaintiff's attempt to convert press coverage of regulatory actions into a private claim are precisely the sort of claim based on an alleged procedural violation, but devoid of any alleged harm to Plaintiff, that *Spokeo* and *TransUnion* prohibit.

Courts have rejected similar efforts to convert an alleged securities registration violation into a private action without alleging damages.  *See Holsworth v. BProtocol Found.*, No. 20 CIV. 2810 (AKH), 2021 WL 706549, at *2 (S.D.N.Y. 2021) (granting motion to dismiss claim alleging that a cryptocurrency was an unregistered security on multiple grounds, including lack of standing, where "the [complaint] is silent on the point of injury."). As in *Holsworth*, there are no pleadings of cognizable injury here, so Counts I and II should be dismissed for lack of standing.

### 2.    Plaintiff Fails to State a Redressable Claim.

Section 12(a) of the Securities provides that a seller of an unregistered security is liable to the purchaser "to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 U.S.C. § 77l. Plaintiff's state law claim under Florida Statute § 517.211, similarly authorizes a suit "for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security." § 517.211(1), (4).

In *In re Daou Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005), the Ninth Circuit explained that "To establish liability under section 12(a)(2) . . . the purchaser must [] demonstrate damages to recover . . . and there can be no recovery unless the purchaser has suffered a loss."  Similarly, in *Commercial Union Assur. Co., plc v. Milken*, 17 F.3d 608, 616 (2d Cir. 1994), the Second Circuit affirmed summary judgment where the damages were more than offset by distributions and, as a result, "appellants have not suffered compensable damages under § 12[(a)](2)."  *Id.*

Relying upon *Commercial Union* and *Dao*, the Report and Recommendation in *Rensel v. Centra Tech, Inc.*, No. 17-24500-CIV, 2018 WL 4410110 at *7 n.10 (S.D. Fla. June 14, 2018) noted that "a plaintiff bringing a cause of action pursuant to Section 12 must show that they 'suffered compensable damages'" and recommended dismissal on the basis that the plaintiff had "suffered no injury cognizable under the statute." *Id.* at *8. The same logic applies with equal force here. Plaintiff has alleged no cognizable injury under the federal or state securities statutes, so the Court should dismiss the Plaintiff's securities claims for failure to state a claim.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice and compel Plaintiff to assert his claims in arbitration.

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully request that the Court hear oral argument on the foregoing Motion to Compel Arbitration and to Dismiss the Complaint.

Date: May 16, 2022

Respectfully submitted,

By: /s/ *DRAFT*
Gavin C. Gaukroger
Florida Bar No. 76489
ggaukroger@bergersingerman.com
**BERGER SINGERMAN LLP**
201 East Las Olas Boulevard, Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-9900

Kayvan B. Sadeghi (*admitted pro hac vice*)
ksadeghi@jenner.com
Jeremy Ershow (*admitted pro hac vice*)
jershow@jenner.com
Sara E. Cervantes (*admitted pro hac vice*)
scervantes@jenner.com
**JENNER & BLOCK LLP**
1155 Avenue of the Americas
New York, NY 10036-2711

Telephone: (212) 891-1600

*Counsel for Defendants*