UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-24441-CIV-ALTONAGA/Torres

MARK CASSIDY, on behalf of himself
and others similarly situated,

    Plaintiff,

v.

VOYAGER DIGITAL LTD. and
VOYAGER DIGITAL LLC,

    Defendants.

_____/

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT VOYAGER DIGITAL LLC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS COUNTS III AND IV OF THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................2

I.     THE COURT MUST COMPEL ARBITRATION UNDER THE VOYAGER USER AGREEMENT'S ARBITRATION CLAUSE AND THE AAA'S DELEGATION PROVISION.......................................................................................3

II.    PLAINTIFF'S OBJECTIONS TO ARBITRATION FALL OUTSIDE THE COURT'S JURISDICTION. ........................................................................................4

      A.     The Court Only Has Jurisdiction to Hear Challenges Specific to the Delegation Provision, not to the Arbitration Agreement as a Whole. .....................4

      B.     Plaintiff's Objections to Arbitration Are Not Specific to the Delegation Provision. ...................................................................................................6

III.   PLAINTIFF'S OBJECTIONS TO ARBITRATION LACK MERIT. ...............................8

      A.     Voyager's Dispute Resolution Process is Not Substantively Unconscionable.................................................................................................8

      B.     Plaintiff's Acceptance of Voyager's User Agreement Was Not Procedurally Unconscionable. ................................................................................10

      C.     The Parties' Agreement to Arbitrate Is Not Rendered Illusory Simply Because Voyager May Amend Its User Agreement. ............................................12

IV.   ANY INFIRMITY SHOULD BE CURED BY SEVERANCE, NOT BY DENYING ENFORCEMENT OF ARBITRATION........................................................14

CONCLUSION...............................................................................................................................14

## PRELIMINARY STATEMENT[1]

Plaintiff voluntarily agreed to arbitrate his claims when he chose to open a Voyager Account. He now raises a variety of objections to the User Agreement to avoid arbitration, but all those objections belong before the arbitrator, not this Court.

Voyager's User Agreement expressly incorporates the American Arbitration Association ("AAA") Consumer Arbitration Rules, which delegate to the arbitrator "the power to rule on his or her own jurisdiction" including any objections "to the arbitrability of any claim or counterclaim." AAA Consumer Arbitration Rule R-14.

When there is a delegation clause, only challenges specific to the delegation provision are properly before the court. *See Attix v. Carrington Mortgage Services, LLC*, -- F.4th --, 2022 WL 1682237, at *14 (11th Cir. May 26, 2022). Plaintiff raises no challenge specific to the delegation provision, which makes sense given that courts routinely uphold incorporation of the AAA's rules. Instead, Plaintiff challenges the broader arbitration clause, and the User Agreement as a whole, and wrongly seeks to construe those arguments as specific to the delegation provision.

Even if Plaintiff's objections to the broader agreement were properly before the Court, those objections fail on their own terms. Plaintiff argues that the agreement is illusory because Voyager retains a right to modify the User Agreement. The Eleventh Circuit directly rejected the same argument in *Larsen v. Citibank FSB*, 871 F.3d 1295, 1318 (11th Cir. 2017), holding that the defendant's unilateral right to modify the agreement did not render it (or its arbitration provision) illusory. Plaintiff argues that New Jersey law applies, but there is no conflict of law, and Plaintiff's lead New Jersey case reaches the same result as *Larsen*. *See* ECF No. 60

---

[1] Defendant Voyager Digital, LLC ("Voyager LLC") submits this reply in further support of its Motion to Compel Arbitration and to Dismiss the claims asserted against it in the Amended Complaint (ECF No. 54) ("Motion" or "Mot."). Voyager LLC's Motion was initially consolidated with the motion by Voyager Digital Ltd. ("Voyager LTD") to compel arbitration and/or to dismiss the separate causes of action asserted against it (Counts I and II). The Court postponed consideration of Voyager LTD's motion pending appointment of lead counsel and an anticipated further amended complaint (ECF No. 59), so this reply addresses only Counts III and IV asserted against Voyager LLC. Voyager LTD maintains that the claims asserted against it should be dismissed and/or compelled to arbitration for the reasons set forth in the opening brief.

("Resp.") at 17 (citing *Jaworski v. Ernst & Young U.S. LLP*, 119 A.3d 939, 947 (N.J. Super. Ct. App. Div. 2015) (granting motion to compel arbitration)).

Plaintiff's unconscionability argument fares no better. Plaintiff asks the Court to follow an out-of-circuit opinion, *Bielski v. Coinbase, Inc.*, No. C 21-07478 WHA, 2022 WL 1062049 (N.D. Cal. Apr. 8, 2022). *Bielski* is inapposite because it hinged on two aspects of the Coinbase user agreement that are not present in the Voyager User Agreement.

First, *Bielski* challenged a formal pre-arbitration dispute process that users were required to follow on pain of dismissal of their arbitration. There is no equivalent requirement that could deny Plaintiff an arbitral forum here. Second, the Coinbase agreement contained a bespoke delegation provision that incorporated defined terms limiting the delegation itself. *Bielski*'s holding that a bespoke delegation provision lacked mutuality provides no basis to disturb Voyager's incorporation of the standard AAA rules, which broadly grant the arbitrator power to hear all objections to the arbitrability of *any* claim or counterclaim.

Much of the rest of Plaintiff's opposition introduces extraneous material and would-be plaintiffs absent from the current Amended Complaint. None of that impacts the legal issues on this motion to compel arbitration of Plaintiff's claims. The Court should follow *Attix* and the myriad other decisions that compel arbitration where the parties enter into an arbitration agreement and incorporate the AAA rules delegating arbitrability to the arbitrator.

## ARGUMENT

Voyager LLC's opening brief established that Plaintiff agreed to arbitrate when he opened his Voyager Account and accepted the terms of the Voyager User Agreement. *See* Mot. at 3-6, 12-14. That agreement contains an Arbitration Clause mandating arbitration of "any Complaint arising in connection with this Agreement, my Voyager Account, the Voyager Platform, or the Voyager Services." *See id.* at 5.[2] The User Agreement also incorporates the

---

[2] *See also* ECF No. 54-2, Declaration of Shannon Casey, Ex. A (January 2021 User Agreement) ("User Agreement"), at § 22 ("Arbitration Clause").

2

AAA Consumer Arbitration Rules, which broadly delegate questions of arbitrability to the arbitrator. *See id.*

Plaintiff does not dispute that he agreed to the Voyager User Agreement when he signed up for his Voyager Account, and he does not dispute that his claims against Voyager LLC fall within the scope of the Arbitration Clause. Instead, Plaintiff asks the Court to deny enforcement of the Arbitration Clause, to which he agreed, because: (i) the arbitration agreement as a whole is supposedly unenforceable "for a lack of mutuality" (Resp. § III); and (ii) the delegation provision is purportedly unconscionable (*id*. at § IV). Both arguments fail.

*First*, all of Plaintiff's objections are properly brought before the arbitrator, not this Court, under the broad terms of the AAA's delegation provision. (*See* Section I, *infra*.) *Second*, even if the Court had jurisdiction to consider them, Plaintiff's objections to the Arbitration Clause lack merit. (*See* Section II, *infra*.) *Third*, any purported defect in the Arbitration Clause or delegation provision would be properly remedied by severing a questionable provision, not by denying enforcement of the Arbitration Clause in its entirety. (*See* Section III, *infra*.)

**I.    THE COURT MUST COMPEL ARBITRATION UNDER THE VOYAGER USER AGREEMENT'S ARBITRATION CLAUSE AND THE AAA'S DELEGATION PROVISION.**

The Court must compel all claims against Voyager LLC to arbitration because Plaintiff entered into a binding arbitration agreement, which incorporates the delegation provision set forth in the AAA Consumer Arbitration Rules. *See* Arbitration Clause (incorporating the AAA consumer arbitration rules). AAA Consumer Arbitration Rule R-14 provides:

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of ***any*** claim or counterclaim.
>
> (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

*Mendez v. T-Mobile USA, Inc.*, No. 1:21-cv-23545-CMA, ECF No. 27 at 7 (S.D. Fl. Jan. 10, 2022) ("*Mendez*") (quoting and enforcing Rule R-14) (emphasis added).

The Eleventh Circuit and this Court consistently compel arbitration where parties enter into an arbitration agreement and incorporate the AAA's broad delegation provision. *See Attix*, 2022 WL 1682237, at *14 (reversing denial of motion to compel arbitration where agreement incorporated the AAA's delegation provision); *Mendez*, at 7 (granting motion to compel arbitration and noting that "the Eleventh Circuit has repeatedly held that incorporating the AAA rules into an arbitration agreement clearly and unmistakably evinces an intent to delegate questions of arbitrability").[3]

## II. PLAINTIFF'S OBJECTIONS TO ARBITRATION FALL OUTSIDE THE COURT'S JURISDICTION.

### A. The Court Only Has Jurisdiction to Hear Challenges Specific to the Delegation Provision, not to the Arbitration Agreement as a Whole.

Plaintiff's objections to the Motion fail because they are not specific to the delegation provision and instead challenge the broader Arbitration Clause or the entire Voyager User Agreement.

The Eleventh Circuit reaffirmed less than two weeks ago that, "where an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that *specific provision*." *Attix*, 2022 WL 1682237, at *14 (emphasis added) (quoting *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015)).

Plaintiff seeks to evade *Attix* by arguing that "this case must be resolved pursuant to New Jersey law" (Resp. at 15 n.8) and that under "New Jersey law . . . th[e] burden [of challenging a

---

[3] Threshold questions of formation of the agreement are governed by Florida law (*see* Mot. at 12), but Plaintiff does not dispute entry into the Voyager User Agreement. Subsequent interpretation of the agreement is governed by New Jersey law, though there is no material conflict between Florida and New Jersey law presented on this Motion.

4

delegation clause] is more formalistic than substantive" so the Court can hear any challenge that applies to both the delegation provision and the broader agreement. *Id.* at 14-15.

Plaintiff's argument fails because the test for whether he has stated a challenge to the delegation provision, as opposed to the broader arbitration clause, is a question of federal law, not state law. *See Attix*, 2022 WL 1682237, at *6 (applying federal law); *Mendez*, at *6-8 (same). This is because, although "state law generally governs the validity, enforceability, and revocability of arbitration agreements," the Federal Arbitration Act governs whether arbitrators or courts decide issues of arbitrability. *Mendez*, at *5 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) (applying 9 U.S.C. § 2)); *see also, generally, Buckeye*, 546 U.S. 440 (applying Federal Arbitration Act). The cases on which Plaintiff relies also make clear that their approach is a creature of federal law in the Third Circuit, not state law of New Jersey. *See Robbins v. Playhouse Lounge*, 119-CV-08387-NLHKMW, 2021 WL 2525709, at *7 (D.N.J. June 21, 2021) (finding plaintiff "sufficiently challenged the delegation provision under *this Circuit's* doctrine") (emphasis added).

In the Eleventh Circuit, "[a] party specifically challenges the validity or enforceability of a delegation agreement if, and only if, the substantive nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate threshold arbitrability issues." *Attix*, 2022 WL 1682237 at *14. It is "not sufficient for a party to merely say the words, 'I am challenging the delegation agreement,'" because "[c]hallenging a delegation agreement is a matter of substance, not form." *Id.* (noting that courts "should ensure that the challenge asserted *really is* about the delegation agreement" or "we risk trampling on the parties' agreement to arbitrate the validity or enforceability of the other parts of the contract"). *See also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("enforcing the delegation provision as written where the substance of the unconscionability challenge was not "specific to the delegation provision"); *Mendez*, at 8 (rejecting challenge as not specific to the delegation provision where it rested on a "contention that 'the entire [a]greement is unenforceable[.]'").

5

Plaintiff's objections to arbitration all challenge the Voyager User Agreement's primary arbitration clause, or the entire agreement, and therefore none of those objections are properly before this Court as a challenge specific to the delegation provision.

### B. Plaintiff's Objections to Arbitration Are Not Specific to the Delegation Provision.

Plaintiff asserts that the delegation provision is substantively unconscionable because the User Agreement's arbitration provision is purportedly "one-sided" and "burdensome" (Resp. at 20-23), and asserts that it is procedurally unconscionable because the User Agreement is offered to users as an adhesion contract, "take it or leave it." *Id.* at 23-25. These challenges are not specific to the delegation provision and should be referred to arbitration.

The Eleventh Circuit rejected a similar unconscionability challenge in *In re Checking Acct. Overdraft Litig.*, 856 F. App'x 238 (11th Cir. 2021). There, plaintiffs "argue[d] that the delegation clause [was] unconscionable and therefore unenforceable." *Id.* at 245. Just like Plaintiff here, however, they "d[id] not identify any specific defect in the delegation clause and instead argue[d] only that it is unconscionable 'for the same reasons' as the [arbitration agreement] more generally." *Id.* The Eleventh Circuit held that, "[w]ithout Plaintiffs pointing to any specific deficiencies in the delegation clause, we find no reason to deem it unconscionable. Plaintiffs may take up their challenges to the contract as a whole with the arbitrator." *Id.* The same result is appropriate here. Plaintiff's arguments to the contrary are unavailing.

***First***, Plaintiff relies on *Bielski* to argue that the delegation provision is substantively unconscionable based on the informal dispute resolution process set forth in the User Agreement. *See* Resp. at 20-23. Voyager's informal dispute resolution process does not render the arbitration provision unconscionable, as addressed below, but regardless the argument is for the arbitrator because it does not challenge the delegation provision.

Plaintiff's reliance on *Bielski* is also misplaced because that court was able to reach the unconscionability issue only on the basis of a bespoke delegation provision that was itself unconscionable and could deprive the plaintiff of a forum. The bespoke delegation provision

6

referenced the defined term "Arbitration Agreement" four times. *See* 2022 WL 1062049, at *2. The term "Arbitration Agreement" was defined to include a "precondition of engagement in a 'Formal Complaint Process'" on pain of dismissal. *Id.* On that basis, the court held that the "delegation clause as a whole does not *generally* delegate the arbitrability of *all* disputes between Coinbase and its users to the arbitrator. Rather, it *specifically* delegates arbitrability of the 'Arbitration Agreement.'" *Id.* at *2 (emphasis in original). As a result, there was not just a "lack of mutuality in Coinbase's complaint process," but that lack of mutuality was "expressly incorporated into the delegation clause via defined terms." *Id.* at *6.

Here, by contrast, there is no lack of mutuality in Voyager's *delegation provision*. The User Agreement incorporates the AAA's standard delegation provision, which contains no defined terms and expressly *does* delegate the arbitrability of *all* disputes to the arbitrator. *See* AAA Consumer Arbitration Rule R-14(b) (delegating to the arbitrator objections "to the arbitrability of *any* claim or counterclaim"). Whether the broader Arbitration Clause lacks mutuality, and how that affects enforceability, is an issue for the arbitrator to decide.

**Second**, Plaintiff argues that the delegation provision is procedurally unconscionable based on the "take-it-or-leave-it" nature of the User Agreement. Resp. at 23-25. This is typical of click-wrap agreements and not unconscionable, but the issue is outside the Court's jurisdiction because this too is a challenge to the entire User Agreement, not specific to even the Arbitration Clause, much less the delegation provision. *See Attix*, 2022 WL 1682237, at *14.

**Third**, Plaintiff challenges the entire Arbitration Clause as illusory for lack of mutuality because Voyager may update the terms of the User Agreement. Resp. § III; *see also id.* at 24 (referencing the same argument in the challenge to the delegation provision). This argument again relates to the User Agreement overall. Courts have repeatedly held that, in the presence of a delegation clause, such challenges to a unilateral modification right should be decided by the arbitrator. *See Stephens v. Checkr, Inc.*, No. 8:19-CV-2252-T-36AAS, 2019 WL 8138178, at *4-5 (M.D. Fla. 2019) (holding that the plaintiffs' challenge to a similar unilateral modification

7

provision was "a challenge to the contract as a whole that must be resolved by the arbitrator in accordance with the Supreme Court's ruling in *Buckeye*") (collecting cases).

### III. PLAINTIFF'S OBJECTIONS TO ARBITRATION LACK MERIT.

If the Court addresses Plaintiff's challenges on the merits, it should reject them. The User Agreement is a standard click-wrap agreement of the sort that U.S. courts routinely enforce. There is nothing unconscionable or "illusory" about these agreements and Plaintiff's authorities do not support any other conclusion.

#### A. Voyager's Dispute Resolution Process is Not Substantively Unconscionable.

Plaintiff argues that Voyager's arbitration process is substantively unconscionable based on his contention that the dispute resolution provisions require pre-demand procedures only from users, not Voyager, and require only users' claims to be arbitrated. Resp. at 20-23.

First, Plaintiff misconstrues the User Agreement, which binds Plaintiff and Voyager LLC alike to arbitration. The Arbitration Clause provides that "Voyager and I agree to attempt informal resolution of any Complaint . . . prior to any demand for adjudication" (User Agreement § 22), but it does not condition either party's right to arbitrate on such process. Rather, it provides that "Voyager and I further agree that if we cannot solve such Complaint informally . . . any such dispute shall be finally settled in binding arbitration . . . ." *Id.* There is no required formal complaint process akin to the process in the Coinbase agreement, and a "Complaint" is defined to mean any "complaint or dispute with Voyager in connection with the Voyager Service" (*id.* § 21), without regard to whether the user followed the informal process. That definition is broad enough to pick up all disputes because disputes are by necessity two-sided. If Voyager LLC were to have any dispute with a user, the user would by definition also have a dispute with Voyager LLC (else it would not be much of a dispute), and so it would meet the definition of a Complaint and could be compelled to arbitration by either party.

8

The contrast with *Bielski* is stark.  Coinbase required its users to subject their disputes to two separate complaint resolution procedures prior to filing arbitration—and gave Coinbase the "right to . . . dismiss your filing unless and until you complete" the formal pre-demand processes. 2022 WL 1062049, at *3.  Ruling this unconscionable, the court found "no legitimate commercial need for this many burdensome obstacles prior to arbitrating disputes relating to a basic user agreement for services like those provided by Coinbase." *Id.* at 5.[4]

Unlike *Bielski*, Voyager's informal process does not impede Plaintiff from obtaining a neutral forum to decide his claims.  That informal process is easily satisfied by an "attempt" that is little more than a notice provision, and it carries no penalties for failure to comply.

Second, even if the User Agreement were construed to impose one-sided arbitration and/or pre-demand processes on Plaintiff, that would still not render it unconscionable. Contracts need not have symmetrical obligations to be valid.  Substantive unconscionability "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *DiValerio v. Best Care Lab'y, LLC*, No. CV 20-17268 (FLW), 2021 WL 4704963, at *5 (D.N.J. Oct. 8, 2021) (quoting *Green Tree*, 183 F.3d at 181). Here, by contrast, there is more than enough reason to have informal resolution processes for everyone's benefit.  *Cf. Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1379 (11th Cir. 2005) (finding one-sided pre-dispute procedures to be "reasonably designed to resolve claims as quickly and efficiently as possible, consistent with the goals of arbitration, and not so offensive as to be unconscionable").[5]

---

[4] Plaintiff also relies on *Dvorak v. AW Development, LLC*, No. A-3531-14T2, 2016 WL 595844 (N.J. Super. Ct. App. Div. Feb. 16, 2016), where the defendant had an endless right to cure defaults, and the plaintiff was excluded from seeking interim or emergency relief.  As in *Bielski*, that agreement created a risk of depriving the plaintiff of a genuine forum altogether.

[5] Plaintiff also takes issue with the fact that Voyager LLC is not obligated to follow the informal dispute resolution procedures when deciding to suspend or terminate a customer account.  The termination provisions are largely symmetrical.  Plaintiff can terminate the Agreement and/or close his account at any time for any reason, User Agreement §§ 4, 28(g); Voyager needs cause to terminate an account but can prohibit or restrict trading in an account in its discretion.  *See* User Agreement at §§ 3, 4, 7, 11(a).

"New Jersey courts may find a contract term substantively unconscionable if it is 'excessively disproportionate' and involves an 'exchange of obligations so one-sided as to shock the court's conscience.'" *Id* (citation omitted). Asymmetry in arbitration provisions of the sort at issue here does not meet that strict standard. Similar asymmetries have been upheld by the New Jersey Supreme Court, the Third Circuit, and the Eleventh Circuit. *See Delta Funding Corp. v. Harris*, 189 N.J. 28, 48 (2006) (a requirement that consumer claims be arbitrated but foreclosure actions to be litigated was "burdensome [but] not unconscionable"); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 180-81, 183-84 (3d Cir. 1999) ("[M]utuality is not a requirement of a valid arbitration clause. . . . It is of no legal consequence that the arbitration clause gives [defendant] the option to litigate arbitrable issues in court, while requiring the [plaintiffs] to invoke arbitration.") (citing Restatement (Second) of Contracts § 79) (collecting cases).[6]

> **B.  Plaintiff's Acceptance of Voyager's User Agreement Was Not Procedurally Unconscionable.**

Plaintiff's objection that he could not negotiate the terms of the Voyager User Agreement and it was presented on a take-it-or-leave-it basis also provides no gounds to deny enforcement of the Arbitration Clause. Plaintiff wrongly asserts that courts "routinely" find take-it-or-leave-it user agreements like Voyager's to be "procedurally unconscionable." Resp. at 24. The argument is wrong and unfounded.

The primary authorities Plaintiff relies upon for this point *upheld* the agreements at issue, including their arbitration clauses. *See Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *9 (D.D.C. Nov. 1, 2016) ("[T]he Court finds that Selden entered into a valid and enforceable arbitration agreement with Airbnb."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) (vacating Ninth Circuit decision affirming invalidation of arbitration

---

[6] *See also Caley*, 428 F.3d at 1378 ("Under the [agreement], some claims, many of which would typically be brought by an employee, are subject to arbitration and others, many of which would be brought by Gulfstream, are not. However, this fact does not render the [agreement] unconscionable."); *Larsen v. Citibank FSB*, 871 F.3d 1295, 1318 (11th Cir. 2017) (applying Washington law, "asymmetry alone does not amount to substantive unconscionability").

agreement). Plaintiff labels the User Agreement an "adhesion" contract, but his own authorities make clear that so-called adhesion contracts are standard and not inherently unconscionable. *See, e.g., Robbins*, at *8 (applying New Jersey law, rejecting the argument that a contract of adhesion was necessarily unconscionable, and noting that label is just the start of the inquiry).

Defendants' Motion cited to at least ten cases enforcing click-wrap agreements (all of which could be described as adhesion contracts), arising under Florida and New Jersey law. Mot. at 13-14. Plaintiff fails to distinguish any of those cases or offer any cases (other than *Bielski*), that find a similar internet click-wrap agreement unconscionable.

In contrast, Plaintiff's cases finding an adhesion contract unconscionable involved an already captive counterparty that had "no real choice but to accept [its] terms," such as an onerous employment agreement foisted upon "long-time equipment operators with limited educational background and, at best, very narrow options for other employment." *See Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 266 (3d Cir. 2003) (applying Virgin Islands law); *accord Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 190 Cal. Rptr. 3d 159 (2015) (applying California law, "Oppression arises from . . . absence of meaningful choice").

Plaintiff was under no such compulsion, because Voyager offers an entirely voluntary consumer service, and has no coercive control over Plaintiff or other potential users. *See Falk v. Aetna Life Ins. Co.*, No. 19-cv-434, 2019 WL 4143882, at *5 (D.N.J. Aug. 31, 2019) ("Even assuming the [clickwrap agreement] was presented on a 'take-it-or-leave-it basis,' Plaintiff was free to decline it and would not have suffered negative consequences as a result of his decision."). Likewise, if a user does not like Voyager's changes to its User Agreement or is otherwise dissatisfied in any way, they are free to close their account and/or terminate their agreement to the User Agreement, without penalty. *See* User Agreement § 4 ("I understand that I may close my Voyager Account at any time."), § 28(g) ("I may terminate this Agreement after paying any obligations owed upon written notice.").

11

      C.      **The Parties' Agreement to Arbitrate Is Not Rendered Illusory Simply Because Voyager May Amend Its User Agreement.**

Finally, Plaintiff argues that Voyager LLC's right to modify the User Agreement's terms renders the Arbitration Clause illusory. Resp. § III.

The Eleventh Circuit squarely rejected this argument in *Larsen v. Citibank FSB*, 871 F.3d 1295 (11th Cir. 2017), holding that a unilateral change procedure did not render a consumer agreement illusory. In *Larsen*, the defendant company "reserved the right to change or add to the terms and conditions of this Agreement or change the terms of your Account at any time," and committed only to "give you such notice of the change as we determine is appropriate, such as by statement message or enclosure, letter, or as posted in the branch[.]". 871 F.3d at 1320 n.19 (emphasis added). Noting the "requirement to provide 'appropriate' notice and the implied duty of good faith and fair dealing," the court found the "power to amend the Provision [was] therefore not unfettered, unlimited, or absolute." *Id.* at 1318, 1320-21. The Eleventh Circuit again rejected a similar challenge in *In re Checking Acct. Overdraft Litigation*, noting the substantial similarities across multiple states law. *See* 856 F. App'x at 245-246.

New Jersey law is no different. Indeed, Plaintiff's lead case on the subject, *Jaworski v. Ernst & Young U.S. LLP*, 441 N.J. Super. 464, 475 (App. Div. 2015) (*see* Resp. at 17), rejected plaintiff's argument that Ernst & Young's mandatory arbitration policy with employees was "an illusory agreement because EY retains the right to unilaterally modify its terms." *Id.* at 464. In rejecting the argument, the court recited legal principles equivalent to those at issue in *Larsen*, emphasized that employees could quit rather than be bound (*id.* at 477-78), and added that under New Jersey law "courts should seek to avoid interpreting a contract such that it is deemed illusory." *Id.* at 477, 479 (further noting that it would be a "prohibitively burdensome and costly obligation to negotiate the terms with each and every one of its employees"). New Jersey federal courts, likewise, have held that unilateral amendment to a consumer credit card agreement to add a *new* arbitration clause did not violate New Jersey public policy. *See Cohen v. Chase Bank, N.A.*, 679 F. Supp. 2d 582, 592-96 (D.N.J. 2010).

12

Ignoring the weight of this authority, Plaintiff cites *Raymours Furniture Co. v. Rossi*, No. CIV. 13-4440 JBS, 2014 WL 36609 (D.N.J. 2014) for the proposition that "Under New Jersey law . . . an arbitration agreement may be found void as illusory for a lack of mutuality where one contracting party retains the unilateral right to change or modify the agreement at any time with or without advance notice and at its sole discretion." Resp. at 17. *Raymours* does not support that proposition. It concerned an employee handbook that was *not* an agreement between the parties, explicitly disclaimed any "term or obligation of any kind on the part of the Company," and did "not require that the changes be put in writing and distributed." 2014 WL 36609 at *7, 9.[7] There is no dispute that Voyager's User Agreement is a binding contract and that any modification will be in writing and available on Voyager LLC's website, which Plaintiff expressly agreed to "regularly consult. . . [for] any modifications." User Agreement § 28(f).

Plaintiff's reliance on *Todorovich v. Accrediting Bureau of Health Educ. Sch., Inc.*, No. 17-20744-CIV, 2017 WL 7726705, at *7 (S.D. Fla. July 24, 2017) (Altonaga, J.), is also misplaced. That case pre-dated *Larsen*, and involved former employees of a defunct medical college who claimed to be third-party beneficiaries of an accreditor manual, which the Court found was not a contract. It had nothing to do with arbitration in a consumer agreement.

In short, none of Plaintiff's objections provides a basis to deny enforcement of the Arbitration Clause and the AAA's delegation provision.

---

[7] Two other cases cited by Plaintiff—*Crump v. MetaSource Acquisitions, LLC*, 373 F. Supp. 3d 540 (E.D. Pa. 2019) (Pennsylvania law) and *Douglas v. Johnson Real Est. Invs., LLC*, 470 F. App'x 823, (11th Cir. 2012) (Massachusetts law)—similarly concerned employee handbooks to which employers could make undisclosed changes. *Nat'l Federation of the Blind v. Container Store, Inc.*, No. CV 15-12984-NMG, 2016 WL 4027711, at *1 (D. Mass. July 27, 2016) concerned whether blind retail shoppers could be bound by an arbitration agreement that was made visually available on check-out screens, but not communicated orally. *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1066 (D. Nev. 2012) concerned an arbitration agreement embedded in terms of use that the plaintiffs had not agreed to, and which moreover did not provide for consumers to be made aware of changes.

### IV. ANY INFIRMITY SHOULD BE CURED BY SEVERANCE, NOT BY DENYING ENFORCEMENT OF ARBITRATION.

Finally, if the court considers any provision unenforceable, the appropriate remedy is to sever the provision, not invalidate the entire User Agreement or the Arbitration Clause. *See, e.g., Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1088 (9th Cir. 2020) (declining to "bind parties to new terms pursuant to a change-of-terms provision," and holding the plaintiff's "claims are arbitrable under the 2014 terms of the contract to which she assented").

New Jersey courts routinely sever unconscionable provisions and while preserving the obligation to arbitrate. *See Delta Funding Corp. v. Harris*, 189 N.J. 28, 46 (2006) (finding arbitration cost provisions in arbitration clause severable); *Estate of Ruszala ex rel. Mizerak v. Brookdale Living Communities, Inc.*, 415 N.J. Super. 272, 300 (N.J. Super. 2010) (finding limitations on damages and discovery in arbitration clause severable); *Roman v. Bergen Logistics, LLC*, 456 N.J. Super. 157, 171 (N.J. Super. 2018) (finding bar on punitive damages in arbitration clause severable); *Van Duren v. Rzasa-Ormes*, 394 N.J. Super. 254, 268 (N.J. Super. 2007) (finding non-appealability provision in arbitration clause severable).[8]

### CONCLUSION

For the foregoing reasons, the Court should grant Voyager LLC's motion to dismiss the claims asserted against it (Counts III and IV) and to compel Plaintiff to bring those claims, if at all, in arbitration.

---

[8] Plaintiff's cases do not hold otherwise, and instead present unique reasons to deny severability, not present here. *See MacDonald v. CashCall, Inc.*, 883 F.3d 220 (3d Cir. 2018) (denying severance when clause provided for arbitration by tribal government with no arbitration procedures, in contrast to here where AAA is available); *Guc v. Raymours Furniture Company, Inc.*, No. A-3452-20, 2022 WL 729539, at *4-*5 (N.J. Super. Mar. 11, 2022) (declining to sever a provision the New Jersey Supreme Court had found unenforceable two years before the contract was formed, to avoid "endorsing" defendants' failure to abide by Supreme Court ruling); *Dvorak v. AW Development, LLC*, No. A-3531-14T2, 2016 WL 595844, at * 5 n.2 (N.J. Super. Feb. 16, 2016) (declining to sever when there was no severability clause); *Osprey Health Care Center, LLC v. Pascazi by and through Outwater*, 329 So.3d 177, 187 (Fla. App. 2021) (ordering severance because "void statute of limitations provision doesn't go to the essence of, and is severable from, the instant arbitration agreement").

Dated June 6, 2022                                    Respectfully submitted,

By: /s/ *Gavin C. Gaukroger*
Gavin C. Gaukroger
Florida Bar No. 76489
ggaukroger@bergersingerman.com
**BERGER SINGERMAN LLP**
201 East Las Olas Boulevard, Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 525-9900

Kayvan B. Sadeghi (*admitted pro hac vice*)
ksadeghi@jenner.com
Jeremy Ershow (*admitted pro hac vice*)
jershow@jenner.com
Sara E. Cervantes (*admitted pro hac vice*)
scervantes@jenner.com
**JENNER & BLOCK LLP**
1155 Avenue of the Americas
New York, NY 10036-2711
Telephone: (212) 891-1600

*Counsel for Defendants*